**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ROBERT P. GARVER,

                 Plaintiff,

v.                                         Case No.: 2:19-cv-02354-JWB-KGG

PRINCIPAL LIFE INSURANCE
COMPANY et al.,

                  Defendants.

**DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S BRIEF IN SUPPORT OF
ITS OBJECTION TO PLAINTIFF ROBERT GARVER'S INCLUSION OF A CLAIM
FOR CATASTROPHIC DISABILITY BENEFITS IN THE PRETRIAL ORDER**

## I.     INTRODUCTION AND PROCEDURAL BACKGROUND

On June 5, 2019, Plaintiff Robert Garver ("Plaintiff") filed a four count complaint against

Defendants Principal Life Insurance Company ("Principal Life"), Duane Roth and The Roth

Companies, Inc. ("Roth Defendants") in Wyandotte County, Kansas. [DE #1-1] Plaintiff's

complaint included claims for breach of contract, misrepresentation, intentional infliction of

emotional distress and negligence following Principal Life's September 2018 termination of

Plaintiff's total disability benefits after his return to work and subsequent refusal to provide

income information necessary for Principal Life to calculate residual disability benefits. [DE #1-1,

¶¶ 48, 50, 62, 93] After the Court dismissed Plaintiff's claim for intentional infliction of emotional

distress upon the Roth Defendants' motion to dismiss and allowed Plaintiff to amend his

misrepresentation claim to comply with Rule 9 requirements [DE #35], Plaintiff filed an amended

complaint on October 31, 2019. [DE #36] Neither Plaintiff's initial complaint, nor his opposition

to the Roth Defendants' motion to dismiss or his amended complaint referenced in any way a

catastrophic disability or Plaintiff's contention that he was catastrophically disabled and unduly

1

denied catastrophic disability benefits. Indeed, every single one of these documents framed this dispute as circling around the question whether Plaintiff's disability insurance policy as sold afforded "own occupation" coverage, understood by Plaintiff as entitling him to disability benefits as long as he was unable to work in his pre-disability occupation irrespective of whether he was able to work or was indeed working in a new and different occupation. [DE #23, pp. 1-2, DE #36, ¶¶10, 26, 31, 35, 36, 42-44, 46, 48-50,60, 72]

After the parties' planning conference in September 2019, the parties prepared a joint submission, which contained the following summary of this matter:

> This case arises out of a disability claim relating to a disability insurance policy through Defendant Principal Life Ins. Co. ("Principal Life") which Defendant Roth / Roth Companies (Collectively referred to as "Defendant Roth") sold to Plaintiff. Specifically, the insurance policy which Defendant Roth sold to Plaintiff was purportedly an "own occupation" disability policy which was intended to provide total disability coverage in the event the Plaintiff ever became disabled and was unable to work in his former occupation, regardless of whether Plaintiff later became able to work in a new occupation. Plaintiff claims that after being injured in an accident which left him with permanent disabilities, he was unable to work in his former occupation, and made a claim for disability benefits pursuant to the Principal Life policy. Plaintiff alleges that Principal Life ultimately denied his claim, and Plaintiff has brought suit against Principal Life arising out of its denial for breach of contract. Furthermore, Plaintiff alleges that Defendants Duane Roth / Roth Companies intentionally / negligently mislead him with respect to the scope of the Principal Life policy which it sold to him, which he relied upon to his detriment. Plaintiff's suit sets forth claims against Principal Life for breach of contract, misrepresentation, and intentional infliction of emotional distress. Plaintiff's Petition further sets forth claims against Defendants Duane Roth / the Roth Companies for misrepresentation, intentional infliction of emotional distress, and negligence.

In accordance with the pleadings filed and the assertions made, Plaintiff served his initial disclosures on September 9, 2019 and provided the following computation of damages:

1. **Present value of past and future disability benefits:** $1,746,505.
2. **Pain, suffering, mental anguish, further non-economic loss to date and in the future:** In excess of $500,000.00.
3. **Attorney's fees and costs:** Will be calculated on a contingency fees basis at 40% and costs in a reasonable amount to be awarded at trial.
4. **Punitive damages:** In excess of $1,000,000.00.

A true and correct copy of Plaintiff's Rule 26(a) disclosures is attached hereto as **Exhibit A.**1

After conducting a scheduling conference with the parties on September 24, 2019, Magistrate Judge Gale entered a scheduling order [DE #34], requiring that "[a]ny motion for leave to join additional parties or to otherwise amend the pleadings must be filed by November 29, 2019" (the date agreed to by the parties per the scheduling report) and setting a due date for Plaintiff's expert disclosures of February 3, 2020. [DE #34, pp. 4, 7] The scheduling order also provided the following guidance regarding the parties' Rule 26(a)(1) and "timely Rule 26(e)" disclosures:

> The supplemental disclosures served 40 days before the deadline for completion of all discovery must identify all witnesses and exhibits that probably or even might be used at trial. The opposing party and counsel should be placed in a realistic position to make judgments about whether to take a particular deposition or pursue follow-up "written" discovery before the time allowed for discovery expires. Should anything be included in the final disclosures under Fed. R. Civ. P. 26(a)(3) that has not previously appeared in the initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto, the witness or exhibit probably will be excluded from offering any testimony under Fed. R. Civ. P. 37(c)(1).

[DE #34, p. 3]

On February 3, 2020, Plaintiff served his expert disclosures, identifying retained expert Susan Thompson, CPA/CFF to "testify regarding the total disability and residual disability benefits pursuant to the insurance policy with Principal Life Insurance Company." A true and correct copy of Plaintiff's expert disclosures is attached hereto as **Exhibit B**. [DE #45] On May 18,

---

1 Principal Life reserves any and all objections to Plaintiff's alleged ability to recover future benefits under an installment disability benefit insurance policy on a breach of contract claim based on *New York Life Insurance Co. v. Viglas,* 297 U.S. 672, 80 L. Ed. 971, 56 S. Ct. 615 (1936). *See also Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175 (10th Cir. 2005).

2020, Plaintiff submitted responses to Principal Life's written discovery, providing the following answer to Interrogatory No. 30:

> 30. Identify any and all expenses, losses or damages sustained by you as a result of Principal Life's alleged conduct and state the method of calculation for each such expense, loss or damage, the identity of all persons with knowledge of your claimed injuries, and identify all documents which relate to or support your claimed injuries and/or damages.
>
> **ANSWER**: Expenses, losses, and damages are calculated as follows: (1) the present value of Garver's past and future policy benefits ($1,290,969.00), (2) reimbursement of Garver's premiums ($7,050.00), (3) attorney fees (4) emotional distress damages in an amount which the trier of fact finds fair and reasonable.

A true and correct copy of Plaintiff's interrogatory answers is attached hereto as **Exhibit C.2**

The scheduling order entered by this Court in September 2019 was revised on April 3, 2020 [DE #53] and on June 23, 2020 [DE #73] and both revised orders contained the same requirement for service of supplemental disclosures **40 days before** the deadline for completion of all discovery. No new deadline for pleading amendments was requested or included in either.

On June 19, 2020, the defendants deposed Plaintiff [DE #62, 63] and on July 14, 2020, Plaintiff took the deposition of Ms. Stephanie Garcia, who handled Plaintiff's claim for disability benefits. [DE #75] During her deposition, Ms. Garcia explained that the catastrophic disability benefit is not subject to a separate claim, but rather another provision of the Policy, which is considered as part of a claim for disability benefits. She further testified that in Plaintiff's case neither the medical evidence nor her discussions with Plaintiff triggered Plaintiff's eligibility for the catastrophic disability benefit. A true and correct copy of the relevant sections of Ms. Garcia's deposition transcript are attached hereto as **Exhibit O**.

---

2 While Plaintiff has provided supplemented interrogatory responses on July 31, 2020, which is attached hereto as **Exhibit D,** Plaintiff did not supplement/amend his answer to Interrogatory No. 30, which still reads as indicated above.

On July 29 and 30, 2020, defendants deposed Plaintiff's retained experts Ms. Thompson and Mr. Anderson. [DE #80, 83, 84] Per the last scheduling order, discovery closed on August 7, 2020. [DE #73]

On July 31, 2020, at 4:19 p.m., five business days before the close of discovery, Plaintiff served supplemental initial disclosures, identifying five additional witnesses not previously disclosed and four additional documents not previously produced. Plaintiff also served supplemental expert disclosures, disclosing additional opinions by retained expert Ms. Susan Thompson regarding the calculation of catastrophic disability benefits, by Mr. Robert Anderson and treating physician Dr. Landau as well as disclosing new experts Mr. Sjogren, Ms. Stephens and Ms. Bonner. No additional expert reports were provided for any of the newly disclosed experts. True and correct copies of Plaintiff's supplemental initial disclosures as well as of his supplemental expert disclosures are attached hereto as **Ex. E** and **F.**

The new documents provided included two declarations signed by Dr. Landau and Mr. Sjogren, respectively, both addressing Plaintiff's alleged inability to perform activities of daily living, which is only relevant for Plaintiff's new claim for catastrophic disability benefits. A true and correct copy of the declarations is attached hereto as **Ex. G.**

Counsel for Principal Life contacted counsel for Plaintiff on August 4, 2020, pointing out the untimeliness of Plaintiff's supplemental disclosures and requesting that Plaintiff withdraw them. *See* **Ex. H.** Plaintiff's counsel Mr. Bourhis responded by indicating that his "local co-counsel will be responding to [the] email." *See* **Ex. I,** attached hereto. On August 5, 2020, counsel for Principal Life received a letter from Mr. Greenberg. *See* **Ex. J**, attached hereto. Counsel for Principal Life addressed the contentions made in the letter in a lengthy substantive email on August 7, 2020. *See* **Ex. K**. On August 11, 2020, at 4:55 p.m., counsel for Plaintiff

requested to schedule a telephone conference for August 12, 2020. The telephone conference did not result in any resolution of the dispute.

On August 14, 2020, the day the parties' proposed pretrial order was due, Plaintiff submitted his additions to be included in the order draft, including a damage calculation with a request for catastrophic disability benefits and factual contentions in support. Principal Life objected to the damage calculation to be included in the proposed pretrial order. At the subsequent final pretrial conference, the Court entered an order requiring the submissions of briefs on the defendants' objection to including a catastrophic disability claim in the final pretrial order. [DE #88]

Based on the above, Principal Life respectfully submits that Plaintiff's amended complaint from October 31, 2019 does not fairly include a request for catastrophic disability benefits, that Plaintiff should not be allowed to amend his complaint[3] at this point in the litigation to include that claim for relief and Plaintiff's supplemental disclosures specifically related to this matter should be disallowed. The Court should further disallow Plaintiff's other supplemental disclosures as untimely.

To the extent the Court allows Plaintiff to amend and include a request for catastrophic disability benefits at this juncture, Principal Life submits that it will need additional time for discovery and additional disclosures more specifically identified below.

## II.    FACTUAL BACKGROUND

Principal Life refers the Court to its detailed factual contentions as set out in the proposed final pretrial order submitted by the parties on August 14, 2020, which are fully incorporated

---

3 Plaintiff filed a motion to amend his complaint on September 4, 2020. [DE #89] The request is opposed by all defendants and will be separately briefed. Principal Life will attempt to avoid duplication of argument as much as possible.

6

herein. For the Court's convenience and quick reference, it further provides the following short summary of the facts most relevant to this brief:

On August 7, 2015, Plaintiff applied for disability insurance coverage from Principal Life.   On the application, he selected to purchase additional optional benefit riders, including a residual disability and recovery benefit rider and a catastrophic disability benefit rider. Principal Life issued Disability Income Policy No. 7881467 ("Policy") with a Policy Date of August 6, 2015, approving Plaintiff for monthly disability coverage of $4,500.00.

On July 12, 2017, Plaintiff fell of the roof of a house and sustained injuries which kept him in the ICU for 3 days and in rehabilitation for 5 days. He thereafter was released to return to his home, which was not modified in any way to accommodate his injuries upon return. On August 4, 2017, Plaintiff submitted a claim for disability income benefits as of July 13, 2017. On the attending physician's statement accompanying Plaintiff's claim form, his trauma surgeon Dr. Les Landau indicated that Plaintiff would be able to return to work within 4-6 months. Dr. Landau restricted Plaintiff for at least 6 weeks to occasionally sitting, standing and walking and no lifting, carrying or traveling. Dr. Landau did not provide any additional restrictions or limitations.

On November 13, 2017, Principal Life approved Plaintiff's claim as of October 10, 2017 and paid Plaintiff monthly total disability benefits in the amount of $4,680.00. Subsequent to receipt of the first benefit payment, Plaintiff complained on November 20, 2017 that the benefit amount paid was not higher. In response, Ms. Garcia explained on November 21, 2017 that the Policy had a base benefit of $4,680.00. In her email, she further enumerated the riders attached to the Policy, including the catastrophic disability benefit rider, explaining when they applied, and

informing Plaintiff that none of them were applicable to his claim at this time based upon the information provided. Plaintiff did neither respond nor object or otherwise follow up.

On November 28, 2017, Dr. Landau confirmed that Plaintiff would recover sufficiently to return to work within 4-6 months from the date of his statement. He placed temporary restrictions of occasionally walking and traveling and no lifting or carrying beyond 20 pounds on Plaintiff.  Principal Life continued benefit payments. Unbeknownst to Principal Life, in December 2018, Plaintiff purchased his step-father's business and assumed its role as President. In January 2018, Plaintiff purchased 80 acres of land in Assaria, Kansas, where soon thereafter construction of his new family home commenced. Plaintiff also began to commute to Salina, Kansas, on a weekly basis to work at Welborn Sales, Inc., the business he had taken over.

In August 2018, Principal Life scheduled an in-home visit with Plaintiff. The prepared questions for the in-home visit included questions pertaining to Plaintiff's ability to complete his activities of daily living, what changes, if any, he made to successfully complete them and what activities were difficult because of his condition. Plaintiff's responses, which were provided to him for review afterwards, did not contain any assertions relative to an inability to perform any of his activities of daily living, including his inability to bathe, control bladder and bowel functions, dress himself, eat and/or feed himself, toilet and transfer without assistance.

Based on Plaintiff's August 2018 confirmation that he had returned to work, Principal Life informed him that his claim was now being viewed under the terms of the Policy's Residual Disability rider and requested documentation to calculate Plaintiff's residual disability benefit, including monthly pay stubs.

On September 23, 2018, Plaintiff asserted that Principal Life was "treating this case improperly as a Residual Disability situation" and stated:

> I am not agreeable  to providing pay stubs or any other financial information at this time. We have been advised that Principal is not treating this policy correctly.
>
> Our advisor will be reaching out to you to try to get our benefit back on track. Hopefully, without any type of litigation.

Given Plaintiff's refusal to cooperate with Principal Life's claim review and to provide the necessary documentation required by the Policy's Proof of Loss provision that would have allowed Principal Life to calculate the residual disability benefit, Principal Life terminated his benefits in correspondence dated September 28, 2018, as the Policy requires. Principal Life's September 28, 2018 letter specifically set out Plaintiff's right to request reconsideration, including submission of the documents previously requested to calculate his benefit payment. Instead of doing so, however, Plaintiff retained counsel, who sent a letter on November 5, 2018, making a demand for payment of total disability benefits within 72 hours. The letter was silent as to the now asserted catastrophic disability benefit claim. Principal Life responded on November 13, 2018, explaining its claim decision and its need for the previously requested information to determine continued eligibility for benefits under the Residual Disability and Recovery Benefit Rider of the Policy. Principal Life informed Plaintiff's counsel:

> Since Mr. Garver has reported that he has returned to work we need the requested information to determine if he qualifies for benefits under the Residual Disability and Recovery Benefit Rider of his policy. Once we receive the additional information listed above, we will re-open Mr. Garver's claim and continue our review.
>
> Without the information requested we are unable to determine Mr. Garver's entitlement to benefits under his policy and therefor respectfully reject your settlement demand.

Despite having been provided with the applicable Policy language and with the knowledge that Principal Life "will reopen Mr. Garver's claim and continue [its] review" once the information requested has been received, Plaintiff filed suit on June 5, 2019 as outlined above.

9

### III.    LEGAL ARGUMENT

### A.    Plaintiff's Request For Catastrophic Disability Benefits Is Not Fairly Included Within His Complaint.

The currently governing pleading does not fairly include a claim for catastrophic disability benefits.    This is self-evident from Plaintiff's present attempt to amend, and in fact to completely re-write, the operative complaint.

When determining whether a pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules, the "well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed. *Parkhill v. Minn. Mut. Life Ins. Co.*, 286 F.3d 1051, 1057-58 (8th Cir. 2002). It is a plaintiff's obligation to provide fair notice of the basis of the claims against each defendant, including making clear exactly who is alleged to have done what to whom. *Genesee County Emples. Ret. Sys. v. Thornburg Mortg. Secs. Trust 2006-3*, 825 F. Supp. 2d 1082 (D. N.M. Nov. 12, 2011).

Reviewing Plaintiff's amended complaint from October 31, 2019, it is evident that all factual allegations circle around Plaintiff's contention that he was entitled to total disability benefits while Principal Life reviewed his claim under a residual disability rider, after allegedly representing to him that he was entitled to total disability benefits whether or not he was able to perform work in another occupation or actually worked in another occupation and, thus, improperly terminated benefits in September 2018. The amended complaint includes no factual assertions pertaining to a claim for catastrophic disability benefits and is silent on the existence of a catastrophic disability benefit rider. It does not contain any allegations pertaining to the catastrophic disability benefit rider's definition of catastrophic disability or its requirements to receipt of such benefits. It does not plead Plaintiff's ability or lack thereof to perform activities of

daily living, does not assert a denial or termination of such benefits and does not include a request for relief in the form of such benefits. In light of the utter absence of any factual allegations pertaining to a claim for catastrophic disability benefits, Plaintiff's amended complaint does not give fair notice of such a claim, and does not meet the pleading requirements under Rules 8 and 9 of the Federal Rules of Civil Procedure for such a claim.   Indeed, the only reasonable conclusion drawn from Plaintiff's amended complaint is that he had abandoned any claim under the catastrophic disability in favor of his claim that he was entitled to benefits under the total disability policy language.

Even if there was a possibility that Plaintiff's factual allegations could fairly be read to include allegations pertaining to an entitlement to catastrophic disability benefits (which they cannot), Plaintiff's subsequent litigation conduct and disclosures make clear that he was not pursuing a claim for catastrophic disability benefits (which matches his actions during the claim review process).

### B. Plaintiff Should Not Be Allowed Leave To Amend His Amended Complaint To Include A Request For Catastrophic Disability Benefits.

Plaintiff's attempt to add his new claim for catastrophic disability benefits to the parties' pretrial order was the equivalent of asking leave to amend his complaint, and must be evaluated by the Court under the standards set forth in Rule 15(a). *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1525 (2d ed. 1990). And, in any event, Plaintiff now seeks to amend his complaint through his September 4, 2020 motion for leave, triggering operation of Rule 15(a).

Rule 15(a) of the Federal Rules of Civil Procedure provides that, after a responsive pleading has been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party." The Rule specifies that "leave shall be freely given when justice so

requires." (Rule 15(a)). Explaining this aspect of the rule further, in *Foman v. Davis,* 371 U.S. 178,

83 S. Ct. 227, 9 L. Ed. 2d 222 (1962), the Supreme Court held:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to test his claim on the
> merits. In the absence of any apparent or declared reason--such as undue delay, bad
> faith or dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice to the opposing
> party by virtue of allowance of the amendment, futility of amendment, etc.--the
> leave sought should, as the rules require, be "freely given."

*Id*. at 182 (quoting Fed. R. Civ. P. 15(a)); *see also Duncan v. Manager, Dep't of Safety,* 397 F.3d

1300, 1315 (10th Cir. 2005); *Frank v. U.S. West,* 3 F.3d 1357, 1365 (10th Cir. 1993).[4]

    Plaintiff's claim for catastrophic disability benefits should be stricken from the pretrial

order because it is untimely and prejudicial.

### 1. Timeliness

    Plaintiff's request to now add a claim for catastrophic disability benefits, buttressed by

disclosures made a week before discovery closed, is untimely and, thus, should be denied.

    In *Foman*, the Supreme Court listed "undue delay" as one of the justifications for denying

a motion to amend. 371 U.S. at 182. While "[l]ateness does not of itself justify the denial of the

amendment," *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975), given that

Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the

action, Fed. R. Civ. P. 15(a); *see also* 6 Wright, Miller & Kane, *Federal Practice and Procedure*

§1488 (2d ed. 1990), "[a] party who **delays** in seeking an amendment is acting contrary to the spirit

of the rule and runs the risk of the court denying permission because of the passage of time." *Id*.

(emphasis supplied.) The longer the delay, "the more likely the motion to amend will be denied, as

---

4  Additionally, since the time to amend any pleadings allowed in this Court's initial scheduling order has
expired, Plaintiff's requested amendment requires a modification of the scheduling order, which pursuant to Rule
16(b)(4) of the Federal Rules of Civil Procedure, requires a showing of "good cause" and "the judge's consent."

protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir v. Girl Scouts of the USA,* 383 F.3d 7, 12 (1st Cir. 2004); *see also USX Corp. v. Barnhart,* 395 F.3d 161, 167 (3d Cir. 2004) ("[D]elay alone is an insufficient ground to deny leave to amend. At some point, however, delay will become undue, placing an unwarranted burden on the court, or will be become prejudicial, placing an unfair burden on the opposing party." (internal citations and quotation marks omitted)).

The Tenth Circuit does not require a finding of prejudice, bad faith, futility or a substantial burden on the court and, instead, focuses primarily on the reasons for the delay. Indeed, denial of a motion for leave to amend is appropriate "when the party filing the motion has no adequate explanation for the delay." *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (citing *Frank*, 3 F.3d at 1365-66, *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994) ("[U]nexplained delay alone justifies the district court's discretionary decision."); *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) ("Courts have denied leave to amend in situations where the moving party cannot demonstrate excusable neglect. For example, courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.").

In his motion to amend, Plaintiff attempts to explain the late hour amendment by pointing his finger at Principal Life, claiming it "misled Plaintiff into believing the Catastrophic Disability Rider was 'not applicable'" [DE #89, p. 3] and, therefore, it was not until the deposition of Ms. Stephanie Garcia on July 14, 2020 that Plaintiff "discovered" that he had a potential claim for catastrophic disability benefits. Nothing could be further from the truth. Not only did Plaintiff have a copy of the Policy, including the catastrophic disability rider, since 2015, but he also checked total disability benefits as well as catastrophic disability benefits on his claim form in 2017. As

stated above, his disability claim was approved and in correspondence dated November 21, 2018, Principal Life specifically informed Plaintiff of the existence of the catastrophic disability rider, letting him know that it was not applicable to his claim because he did not submit any evidence supporting an inability to perform activities of daily living. A true and correct copy of Principal Life's November 21, 2017 correspondence is attached hereto as **Exhibit L.**

After the termination of Plaintiff's claim in September 2018, Plaintiff retained the law firm of Ray Bourhis Associates in San Francisco, California, who sent correspondence to Principal Life in November 5, 2018 relative to Plaintiff's claim for benefits. A copy of the correspondence is attached hereto as **Exhibit M**. On March 27, 2019, almost three months before filing the present lawsuit, Plaintiff requested a copy of his claim file, which was provided to him by Principal Life on April 5, 2019. A copy of the correspondence sending the claim file is attached hereto as **Exhibit N.** The claim file contained a copy of all documents received by Principal Life, including Plaintiff's claim form, as well as Principal Life's "action plans," which set out all actions considered and taken by Principal Life in its review. It further contains all documents generated by Principal Life during the claim review. In June 2019, in possession of all pertinent information in this matter pertaining to Principal Life's review of Plaintiff's claim for disability benefits and presumably after fulfilling its obligations under Rule 11 of the Federal Rules of Civil Procedure, the Bourhis law firm, filed suit on behalf of Plaintiff without including any reference to a claim for catastrophic disability benefits in the complaint.

During litigation, Principal Life provided another copy of the claim file to counsel for Plaintiff, the Bourhis law firm, including again a copy of the Policy with all riders, a copy of the claim form and all claim activities undertaken.

Yet, despite having had access to all information, Plaintiff never sought to amend his

complaint to include a claim for catastrophic disability and did not supplement his disclosures or discovery answers to provide proper notice.

Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint "a moving target," *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998), to "salvage a lost case by untimely suggestion of new theories of recovery," *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001), to present "theories seriatim" in an effort to avoid dismissal, *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994), or to "knowingly delay[] raising [an] issue until the 'eve of trial,'" *Walters v. Monarch Life Ins. Co.*, 57 F.3d 899, 903 (10th Cir. 1995).

In cases such as this, where a plaintiff was aware of all of the information on which his proposed amended complaint would now be based prior to filing the original complaint, leave to amend should be denied. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998).

To make matters worse, after Ms. Garcia's deposition on July 14, 2020, rather than immediately supplementing his disclosures and requesting an amendment, Plaintiff went to find a physical therapist, Mr. Sjogren, to support his claim *post hoc* (in a tacit admission that the claim file does not contain any evidence of Plaintiff's alleged inability to perform his activities of daily living). He then waited until the end of the month, five business day before discovery closure, to supplement his disclosures and until the eve of the submission deadline for the parties' proposed pretrial order, August 14, 2020, to request inclusion of his claim for catastrophic disability benefits in the pretrial order.

Plaintiff's catastrophic disability claim is untimely and unduly delayed and should not be included in the parties' pretrial order.

### 2.  Undue Prejudice

The second factor to be evaluated is whether the late amendment would prejudice the non-moving party. "Perhaps the most important factor listed by the Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading." 6 Wright, Miler & Kane, *Federal Practice and Procedure* §1487 (2d ed. 1990). Prejudice is present when an amendment unfairly affects the defendants "in terms of preparing their defense to the amendment." *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971). This is generally the case when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues. *See Horn v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996).

Plaintiff's expansive July 31, 2020 supplementation of disclosures with numerous witnesses, new opinions and documents in an effort to support his new claim demonstrates that Plaintiff's new claim is not simply a claim, which tracks the matters litigated by the parties for over a year.   Instead, it raises numerous entirely new issues, such as Principal Life's alleged failure to investigate, its alleged failure to provide a claim decision and Plaintiff's alleged inability to perform activities of his daily living, which had not been an issue in this matter in light of the termination of Plaintiff's claim on the basis of a failure to provide documentation only. Given these new subject matters, which were not at issue between the parties previously, Plaintiff's delayed amendment is highly prejudicial to Principal Life's defense of this matter.

For this reason as well, Plaintiff should not be allowed to include his dilatory claim for catastrophic disability benefits in the parties' pretrial order.

### 3.  Need for Additional Discovery

Plaintiff's motion to amend does not contest the prejudicial nature of his late request to

amend but, instead, appears to suggest that his offer of agreement to additional discovery alleviates such prejudice. Given the entirely new subject matters introduced into this case by Plaintiff's requested amendment, the additionally needed discovery to alleviate the prejudice to Principal Life would resemble starting this litigation anew due to a lack of overlap with existing issues.

Specifically, if the Court allowed Plaintiff's requested amendment and the inclusion of Plaintiff's claim for catastrophic disability benefits in the parties' final pretrial order, to be able to fairly defend itself against this new claim, Principal Life would need discovery to be reopened to re-depose Plaintiff regarding his now asserted inability to perform two or more activities of daily living, addressing contradictory evidence in the record, such as Plaintiff's failure to inform the independent investigator of his alleged inabilities in August 2018 as well as his weekly drives and stays in Salina while working at Welborn Sales, Inc. from January 2018 through June 2018. Additionally, given that Plaintiff stayed with his in-laws when in Salina, depositions of them are likely necessary as well to flesh out the extent of their assistance given to Plaintiff, if any.

If the untimely opinions of Dr. Landau are allowed and Mr. Sjogren and his opinions also become part of this case, Principal Life will need to depose both as to their new opinions, their records and why Plaintiff's alleged inability to perform activities of daily living was never recorded in their medical records as well as how their July 2020 declarations came into existence. Further, due to the lack of specificity as to when Plaintiff's alleged inability to perform any activities of daily living began or how long that inability persisted -- facts that are material to the analysis under the rider --deposition testimony must be sought as to these facts and the basis for Dr. Landau's and Mr. Sjogren's knowledge thereof, if any. Additionally, Principal Life will have to take the deposition of newly disclosed expert witness Ms. Callie Stephens with SERC, who allegedly rendered treatment to Plaintiff in 2017 after his fall and also holds an opinion relative to

Plaintiff's entitlement for catastrophic disability benefits.

Depending on the individuals' schedules, Principal Life would anticipate at least 60 days to take these additional six (6) depositions.

Depending on what the depositions show, Principal Life may then need additional time to disclose appropriate rebuttal expert opinions, which may result in additional depositions, likely taking another 45 to 60 days.

### C.  Plaintiff's Supplemental Disclosures Should Be Stricken.[5]

To the extent Plaintiff's supplemental July 31, 2020 initial and expert disclosure solely relate to Plaintiff's new and entirely impermissible claim, they likewise should be stricken.

Additionally, however, as set out above, Plaintiffs supplemental initial disclosures should also be stricken as they are tardy and prejudicial. The Court's scheduling order unambiguously required that all supplemental initial disclosures pursuant to Fed. R. Civ. P. 26(e) must be served **40 days** before the deadline for completion of all discovery, so as to allow opposing party and counsel "to make judgments about whether to take a particular deposition or pursue follow-up 'written' discovery before the time allowed for discovery expires." [DE #34, p. 3] Plaintiff served his supplemental initial disclosures **five business days** before discovery closure, identifying five additional individuals not previously disclosed (and mostly entirely unknown to Principal Life) and four additional documents, one of which has still not been provided to the defendants.

With regard to Plaintiff's untimely disclosures, it is Plaintiff's burden to show that they were substantially justified or harmless to Defendants in this case. *Estate of McDermed v. Ford Motor Co.*, No. 14-cv-2430-CM-TJJ, 2016 U.S. Dist. LEXIS 45500 (D. Kan. April 1, 2016).

---

[5] The arguments are directed at the untimeliness and prejudicial nature of Plaintiff's supplemental initial and expert disclosures under the Court's scheduling order and Rules 26 and 37(c)(1). Principal Life reserves any and all objections to the admissibility of the testimony of any of Plaintiff's witnesses, fact or expert, and asserted opinions.

### 1. Plaintiff's New Witnesses

Plaintiff's supplemental initial disclosures for the first time identified Plaintiff's physical therapist Mr. Steven Sjogren, PT, Orthopedic Surgeon Dr. Trevor Gaskill, Ms. Callie Stephens, PT, DPT, OCS, Jabir Hazziez, Jr., and Kola Bonner. *See* **Ex. E**, pp. 2-3. Not only is the disclosure woefully tardy to the extent that it fails to comply with the Court's scheduling order[6] – which in and of itself warrants the supplemental disclosure to be stricken and the individuals in the late disclosure to be excluded from testifying in this matter, *see* DE #34 -- but the late disclosure is also dilatory because Plaintiff clearly had prior knowledge of these individuals as he claims to have treated with Ms. Stephens in 2017 despite the absence of any records regarding such treatment, started treating with Dr. Gaskill in February 2020 and has known Ms. Bonner since at least early 2019 in connection with accounting services provided by her for Plaintiff's prior business through a company called Profitplus4.

While none of these individuals have previously been disclosed by Plaintiff, even had there been a prior reference to them, including in medical records or during a deposition, it is settled law in this jurisdiction that such a reference is considered insufficient to put Principal Life on notice that Plaintiff intended to list these individuals as Rule 26(a)(1)(A) witnesses likely to have discoverable information that **Plaintiff** may use to support his claims. *Estate of McDermed, supra,* at *16-17 (citing *Clean Harbors, Inc. v. CBS Corp.,* 875 F. Supp. 2d 1311, 1316-17 (D. Kan. 2012), *Sender v. Mann*, 225 F.R.D. 645 (D. Colo. Dec. 14, 2014)); *see also Jama v. City & County of Denver,* 304 F.R.D. 289 (D. Col. June 6, 2014) (making clear that the purpose of the Rule 26 disclosure is to make Principal Life aware of who **Plaintiff** believes has pertinent information, what the information was and how to contact an individual).

---

[6] Pursuant to Rule 16(b)(4), the Court's scheduling order may only be modified for good cause and with the Court's consent.

Similarly, generic references to "treating physicians" in the initial disclosures are insufficient to allow for the addition of additional individuals not previously known to Principal Life seven days before discovery closure. *Estate of McDermed, supra.*

Finally, settled case law in this District also supports that the simple fact that the disclosure was made before discovery closure does not alleviate Principal Life's prejudice as the number of new witnesses made it impossible for Principal Life to complete discovery in the **5 business days** before the expiration of the discovery deadline. *Id.*

Aside from Principal Life's certainly understandable surprise as a result of receipt of Plaintiff's supplemental initial disclosure seven (7) days before the end of discovery, and aside from the untimeliness of the disclosure, the disclosure also does not identify the subjects of the respective discoverable information these witnesses possess and Plaintiff may use in support of his claims or defenses. Indeed, there is no information provided for Ms. Stephens, Mr. Sjogren or Dr. Gaskill. Neither one was disclosed in Plaintiff's responses to Principal Life's written discovery requests dated May 15, 2020, which specifically requested the names of every single one of Plaintiff's medical providers as well as all of Plaintiff's intended witnesses. *See* **Ex. C,** Interrogatories Nos. 4, 25, pp. 3, 9. With regard to Mr. Hazziez, the disclosure refers to him as a private investigator with knowledge about Roth's residency, however, fails to disclose what exactly that knowledge is. Similarly, the disclosure of Ms. Bonner, which only contains her telephone number, does not identify what the exact content of her knowledge is. For all of these reasons, all newly identified witnesses should be stricken from Plaintiff's initial disclosures and excluded from testifying in this matter.

### 2. Plaintiff's New Documents.

Plaintiff's supplemental initial disclosures also identify four new documents:

1. Investigate Reports from Jabir Hazziez, Jr.,

2. Declaration from Dr. Les Landau (July 21, 2020),

3. Declaration from Steven Sjogren (July 27, 2020), and

4. Dr. Gaskill Medical Records.

Ex. E, p. 4.

Not only were these documents never previously disclosed, but as already discussed above, they are also highly prejudicial to the extent that the declarations from Dr. Landau and Mr. Sjogren contain opinions never previously disclosed to Principal Life in discovery, in any records produced or as part of Plaintiff's expert disclosure, which was due on February 3, 2020. *See* **Ex**. B. Indeed, Plaintiff's expert disclosure of Dr. Landau only states that he is "expected to testify in accordance with the medical records that have been previously provided to defense counsel concerning the Plaintiff's injuries, past treatment, need for further treatment, causation and prognosis." **Ex. B**, p. 3. The expert disclosure does not identify any opinions Dr. Landau holds and is expected to testify to, let alone the opinion now reflected in Dr. Landau's July 2020 declaration. Moreover, the opinions expressed in the declaration are not reflected in Dr. Landau's medical records in Principal Life's possession, and do not relate to "treatment, causation and prognosis." Principal Life was not aware that Dr. Landau holds these opinions before July 31, 2020. As such, the declaration and the opinions expressed therein are untimely and highly prejudicial, and the delay in identifying the declaration and opinions is not harmless because the discovery closure five business days after the disclosure did not leave time to take Dr. Landau's deposition or for Principal Life to identify a rebuttal expert. Plaintiff refused to withdraw the declaration when asked. As such, the late disclosure is not harmless and Dr. Landau's declaration should therefore be stricken. *See also Estate of McDermed, supra,* at *29-33.

The same arguments apply to Mr. Sjogren's declaration, except that his eleventh hour declaration is even more prejudicial to Principal Life to the extent that (a) Mr. Sjogren has not previously been disclosed and was entirely unknown to Principal Life until July 31, 2020, and (b) now holds opinions that were not disclosed by February 3, 2020 in time for Principal Life to evaluate whether to pursue any discovery regarding him. Both declarations should be stricken under Rule 37 and the opinions expressed in the declarations should be excluded from this lawsuit.

Dr. Hazziez' "investigate report" has still not been produced to Principal Life and Principal Life does not know what it even says and, thus, should be stricken. Dr. Gaskill's medical records, to the extent not previously disclosed, should likewise be excluded.

### D. Plaintiff's July 31, 2020 Supplemental Expert Disclosures Should Be Stricken.

While expert disclosures must be supplemented in accordance with Rule 26(e), the purpose of supplementation is to correct inadvertent errors, not to allow a party to engage in "gamesmanship" – creating a "new and improved" expert report in order to gain tactical advantage, by bolstering opinions to avert a dispositive motion or an expert challenge. *Rodgers v. Beechcraft Corp*, No. 15-cv-129-CVE-PJC, 2016 U.S. Dist. LEXIS 183579 (N.D. Okla. Sept. 20, 2016). As other district courts in this Circuit have indicated:

> A supplemental expert report that states additional opinions or rationales or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1). To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

*Palmer v. Asarco,* 2007 U.S. Dist. LEXIS 56969, *3 (N.D. Okla. Aug. 3, 2007) (quoting *Cook v. Rockwell Int'l Corp.,* 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (citations omitted).

A supplemental expert report "is limited to correcting inaccurate or incomplete information in a timely filed report." *Aid for Women v. Foulston,* 2005 U.S. Dist. LEXIS 45617, *3 (D. Kan. July 14, 2005) (*citing Reid v. Lockheed Martin Aero. Co.,* 205 F.R.D. 655, 662 (D. Ga. 2001). Supplementation does not confer a right to "ignore Court deadlines, reopen discovery, find 'new facts,' generate new expert reports, and then claim different damages." *Reid*, 205 F.R.D. 662. Nor does Rule 26(e) allow a party to "sandbag his opponent or to 'deepen' or 'strengthen' his case where the information should have been included in the expert report." *Beller ex rel. Beller v. U.S.*, 221 F.R.D. 696, 701 (D. N.M. 2003); *see also Minebea Co. LTD. v. Papst,* 231 F.R.D. 3, 6 (D.D.C. 2005) (stating that Rule 26(e)(1) "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report" and "prevents experts from 'lying in wait' to express new opinions at the last minute"). The expert disclosure requirements of Rule 26 are clear and a "litigant who fails to comply with these requirements does so at his own peril." *The Quapaw Tribe of Okla. v. Blue Tee Corp,* 2010 U.S. Dist. LEXIS 105504, *6 (N.D. Okla. Sept. 29, 2010) (*quoting Cohlmia v. Ardent Health Services, LLC,* 254 F.R.D. 426, 429 (N.D. Okla. 2008).)

Plaintiff's supplemental disclosure dated July 31, 2020 is untimely and a violation of Rule 26(a) to the extent that it includes (1) a whole new opinion disclosed by Ms. Thompson regarding the calculation of catastrophic disability benefits; (2) a number of additional unidentified opinions held by Mr. Anderson pertaining to Principal Life's "standard of care, claim evaluation, reasonableness fairness and other aspects of carrier liability in this action," which were not included in his timely disclosed expert report nor in any supplemental report; (3) Dr. Landau's opinion in accordance with his July 21, 2020 declaration pertaining to Plaintiff's new claim for catastrophic disability benefits, unsupported by any medical records; and (4) new experts Mr.

Sjogren, Ms. Stephens, and Ms. Bonner. No reports were provided relative to the opinions of these new untimely disclosed experts. The information included in Plaintiff's supplemental disclosure is impermissible supplementation designed only to buttress Plaintiff's new claim or bolster problems in Ms. Thompson's and Mr. Anderson's previous reports.

As already previously explained, Plaintiff's late disclosure is neither justified nor harmless and is marred by undue delay and highly prejudicial to defendants.

## IV.    CONCLUSION

For all of the reasons set out above, Principal Life respectfully requests that this Court find that Plaintiff's amended complaint does not provide fair notice of his new claim for catastrophic disability benefits but also disallow Plaintiff's attempt to now include the new claim in the parties' pretrial order given that it is untimely and unduly prejudicial. Plaintiff's supplemental July 31, 2020 initial and expert disclosures to the extent solely related to Plaintiff's new and entirely impermissible claim should likewise be stricken. Additionally, Principal Life requests that this Court also disallow the portions of Plaintiff's supplemented initial disclosures and supplemental expert disclosures not related to Plaintiff's new claim as untimely and prejudicial.


Dated:   September 11, 2020

Respectfully submitted,

ARMSTRONG TEASDALE LLP


/s/ *Kathryn C. Bascom*

Kathryn C. Bascom                                    #26539
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
816.221.3420
816.221.0786 (facsimile)
kbascom@armstrongteasdale.com

and

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

Edna S. Kersting, admitted pro hac vice
55 W. Monroe, Suite 3800
Chicago, Illinois 60603
312.821.6162
312.704.1522 (facsimile)
edna.kersting@wilsonelser.com

ATTORNEYS FOR DEFENDANT PRINCIPAL
LIFE INSURANCE CO.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September, 2020, I transmitted the attached document to all counsel of record by electronic mail as identified on the docket sheet on the court's ECF/CM system.

| *Attorneys for Plaintiff* | *Attorneys for Defendant, Duane Roth and the Roth Companies* |
|---|---|
| Brette S. Hart<br>Matthew W. Greenberg<br>Harris & Hart, LLC<br>9260 Glenwood St.<br>Overland Park, KS 66212<br>(913) 213-6980 / Fax (913-213-6991<br>bhart@harrisandhart.com<br>mgreenberg@harrisandhart.com<br><br>Bourhis Law Group<br>Ray Bourhis<br>Matthew Bourhis<br>Lawrence Mann<br>1808 Wedemeyer Street, Suite 214<br>San Francisco, CA 94129<br>Telephone: 415-392-4660<br>Facsimile: 415-421-0259<br>rfbourhis@bourhislaw.com<br>matthew.bourhis@bourhislaw.com<br>larry@bourhislaw.com | W. Perry Brandt<br>Bryan Cave Leighton Paisner, LLP<br>1200 Main Street, Suite 3800<br>Kansas City, MO 64105<br>Telephone: (816) 374-3200<br>Facsimile: (816) 374-3300<br>perry.brandt@bclplaw.com |

*/s/ Kathryn C. Bascom*
Attorney for Defendant Principal Life
Insurance Company

2958883v.1