GARVER000001

**ADDENDUM to the April 15, 2020**
**EXPERT REPORT**
**of**
**SUSAN K. THOMPSON, CPA/CFF**

**Robert P. Garver**

**Plaintiff**

**v.**

**Principal Life Insurance Co.,**
**The Roth Companies, Inc., and Duane Roth**

**Defendants**

Case No. 2:18-cv-02354-CM-KGG

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

GARVER000001

GARVER000002

I submitted my report in the above referenced matter on April 15, 2020.  I subsequently became aware of an item that needed correction.  In addition to that correction, I have updated my calculation as of July 31, 2020.  The items described below have been incorporated into my "Updated" report attached to this Addendum.

**Corrections to Schedules:**

On Schedule 1 of my report I used a statutory interest rate of 10%.  I have been informed that the applicable interest rate for Kansas is 18%.

"Except as otherwise provided by K.S.A. 40-447, 40-3110 and 44-512a, and amendments thereto, each insurance company, fraternal benefit society and any reciprocal or interinsurance exchange licensed to transact the business of insurance in this state which fails or refuses to pay any amount due under any contract of insurance within the time prescribed herein **shall pay interest on the amount due**. If payment is to be made to the claimant and the same is not paid within 30 calendar days after the amount of the payment is agreed to between the claimant and the insurer, **interest at the rate of 18% per annum shall be payable from the date of such agreement.** If payment is to be made to any other person for providing repair or other services to the claimant and the same is not paid within 30 calendar days following the date of completion of such services and receipt of the billing statement, interest at the rate of 18% per annum shall be payable on the amount agreed to between the claimant and the insurer from the date of receipt of the billing statement." Kan. Stat. Ann. § 40-2,126 (West).

My schedules have been corrected to reflect the proper interest rate.

**Updates to Schedules:**

The schedules have been updated to calculate amounts due as of July 31, 2020.

Update to Past Benefits Due

I was provided a June 19, 2020 letter from Principal Life Insurance Company to the Bourhis Law Group which stated that disability benefits through December 2018 were paid on June 16, 2020.  I have updated the benefit due calculation on Schedule 1 to reflect benefits paid through December 2018.

Update to Present Value Factor

The present value of future benefits is discounted based on the 10 year Treasury rate.  I have updated the rate in my original report from 1.33%  which was as of February 26, 2020 to .60% based on the reported 10 year Treasury rate published on July 22, 2020.

Update to Future COLA Percentage

The future CPI-U rates used to determine the COLA adjustment have been updated based on The Livingston Survey released on June 12, 2020.  The future CPI-U rate for years 2021 – 2039 have been reduced from 2.22% in my original report to 2.00% based on the current Livingston Survey Table 3 Long-Term (10-Year) Forecast.

GARVER000002

GARVER000003

# Updated Report

GARVER000003

GARVER000004

**EXPERT REPORT**
of
**SUSAN K. THOMPSON, CPA/CFF**
**(Updated)**

**Robert P. Garver**

**Plaintiff**

**v.**

**Principal Life Insurance Co.,**
**The Roth Companies, Inc., and Duane Roth**

**Defendants**

Case No. 2:18-cv-02354-CM-KGG

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

GARVER000004

# Table of Contents

I.   **Introduction and Qualifications** ............................................................................... 3

II.    **Background** ...................................................................................................... 4

III.  **Documents Considered** ...................................................................................... 4

IV.  **Executive Summary** ........................................................................................... 4

V.  **Analysis** .......................................................................................................... 5

    **Elimination Period** ............................................................................................ 5

    **Residual Disability Benefit** ................................................................................. 5

    **Maximum Monthly Benefit** ................................................................................. 7

    **Present Value of Past and Future Benefits** ............................................................. 8

      *Past Benefits Due* ............................................................................................ 8

      *Future Benefits Due* ......................................................................................... 9

VI.  **Conclusion** ...................................................................................................... 9

**Attachments to the Report:**

Exhibit A:  Curriculum Vitae, Susan K. Thompson, CPA/CFF

Exhibit B:  Documents Considered

Exhibit C:  Disability Income Policy #7881467

Exhibit D:  Robert P. Garver, 2016 Income

Exhibit E:  Robert P. Garver, 2017 Income

Exhibit F:  Robert P. Garver, 2018 Income

Exhibit G:  Robert P. Garver, 2019 Income

Exhibit H:  The Livingston Survey, Release Date: June 12, 2020

Exhibit I:   U.S. Department of The Treasury, Daily Treasury Yield Curve Rates

Exhibit J:   Report Schedules

GARVER000006

EXPERT REPORT OF SUSAN K. THOMPSON

# I.   Introduction and Qualifications

1.  My firm, Hemming Morse, LLP, was retained by Bourhis Law Group ("Counsel"), counsel to Robert P. Garver ("Garver") in Robert P. Garver v. Principal Life Insurance Co., ("Principal") The Roth Companies, Inc. and Duane Roth to provide an Expert Report and testimony regarding the value of benefits due from the Principal Life Insurance Disability Income Policy #7881467 dated August 6, 2015.  Specifically, we were engaged to calculate the value of past and future benefits due Garver as set forth in the disability Policy.

2.  I am a Partner in the Forensic Consulting Services Group of Hemming Morse, LLP.  I have over 35 years of experience in public accounting with both a national firm and a local firm in California prior to joining Hemming Morse, LLP in 2001 (the company changed from a corporation to a limited liability partnership in 2012).  My expert qualifications, including the testimony I have given during the last 12 years are described in **Exhibit A** to this report.

3.  My primary background is in auditing, and I have performed extensive litigation and forensic accounting and consulting services for over 30 years.  My forensic accounting and consulting experience includes assistance in various forms of business litigation, fraud investigations, professional liability litigation, investigations of property and casualty insurance and fraud claims, and investigations of internal controls of for profit and not for profit companies. I also have experience in criminal matters, having provided services to the United States Attorney, County District Attorneys and the California Attorney General. I have testified in several superior courts and participated in arbitration proceedings, mediation proceedings and administrative hearings.

4.  I am a Certified Public Accountant and Certified in Financial Forensics by the American Institute of Certified Public Accountants.  I earned a Bachelor of Science degree from Loma Linda University, La Sierra Campus.

5.  My hourly rate for preparing this report is $400 per hour.  Others in my firm assisting in this Litigation under my supervision and control are compensated at their respective hourly rates. My compensation for any deposition and trial testimony in this Litigation is billed at the rate of $400 per hour.  Counsel has also agreed to reimburse my out-of-pocket expenses. My compensation is not dependent either on the opinions I express or the outcome of this Litigation.  A list of the sources I consulted in preparing this report, as required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii) may be found in **Exhibit B** to this report.

GARVER000006

GARVER000007

## II.    Background

6.  On or about July 12, 2017, Garver was working on a roof of a home he was building when one of the roof trusses broke loose, causing him to fall approximately 23 feet leaving him with permanent disabilities.[1]   In July 2017, Garver filed a claim with Principal for total disability insurance benefits under his Policy #7881467 – Claim Number 1020011.[2]

7.  On August 30, 2018, Principal wrote to Garver explaining that his policy had currently been paying the monthly Disability amount of $4,680 to him until the Cost of Living Rider took effect on July 12, 2018.[3]   The email also quoted the definitions of Total Disability and Residual Disability as contained in the Policy including the Your Occupation clause.

8.  On September 28, 2018 Principal denied Garver's claim and ceased all future payments of disability insurance benefits. In a June 19, 2020 letter from Stephanie Garcia, Claim Analyst for Principal, Garver's remaining 2018 benefits were paid.[4]

## III.    Documents Considered

9.  The documents I considered in reaching my opinions in this matter are listed in Exhibit B attached to this report. In addition, other evidence may be produced to me that could be relevant to my conclusions, including the testimony and reports of other witnesses, and I reserve the right to amend my report and supplement my opinions after considering such evidence, if necessary.

## IV.    Executive Summary

10.  The present value of past and future benefits due Garver as of July 31, 2020 calculated on the attached schedules is $1,348,949.
    - Past Benefits Due 10/1/2018 – 7/31/2020:  $      112,282
    - Future Benefits Due 8/1/2020 – 8/6/2039:  $   1,236,667

---

[1] Plaintiff's First Amended Complaint for Damages, par. 7, 9.
[2] Plaintiff's First Amended Complaint for Damages, par. 10.
[3] Plaintiff's First Amended Complaint for Damages, par. 42-43.
[4] Plaintiff's First Amended Complaint for Damages, par. 48 and June 19, 2020 letter to Bourhis Law Group from Principal Insurance.

GARVER000008

# V.   Analysis

11. I was provided a copy of Garver's Disability Income Policy #7881467.[5]  Based on my review of the Policy and guidance from counsel, I established the following:
    - Date of Disability:  July 12, 2017 [6]
    - Elimination Period: 90 days, ending 10/11/2017 [7]
    - Residual Disability Benefit calculation formula [8]
    - Maximum Monthly Benefit: $4,680, adjusted for cost of living based on CPI-U.[9]
    - Occupation Period: To Age 65 Policy Anniversary[10]

## Elimination Period

12. The Policy defines Elimination Period as:

    > *"Elimination Period – means the number of days of Disability from the start of a Continuous Disability for which no benefits will be paid.  The Data Page shows the Elimination Period for the Disability Benefit section and the Social Insurance Substitute Benefit section, if applicable."[11]*

13. The Policy's Data Page states the Elimination Period is 90 days.  Based on the disability of July 12, 2017 the Elimination Period, 90 days later, ends on October 11, 2017.

## Residual Disability Benefit

14. Robert P. Garver's Residual Disability Benefit formula per the Policy:[12]

    $$\frac{Prior\ Earnings - Current\ Earnings}{Prior\ Earnings}\ \ \ X\ \ \ Maximum\ Monthly\ Benefit$$

---

[5] Policy #7881467 attached as Exhibit C.
[6] Plaintiff's First Amended Complaint for Damages, par. 7.
[7] Data Page to Policy #7881467.
[8] Residual Disability and Recovery Benefit Rider attached to Policy #7881467 (page 2).
[9] Maximum Monthly Benefit per Data Page to Policy #7881467; Cost of living adjustment per the Cost of Living Adjustment Rider attached to Policy #7881467.
[10] Data Page to Policy #7881467.
[11] Policy Definitions attached to Policy #7881467 (page 5).
[12] Residual Disability and Recovery Benefit Rider attached to Policy #7881467 (page 2).

Expert Report of Susan K. Thompson CPA/CFF                                         Page 5 of 9

15. The Policy defines Prior Earnings as:

> "*Prior Earnings – means Your highest monthly average Earnings for any consecutive 12 months in the last 24 months before Continuous Disability began...*"[13]

16. Robert P. Garver's prior earnings are calculated on Schedule 3 using his 2016 tax returns. In 2016, Garver received total income of $414,307 from Robert Garver Builders, Inc. as reported on a form K-1 totaling $366,307 and a W-2 totaling $48,000.[14] The 2016 losses related to 191st Street Investors are not included in the calculation of prior earnings. The losses for 191st Street Investors relate to allowable tax deductions and do not appear to be income as defined by the Policy. Based on this understanding of the losses and direction from counsel, these amounts have been excluded from the calculation of Prior Earnings.

17. The Policy defines Current Earnings as:

> "*Current Earnings – means Your Earnings for each month while You are disabled.*"[15]

18. Robert P. Garver's current earnings are calculated on Schedule 3 using the 2017 and 2018 tax returns. In 2017, Garver received total income of $131,203 from Robert Garver Builders, Inc. as reported on a form K-1 totaling $83,203 and a W-2 totaling $48,000.[16] In 2018, Garver received total income of $7,803 as reported on a form K-1 totaling a loss of $93,590 from Robert Garver Builders, Inc. and $101,393 income from Welborn Sales, Inc. as reported on a form K-1 totaling $45,843 and a W-2 totaling $55,550.[17] As noted above in the calculation of prior earnings, the 2017 and 2018 losses from 191st Street Investors were not included in the calculation of Current Earnings as these losses relate to allowable tax deductions and do not appear to be income as defined by the Policy. Based on this understanding of the losses and direction from counsel, these amounts have been excluded from the calculation of Current Earnings.

19. To determine the Monthly Benefit to be paid, the Percentage Payable (Prior Earnings – Current Earnings/Prior Earnings) was calculated.[18] For Past Benefits due, The Prior Earnings from 2016 and Current Earnings for 2017 and 2018 were used. The calculated Percentage Payable for 2017 is 68.33% and 98.12% for 2018. These calculations are shown at the top section of Schedule 3.

---

[13] Residual Disability and Recovery Benefit Rider attached to Policy #7881467 (page 1).

[14] 2016 personal tax return: K-1 reported on Schedule E, Robert Garver's W-2 Wages shown on Statement 3 of the Form 1040, attached as Exhibit D.

[15] Residual Disability and Recovery Benefit Rider attached to Policy #7881467 (page 1).

[16] 2017 personal tax return: K-1 reported on Schedule E, Robert Garver's W-2 Wages shown on Statement 1 of the Form 1040, attached as Exhibit E.

[17] 2018 Welborn Sales, Form K-1 and Robert Garver's 2018 W-2, attached as Exhibit F.

[18] Residual Disability and Recovery Benefit Rider attached to Policy #7881467 (page 2).

Expert Report of Susan K. Thompson CPA/CFF                                                      Page 6 of 9

20. To calculate the Percentage Payable for years 2019 through 2039, the remaining Occupation Period, The Prior Earnings for 2016 was adjusted at the Change Date of July 12, 2018 by the CPI Index Factors listed on Schedule 2. The Prior Earnings were then increased at every subsequent Change Date in accordance with the COLA adjustment described in the Residual Disability and Recovery Benefit Rider attached to the Policy. I have estimated Current Earnings for 2019 using Garver's 2018 Welborn Sales, Inc. K-1 and the 2019 Welborn Sales W-2.[19] The Current Earnings for years 2019 through 2039 were also increased on the Change Date by the COLA using the same methodology as the Prior Earnings. Both Prior and Current Earnings were increased using the CPI Index Factors listed on Schedule 2.

21. As shown on Schedule 3, the calculated Percentage Payable amount for 2017 is 68.33%, 2018 is 98.12% and 2019 through 2039 is 75.03%. These percentages were used to determine the total Monthly Benefit amounts used to calculate the total value of past and future benefits on Schedule 1.

22. The policy states when the Percentage Payable (based on the above formula) exceeds 75%, 100% of the Maximum Monthly Benefit will be paid.[20] As the Percentage Payable exceeds the 75% threshold for all years after 2018, the Maximum Monthly Benefit of $4,680 has been used to calculate the value of Past and Future Benefits due from October 1, 2018 through August 6, 2039. See Schedule 1.

## **Maximum Monthly Benefit**

23. Per the Policy Data Page, the Maximum Monthly Benefit is $4,680. This amount is to be adjusted per the Cost of Living Adjustment Rider which states:

> *"Adjusted Maximum Monthly Benefit – means the Maximum Monthly Benefit(s) shown on the Data Page in effect at the start of Your Continuous Disability plus any cost of living adjustments made under this rider."*

24. The cost of living factor is based on the change in the Consumer Price Index for all Urban Consumers ("CPI-U") on an annual basis. The Policy describes the Cost of Living Adjustment (COLA) Factor as:

> *"The COLA Factor is, as of any Change Date, a factor which is based upon the change in the CPI-U on an annual basis. On the first Change Date, it is calculated by dividing the CPI-U for the calendar month three months before the first Change Date by the CPI-U for the calendar month three months before the date of Your*

---

[19] Attached as Exhibit G.
[20] Residual Disability and Recovery Benefit Rider attached to Policy #7881467 (page 2).

*Continuous Disability began. In subsequent years, it is calculated by dividing the CPI-U for the calendar month three months before the current Change Date by the CPI-U for the calendar month three months before the prior year's Change Date.*

25. Three months before Garver's Continuous Disability of July 2017 is April 2017. To calculate the COLA adjustment I obtained the CPI-U index for the month of April for each year 2016 – 2020 from the U.S. Department of Labor, Bureau of Labor Statistics.[21] I calculated the annual percentage change to CPI-U as of each April. See Schedule 2.

26. For future COLA adjustments, 2021 through 2039, I obtained the estimated CPI rate increase per the Livingston Survey, release date June 12, 2020. I used the projected CPI increase shown on Table 3, Long-Term (10-Year) Forecast, from the Survey of 2.00% to determine future COLA adjustments.[22] See Schedule 2.

## Present Value of Past and Future Benefits

27. The present value of both past and future benefits is calculated on Schedule 1.

### *Past Benefits Due*

28. To determine the total value of Past Benefits, I calculated the Percentage Payable using the formula set forth in the Residual Disability and Recovery Benefit Rider.[23] Beginning in 2018, the Percentage Payable exceeded the 75% threshold allowing for the Maximum Monthly Benefit of $4,680 to be paid. On the Change Date of July 12, 2018, and each 12 months thereafter, the calculated Monthly Benefit was adjusted based on the COLA percentage increase calculated on Schedule 2.

29. The total Past Benefits due excludes any amounts due prior to December 2018 as I have been informed Garver received disability payments through December 2018. The monthly Past Benefits include a component of statutory interest at 18% per annum to July 31, 2020.[24]

---

[21] https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexhistorical_us_table.htm
[22] See Schedule 2 and Exhibit H.
[23] Residual Disability Formula: Percentage Payable = (Prior Earnings – Current Earnings)/Prior Earnings.
[24] 18% interest per: "Except as otherwise provided by K.S.A. 40-447, 40-3110 and 44-512a, and amendments thereto, each insurance company, fraternal benefit society and any reciprocal or interinsurance exchange licensed to transact the business of insurance in this state which fails or refuses to pay any amount due under any contract of insurance within the time prescribed herein shall pay interest on the amount due. If payment is to be made to the claimant and the same is not paid within 30 calendar days after the amount of the payment is agreed to between the claimant and the insurer, interest at the rate of 18% per annum shall be payable from the date of such agreement. If payment is to be made to any other person for providing repair or other services to the claimant and the same is not paid within 30 calendar days following the date of completion of such services and receipt of the billing statement,

GARVER000012

30. The total value of Past Benefits as of July 31, 2020 is $112,282.  See Schedule 1.

*__Future Benefits Due__*

31. To determine the total value of Future Benefits, I calculated the Monthly Benefit Percentage Payable for years 2020 – 2039 on Schedule 3.  The estimated Percentage Payable for 2020 - 2039 exceeds 75%, allowing for 100% of the Maximum Monthly Benefit of $4,680 to be paid.[25]  The Monthly Benefit has been increased based on the estimated COLA percentage increase obtained from Table 3 of the Livingston Survey and shown on Schedule 2.[26]

32. The present value of Future Benefits due are discounted to July 31, 2020 using the U.S. Department of the Treasury 10 year Daily Yield Curve Rate published on July 22, 2020 of .60%.[27]  The total present value of Future Benefits as of July 31, 2020, calculated on Schedule 1 is $1,236,667.

# VI.    Conclusion

33. The present value of past and future benefits due Garver, as of July 31, 2020, is $1,348,949.[28]

34. The opinions expressed in this report are based on the information reviewed to date. When further information becomes available and reviewed, including testimony of corporate representatives, I reserve my right to amend, revise and finalize my report and opinions accordingly.

35. I declare the foregoing to all be correct and true to the best of my knowledge.  Executed on the 24th day of July 2020, at Fresno, CA.

_____
Susan K. Thompson

---

interest at the rate of 18% per annum shall be payable on the amount agreed to between the claimant and the insurer from the date of receipt of the billing statement. Kan. Stat. Ann. § 40-2,126 (West)".
[25] See Residual Disability and Recovery Benefit Rider.
[26] The estimated CPI increases used to determine the COLA for years 2019 – 2039 was obtained from The Livingston Survey, release date June 12, 2020, Table 3: Long-Term (10-Year) Forecasts Exhibit H.
[27] Exhibit I.
[28] See Summary Schedule Attached.

GARVER000013

# Exhibit A

GARVER000013



GARVER000014

CURRICULUM VITAE

HEMMING.COM

# SUSAN K. THOMPSON, CPA/CFF

## Employment & Education

| | |
|---|---|
| 2012 – Present | Hemming Morse, LLP |
| | Certified Public Accountants, Forensic and Financial Consultants |
| | Partner |
| | |
| 2001 – 2011 | Hemming Morse, Inc. |
| | Director, 2004-2011 |
| | Manager, 2001-2003 |
| | |
| 1987 – 2001 | Silva Harden & Adolph, AC |
| | Fresno, CA |
| | |
| 1985 – 1987 | Price Waterhouse |
| | San Jose, California |
| | |
| 1984 – 1985 | Price Waterhouse |
| | Newport Beach/Riverside, California |
| | |
| 1983 | Loma Linda University, Loma Linda, California |
| | B.S. Accounting |

GARVER000014



GARVER000015

CURRICULUM VITAE

HEMMING.COM

# SUSAN K. THOMPSON, CPA/CFF

## Professional & Service Affiliations

- Certified Public Accountant, State of California

- Certified in Financial Forensics

- California Society of Certified Public Accountants
  - Member, Forensic Services Section for Economic Damages
  - Member, Forensic Services Section for Fraud
  - Member, Litigation Steering Committee, 1997-2001
  - Chair, Litigation Services Committee, Fresno Chapter, 1997-1999

- American Institute of Certified Public Accountants
  - Loma Linda University Alumni Association
  - Smile For A Lifetime, Fresno/Clovis Chapter
  - Board of Directors, 2011- 2019 Publications

- Co-editor of The Witness Chair, published quarterly by the Litigation Sections of the California Society of Certified Public Accountants, 1999-2002

## Seminar Instruction/Presentations

- **Speaker,** AICPA Forensics & Valuation Services Conference: When Good Food Goes Bad, 2015

- **Speaker,** California Society of CPAs Economic Damages Section Conference – Business Interruptions: When Good Food Goes Bad, 2015

- **Speaker,** State Association of County Auditors 103rd Conference – Developing Your Fraud Investigation Through Percipient and Subject Interviews, 2013

- **Speaker,** Fresno Chapter of the Institute of Management Accountants

## Testimony

### Trial and Arbitration

- Mandeep Singh Samrai dba American Quality Logistics, et al. v. Harjit Singh Samrahi, et al. (2019) California Superior Court, Fresno County Case No. 16CECG02450

- C & C Properties, et al. v. Shell Pipeline Company, et al. (2019) U.S. District Court Eastern District of California Case No. 1:14-cv-01889-DAD-JLT

- Timothy Norman, Ph.D. v. Hanna Boys Center, Inc. (2018) California Superior Court, Sonoma County SCV-260065

- Cynthia Klein v. Kewel Munger, a.k.a. Kable Munger, et al. (2018) California Superior Court, Kern County Case No. S-1500-CV-276206 SPC

GARVER000015



GARVER000016

CURRICULUM VITAE

HEMMING.COM

# SUSAN K. THOMPSON, CPA/CFF

## Testimony continued

### Trial and Arbitration continued

- Ariel Elia v. John Roberts, Texas Environmental Products, Inc. (2017) U.S. District Court Eastern District of California, Fresno Division, Case No. 1:16-cv-00557-AWI-EPG

- Ted Switzer v. Flournoy Management, LLC, et al. (2017) California Superior Court, Fresno County Central Divison, Case No. 11CECG04395 MWS

- Baltara Enterprises, L.P. v. R&C Patterson Family Limited Partnership, et al. (2017) California Superior Court, Fresno County Case No. 14CECG01033 MWS

- Bobby L. Lo and Nancy V. Lo v. Greater Fresno Health Organization, Inc.. dba North Marks Clinic; Vang Moua, et al. (2016) California Superior Court, County of Fresno, Civil Division, Case No. 15CECG00854

- Ashley Lane, LP v. Producers AG Insurance Group (2015) American Arbitration Association Case No. 74-20-1300-0169

- Fresno RV, Inc., et al. v. Paul Evert's RV Country, Inc., et al. (2013) California Superior Court, Fresno County Case No. 11CECG01433

- Muhammad Anwar, M.D. v. State of California, et al. (2012) California Superior Court, Madera County Case No. MCV034056

- Jaime Hernandez v. Eugenia Costa, et al. (2012) California Superior Court, Alameda County Case No. RG1049274

- Lopez, et al. v. Allstate Insurance Company, et al. (2012) California Superior Court, Fresno County Case No. 10CECG01035JH

- In re: Zachariah, Jacob v. AMCO, Inc. (2012) Judicial Arbitration and Mediation Services San Francisco Division, Ref No. 1100068786

- eMocha, LLC, et al. v. Central Plaza Union City, L.P., et al. (2010) California Superior Court, Alameda County Case No. RG06-296460

- Primex Farms, LLC v. Chapparal Farms, Inc. (2010) California Superior Court, Fresno County Case No. 07CECG02935

- Gallegos, et al. v. NCRC, Inc. (2009) California Superior Court, Fresno County Case No. 07CECG04060AMC

- People v. Harry Kassebaum (2008) California Superior Court, Fresno County Case No. F05906970-9

- Monarch Nut Company, Inc. v. Mutual Service Casualty Insurance Company (2005) California Superior Court, Tulare County Case No. 01-196556

- Cal Farm Insurance Company v. Mister "C" Investments (2003) California Superior Court, Fresno County Case No. 01 CE CG 00109

GARVER000016



CURRICULUM VITAE

HEMMING.COM

# SUSAN K. THOMPSON, CPA/CFF

## Testimony continued

### Deposition

- Michelle Aivazian Sanders, et al. v. Deborah R. Aivazian, et al. (2019)
  California Superior Court, Fresno County
  Case No. 18CECG02412

- Mandeep Singh Samrai dba American Quality Logistics, et al. v. Harjit Singh Samrahi, et al. (2019)
  California Superior Court, Fresno County
  Case No. 16CECG02450

- Shawn Alger v FCA US LLC (2019)
  U.S. District Court Eastern District of California Sacramento Division (2019) Case No. 2:18-cv-00360-MCE-EFB

- Armando J. Becerra, et al. v. General Motors LLC (2019)
  U.S. District Court Southern District of California
  Case No. 15CV2365-JAH-LL

- Dorothy Rodden Jackson v. Richard Calone, et al (2018)
  U.S. District Court Eastern District of California
  Case No. 2:16-cv-00891 TLN KJN

- Jack Sislian and Christine Sislian v. Charlie Sis- lian, et al. (2018) California Superior Court, Fresno County
  Case No. 17 CECG 03588

- Timothy Norman, Ph.D. v. Hanna Boys Center, Inc. (2018)
  California Superior Court, Sonoma County SCV-260065

- In the Matter of The Ernest K. Valorosi and Cheryl Valorosi Revocable Living Trust (2017)
  California Superior Court, Madera County
  Case No. MPR013610

- Ariel Elia v. John Roberts, Texas Environmental Products, Inc. (2017) U.S. District Court Eastern District of California, Fresno Division
  Case No. 1:16-cv-00557-AWI-EPG

- Baltara Enterprises, L.P. v. R&C Patterson Family Limited Partnership, et al. (2017)
  California Superior Court, Fresno County
  Case No. 14CECG01033 MWS

- Kobe Falco, et al. v. Nissan North America, Inc. and Nissan Jidosha Kabushiki Kaisha (2017)
  U.S. District Court Central District of California
  Case No.  2:13-cv-00686-DDP-MAN

- Monarch Nut Company, LLC and Munger Farms v. Goodnature Products, Inc. (2016)
  U.S. District Court Western District of New York
  Case No. 14-cv-01017-WMS

- Alfred Salas and Gloria Ortega v. Toyota Motor Sales, U.S.A., Inc. (2016)
  U.S. District Court, Central District of California
  Case No. CV15-08629 FMO (Ex)

- In re Dorothy R. Jackson and Donald D. Jackson Irrevocable Family Trust (2016)
  California Superior Court, Stanislaus County
  Case No. 2200192

GARVER000017

GARVER000018



CURRICULUM VITAE

HEMMING.COM

# SUSAN K. THOMPSON, CPA/CFF

## Testimony continued

### Deposition continued

- Bobby L. Lo and Nancy V. Lo v. Greater Fresno Health Organization, Inc.. dba North Marks Clinic; Vang Moua, et al. (2016) California Superior Court County of Fresno, Civil Division Case No. 15CECG00854

- Star Laundry Services, Inc. v. Western State De- sign, Inc., et al. (2015) California Superior Court County of San Diego - Central Division Case No. 37-2014-00011335-CU-BC-CTL

- Kobe Falco v. Nissan North America, Inc., et al. (2015) U.S. District Court, Central District of California Case No. 2:13-cv-00686-DDP-MANx

- Irvine Apartment Communities, L.P. v. Western National Construction, et al. (2015) American Arbitration Association Case No. 73 443 Y 00234 12

- Anamiria Madrigal, et al. v. New Cingular Wireless Services, Inc., et al. (2015) American Arbitration Association Case No. 74 484 Y 00301 11 nolg

- Melinda Ward v. Superior Carpet Care, et al. (2015) California Superior Court, Fresno County Case No. 13CEGG00704 MWS

- Centerplate v. Unite Here (2014) U.S. District Court, Case No. 13-CV-2318 DMR

- Sharron Warehime v. Farmers Insurance (2013) California Superior Court, Fresno County Case No. 08CECG02976

- Fresno RV, Inc., et al. v. Paul Evert's RV Country, Inc., et al. (2013) California Superior Court, Fresno County Case No. 11CECG01433

- Jaime Hernandez v. Eugenia Costa, et al. (2012) California Superior Court, Alameda County Case No. RG1049274

- Muhammad Anwar, M.D. v. State of California, et al. (2012) California Superior Court, Madera County Case No. MCV034056

- Primex Farms, LLC v. Roll International Corp., et al. (2012) California Superior Court, Fresno County Case No. 10CECG01114

- Lopez, et al. v. Allstate Insurance Company, et al. (2012) California Superior Court, Fresno County Case No. 10CECG01035JH

- Bobby L. Lo and Nancy V. Lo v. Greater Fresno Health Organization, Inc.. dba North Marks Clinic; Vang Moua, et al. (2016) California Superior Court County of Fresno, Civil Division Case No. 15CECG00854

- Primex Farms, LLC v. Chapparal Farms, Inc. (2010) California Superior Court, Fresno County Case No. 07CECG02935

- Gallegos, et al. v. NCRC, Inc. (2009) California Superior Court, Fresno County Case No. 07CECG04060AMC



## SUSAN K. THOMPSON, CPA/CFF

### Testimony continued

**Deposition** continued

- Tremblay v. Aladdin Resort & Casino, et al. (2009)
  District Court, Clark County, Nevada Case No. A494547

- Lucille Epperson v. Hope Manor, et al. (2008)
  California Superior Court, Fresno County
  Case No. 07CECG02718

- Elaine Cantu v. Family Healthcare, et al. (2007)
  California Superior Court, Fresno County
  Case No. 05CECG00738DSB

- Marla Lynn Swanson v. Susan Jane Tovar, et al. (2005)
  California Superior Court, Tulare County
  Case No. 04-211317

- AMCO Insurance Company v. Madera Quality Nut, LLC
  (2005) U.S. District Court, Case No. CIV-F-04-6456

- Monarch Nut Company, Inc. v. Mutual Service Casualty
  Insurance Company (2003) California Superior Court,
  Tulare County Case No. 01-196556

- Cal Farm Insurance Company v. Mister "C"
  Investments (2003) California Superior Court, Fresno
  County Case No. 01 CE CG 00109

### Selected Experience

- Expert witness for plaintiffs' counsel in a wage and hour matter involving multiple employees spanning multiple years. The case involved unpaid overtime, meal and rest break violations, unpaid drive time to job sites, and off-the-clock time for traveling repairmen. Reviewed and analyzed employment history files, time and travel records, job site records, compensation data, and other documents to determine the proper employee compensation and to quantify damages.

- Expert witness for plaintiff in a loss of business income case. Determined the loss that resulted from the failure to plant corn silage, based on the insurance agent's direction, on land that had previously flooded.

- Accounting consultant for the insured in a large business interruption case involving a nut processing plant. The case went to appraisal upon which each element of loss was unanimously decided in favor of client in excess of $1 million dollars.

- Accounting consultant for an insurance company to investigate a theft at the insured's nut processing plant. Analysis included documenting the accounting and physical controls surrounding inventory and

GARVER000019

GARVER000020



CURRICULUM VITAE

HEMMING.COM

## SUSAN K. THOMPSON, CPA/CFF

### Selected Experience continued

- Accounting consultant for a large insurance company in a suspected fraudulent claim of a nut processing plant. Based upon analysis performed, including following transactions through the perpetual inventory system, the receiving and shipping processes, the claim was denied and further action was taken against the insured.

- Performs analysis of Trust Accountings in disputed matters. Has worked in matters where over 10 years of Trust Accounting had to be tested and analyzed for propriety, including analysis of related parties who had financial interactions with the Trust.

- Expert witness for the plaintiff, a nut processor. Calculated damages in a breach of contract dispute, ultimately determining the lost contribution margin due to the breach. Plaintiff was awarded damages according to testimony.

- Accounting consultant to the plaintiff, a nut grower, against their nut processor for suspected fraudulent accounting practices. Analysis included assessing reasonable processing costs, allocation of fixed and variable costs and analysis of third party transactions. The analysis lead to successful settlement in favor of the plaintiff before trial.

- Served as a neutral in an insurance appraisal hearing involving lost profits of a fast food restaurant.

- Performs internal control reviews for not for profit as well as for profit businesses.

- Accounting consultant on behalf of the insurance company to assist in quantifying the losses of their insured's due to Class 1 food recalls, both domestically and internationally. This included interacting with the insured's customers and  following the recalled product through all processors up to the point it is sold to the end consumer. Losses included raw product, work in progress and finished goods. The results of the analysis were used by counsel and the insured to settle claims. Assistance was provided in the  settlement process as well.

- Accounting consultant to many of the larger property and casualty insurance companies in California in assessing claims for loss of earnings, loss of inventory stock and loss of other business assets in agricultural, retail, food services and construction.

- Accounting consultant in several insurance fraud cases on behalf of the insurance company and/or the legal counsel assisting the insurance company. Duties included tracing money in money laundering schemes, providing financial status information for businesses or individuals, determining probable asset/inventory on hand, analysis and interpretation of accounting records and internal control structures, as well as analyzing various financial transactions.

- Accounting consultant in a large insurance fraud case. Worked with investigators from the Federal Bureau of Investigation and the District Attorney of Fresno's office in tracing funds through several bank accounts of several businesses.

GARVER000020

GARVER000021



CURRICULUM VITAE

HEMMING.COM

# SUSAN K. THOMPSON, CPA/CFF

### Selected Experience continued

- Assisted attorneys in preparation for depositions, in various stages of litigation and in anticipation of litigation. Prepared exhibits and related write-up work for trial. Typical services included calculations of damages and loss of earnings, analysis and interpretation of accounting records, and analysis of internal controls in industries including agricultural, professional services, retail, food services, construction, automobile dealerships, governmental entities, and real estate development.

- Provided expert witness testimony in cases involving personal injury and wrongful termination and resulting lost wages/damages.

- Provided expert witness testimony in a criminal matter involving real estate fraud. Our involvement included tracing investor funds over several years through several bank accounts and various businesses.

- Assisted a general contractor and a California city in mediation proceedings by calculating damages and resulting lost profits to lessees which was relied upon by all parties involved.

- Provides damage calculations and expert testimony in class action lawsuits.

GARVER000021

GARVER000022

# Exhibit B

GARVER000022

**Robert P. Garver v Principal**
**Exhibit B**


**<u>Document Considered</u>**
Robert P Garver Disability Policy #7881467
Robert Garvers W-2' 2018 and 2019
2015 Amended Federal Tax Return - Robert & Molly Garver
2015 Amended Kansas Tax Return - Robert & Molly Garver
2016 Tax Return - Robert & Molly Garver
2017 Tax Return - Robert & Molly Garver
2017 1120S Tax Return -  Robert Garver Builders Inc. Tax Return
2018 Tax Return
2018 Robert Garver Builder Tax Return
2018 1120S Tax Return - Welborn Sales Tax Return
2018 191st Street Investors Form 1065 Schedule K-1
Draft PV Schedules
notes re: 191st
2018 - K-1 191st Street Investors Form 1065
Livingston Survey 12.13.19
U.S. Consumer Price Index for All Urban Consumers (1970 - 2019)
https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexhistorical_us_table.htm
10-Year Daily Treasury Yield Curve Rate as of 2.26.2020
Principal Letter dated 6/19/2020.
10-Year Daily Treasury Yield Curve Rate as of 7.22.2020
Livingston Survey 6.12.20
Bank Screenshot (residual benefit payment 6/16/2020)

GARVER000024

# Exhibit C

GARVER000024

GARVER000025

# DISABILITY INCOME POLICY

NON-CANCELLABLE AND GUARANTEED RENEWABLE AT GUARANTEED PREMIUM RATES TO YOUR AGE 65 POLICY ANNIVERSARY OR FOR FIVE YEARS FROM THE POLICY DATE, IF LATER. CONDITIONALLY RENEWABLE THEREAFTER ON ANNUAL BASIS FOR LIFE, SUBJECT TO CHANGE IN PREMIUM RATES. IF THE SOCIAL INSURANCE SUBSTITUTE BENEFIT IS INCLUDED, IT IS CONTINUABLE AT GUARANTEED PREMIUM RATES TO THE EARLIER OF YOUR AGE 65 POLICY ANNIVERSARY OR UPON RECEIPT OF SOCIAL SECURITY RETIREMENT BENEFITS OR RAILROAD RETIREMENT BENEFITS. NONPARTICIPATING.

Coverage under this policy starts at 12:01 a.m. in the state the insured resides on the Policy Date and will stay in force until 12:00 a.m. in the state the insured resides on Your Age 65 Policy Anniversary or after five years from the Policy Date, if later, as long as premiums are paid when due. If the conditions are met in the Conditional Renewal section, this policy may be renewed each year thereafter for life.  While this policy is in force, We cannot:

1. Cancel it; or
2. Change the premium rate (before the Age 65 Policy Anniversary or five years from the Policy Date, if later).

This policy is a legal contract between the Owner and Us.  The policy is issued in consideration of the application and payment of premiums.  We will pay this policy's benefits due to Disability or qualifying loss resulting from Injury or Sickness subject to the definitions, exclusions and all other provisions of this policy. The Disability or qualified loss must begin while the policy is in force.

## 30 DAY EXAMINATION OFFER

It is important to Us that the Owner is satisfied with this policy and that it meets the Owner's insurance goals.  If the Owner is not satisfied with this policy for any reason, the policy may be returned to either the producer or Our Home Office within thirty days after the Owner has received the policy.  We will refund any premiums paid and the policy will be considered void from its inception. PLEASE READ THE POLICY CAREFULLY.

## IMPORTANT NOTICE

Please review the copy of the application attached to this policy. The application is part of the policy. The policy was issued on the basis that the answers to all the questions and the information shown on the application are correct and complete.  Material misstatements or omissions on the application could void the policy.  If any information on the application is not correct or is omitted, please call or write Principal Life Insurance Company, Individual Disability Insurance, 711 High Street, Des Moines, Iowa 50392-0001, 1(800) 247-9988.

Executive Vice President,
General Counsel and Secretary

Chairman, President and CEO

**Principal**
*Financial Group*

Principal Life
Insurance Company

711 High Street
Des Moines, Iowa 50392-0001

DUPLICATE
Policy issued in lieu of Lost or Destroyed
Policy Bearing the same number.

INSURED          Robert P Garver

HH 750 KS   (Rev. 09/14)                          7881467

GARVER000026

# TABLE OF CONTENTS

**SUBJECT**        **PAGE**

**POLICY DEFINITIONS** ................................................................................................ 4

**DISABILITY BENEFIT** ............................................................................................... 8

**SOCIAL INSURANCE SUBSTITUTE BENEFIT** ...................................................... 8
ADDITIONAL PROOF OF LOSS FOR SOCIAL INSURANCE SUBSTITUTE BENEFIT ......... 9

**OTHER BENEFITS** ................................................................................................10
TRANSPLANT SURGERY BENEFIT................................................................10
ACCIDENTAL DEATH BENEFIT ....................................................................10
REHABILITATION BENEFIT ..........................................................................10
WAIVER OF PREMIUM BENEFIT...................................................................11

**EXCLUSIONS AND LIMITATIONS** .......................................................................11
EXCLUSIONS ................................................................................................11
LIMITATION WHEN OUTSIDE THE UNITED STATES OR CANADA....................11
PRE-EXISTING CONDITION LIMITATION .......................................................12
OTHER EXCLUSIONS AND LIMITATIONS ......................................................12

**CLAIM INFORMATION**..........................................................................................12
NOTICE OF CLAIM AND PROOF OF LOSS.....................................................12
INDEPENDENT MEDICAL EXAMINATION.......................................................14
CONTINUING BENEFITS ...............................................................................14
PAYMENT OF A CLAIM..................................................................................14
OVERPAYMENT OR UNDERPAYMENT OF BENEFITS....................................14
LEGAL ACTION .............................................................................................14

**PREMIUMS AND REINSTATEMENT** .....................................................................15
PAYMENT OF PREMIUM ...............................................................................15
GRACE PERIOD.............................................................................................15
REFUND OF PREMIUMS ................................................................................15
REFUND AFTER DEATH .................................................................................15
TERMINATION................................................................................................15
REINSTATEMENT ..........................................................................................16
SUSPENSION DURING MILITARY SERVICE ..................................................16

**CONDITIONAL RENEWAL** ....................................................................................16

**POLICY ADJUSTMENT OPTIONS** ........................................................................17

**THE CONTRACT**...................................................................................................18
ENTIRE CONTRACT ......................................................................................18
ALTERATIONS ...............................................................................................18
TIME LIMIT ON CERTAIN DEFENSES............................................................18
FRAUD ..........................................................................................................18
MISSTATEMENT OF AGE ..............................................................................18
CHANGE OF OWNER OR BENEFIT RECIPIENT .............................................18
ASSIGNMENT.................................................................................................18
CANCELLATION BY INSURED ........................................................................19

A copy of the application and any riders are attached to the back of this policy.

HH 750 KS   (Rev. 09/14)                                      7881467

GARVER000026

GARVER000027

## REMOVAL OF JOB OR WORK SITE MODIFICATION REQUIREMENT ENDORSEMENT

This endorsement is part of Your policy and is effective as of the Policy Date. All definitions, provisions, and exceptions of the policy and riders apply to this endorsement unless changed by this endorsement.

The following paragraph is removed from the definition of **TOTAL DISABILITY** in the **POLICY DEFINITIONS** provision of the **policy**:

In order to be eligible for Total Disability, there must also be no reasonable job or work site modifications which would allow You to Work.

The following requirement is removed from the proof of loss requirements in the **NOTICE OF CLAIM AND PROOF OF LOSS** provision of the **policy**:

Evidence that reasonable job or work site modifications are not feasible.

The following sentence is removed from the definition of **TOTAL DISABILITY** in the **DEFINITIONS** provision of any attached **Extended Total Disability Benefit Rider**:

In order to be eligible for Total Disability under this rider, there must also be no reasonable job or work site modifications which would allow You to Work.

The following sentence is removed from the definition of **TOTAL DISABILITY** in any attached **Regular Occupation Rider**:

In order to be eligible for Total Disability under this rider, there must also be no reasonable job or work site modifications which would allow You to Work in Your Occupation.

The third paragraph of the definition of **RESIDUAL DISABILITY** in the **DEFINITIONS** provision of any attached **Short Term Residual Disability Benefit Rider** and the **RESIDUAL DISABILITY DEFINITIONS** provision of any attached **Residual Disability and Recovery Benefit Rider** is replaced with the following:

While You are Working during a period of Residual Disability, You must Work to the full capacity allowed medically and vocationally in that occupation by Your Injury or Sickness. If You choose not to Work to full capacity, benefits will be paid as if You are Working at full capacity in that occupation.

*David J. Houston*

Chairman, President and CEO

Principal Life Insurance Company
Des Moines, Iowa  50392-0001

HH 793                                                                 7881467

GARVER000028



**Principal Life
Insurance Company**
Des Moines, Iowa 50392-0001

## DATA PAGE

## Disability Income Insurance

## POLICY INFORMATION

| | |
|---|---|
| **Policy Number:** | 7881467 |
| **Owner(s):** | Robert P Garver |
| **Insured's Name:** | Robert P Garver |
| **Insured's Age and Gender Class:** | 40 – Male |
| **Policy Date:** | August 6, 2015 |

| | **Elimination Period** | **Maximum Monthly Benefit** |
|---|---|---|
| **Disability Benefit:** | 90 Days | $4,680 |

**Social Insurance Substitute Benefit: Not Included**

**Maximum Benefit Period
  for the Disability Benefit:**     To Age 65 Policy Anniversary *

| **\*If Insured's Disability begins:** | **Then the Maximum Benefit Period is:** |
|---|---|
| Prior to Age 61 Policy Anniversary | To Age 65 Policy Anniversary |
| On or After Age 61 Policy Anniversary but prior to Age 62 Policy Anniversary | 48 Months |
| On or After Age 62 Policy Anniversary but prior to Age 63 Policy Anniversary | 42 Months |
| On or After Age 63 Policy Anniversary but prior to Age 64 Policy Anniversary | 36 Months |
| On or After Age 64 Policy Anniversary but prior to Age 65 Policy Anniversary | 30 Months |
| On or after Age 65 Policy Anniversary | No benefits are payable, unless renewed as described below |

**Your Occupation Period is:**     To Age 65 Policy Anniversary

If this policy is renewed as described in the Conditional Renewal section, the Maximum Benefit Period is 2 years and the Your Occupation Period is 2 years.

**The Accidental Death Benefit is:**     $14,040

Also see the Exclusions and Limitations section of the policy.

HH750 KS   -2            3            7881467

GARVER000028

GARVER000029

## RIDER INFORMATION

**HH751**     **Capital Sum Benefit Rider**
   **Effective Date:**       August 6, 2015
   - Capital Sum Benefit:      $56,160

**HH752**     **Catastrophic Disability Benefit Rider**
   **Effective Date:**       August 6, 2015
   - Catastrophic Disability Benefit:      $8,000
   - Catastrophic Disability Elimination Period: 90 Days
   - Catastrophic Disability Maximum Benefit Period: **To Age 65 Policy Anniversary***

| *If Insured's Catastrophic Disability begins: | Then the Catastrophic Disability Maximum Benefit Period is: |
|---|---|
| Prior to Age 61 Policy Anniversary | To Age 65 Policy Anniversary |
| On or After Age 61 Policy Anniversary but prior to Age 62 Policy Anniversary | 48 Months |
| On or After Age 62 Policy Anniversary but prior to Age 63 Policy Anniversary | 42 Months |
| On or After Age 63 Policy Anniversary but prior to Age 64 Policy Anniversary | 36 Months |
| On or After Age 64 Policy Anniversary but prior to Age 65 Policy Anniversary | 30 Months |
| On or after Age 65 Policy Anniversary | No benefits are payable. |

**HH753**     **Cost of Living Adjustment Rider**
   **Effective Date:**       August 6, 2015
   - COLA Maximum Percent: 3%

**HH755**     **Presumptive Disability Benefit Rider**
   **Effective Date:**       August 6, 2015

**HH788**     **Future Benefit Increase Rider**
   **Effective Date:**       August 6, 2015
   **Option Date:**       August 6, 2015

   - Minimum Index Percent: 4% rounded up to the next $25 increment
   - Maximum Index Percent: 10%

**HH776**     **Supplemental Health Benefit Rider**
   **Effective Date:**       August 6, 2015
   **Termination Date:**    To Insured's Attained Age 65

   - Supplemental Health Benefit Amount:      $28,080

**HH784**     **Residual Disability and Recovery Benefit Rider**
   **Effective Date:**       August 6, 2015

GARVER000029

GARVER000030

## PREMIUM INFORMATION

**POLICY**
Disability Benefit:                                      $2,514.35
**RIDERS**
Capital Sum Benefit:                                     $0.00
Catastrophic Disability Benefit:                         $552.00
Cost of Living Adjustment:                               $377.56
Presumptive Disability Benefit:                          $0.00
Future Benefit Increase Rider:                           $0.00
Supplemental Health Benefit Rider:                       $0.00
Residual Disability and Recovery Benefit Rider:          $479.16

**Total Annual Premium:**                               $3,923.07

| PREMIUM PAYMENT FREQUENCY OPTIONS | Premium | Annualized Premium | Premium Payment Frequency Charge Included* |
|---|---|---|---|
| **Total Annual Premium:** | $3,923.07 | $3,923.07 | $0.00 |
| Semi-Annual Premium: | $2,010.57 | $4,021.14 | $98.07 |
| Quarterly Premium: | $1,029.81 | $4,119.24 | $196.17 |
| EFT/Monthly Premium: | $343.27 | $4,119.24 | $196.17 |

*There is an additional charge for premium payment frequencies other than annual.

Renewal of coverage as described in the Conditional Renewal section may require an increase in the renewal premium. Please refer to this section in the policy for details.

If you have any questions, call your financial representative.  To file a claim, call our Home Office at 1-800-422-3788.

This Data Page Prepared On:  August 1, 2017

HH750 KS   -2                          3-2                          7881467

GARVER000030

GARVER000031

# POLICY DEFINITIONS

The following defined terms and phrases are capitalized throughout the policy.  Please read them carefully as they will help You understand the policy provisions.

ADJUSTMENT DATE — means the effective date of a change in coverage made to the policy.  The most recent Adjustment Date, if any, is shown on the Data Page.

AGE POLICY ANNIVERSARY — means the Policy Anniversary on or next following Your birthday.  For example, if the Policy Date is June 5, 2010, and You are 45 years old on April 3, 2030, the Age 45 Policy Anniversary is June 5, 2030.

BENEFIT RECIPIENT — means the person or entity named as the Benefit Recipient in the application or a later written request to change the Benefit Recipient which is approved by Us.  The term includes any lawful successors of the Benefit Recipient.  Unless otherwise stated in this policy or attached riders, benefits will be paid to the Benefit Recipient.  If no Benefit Recipient is named in the application or other written request then the Owner is the Benefit Recipient.

CONTINUOUS DISABILITY — means Your Disability that continues with no interruption.  You will also be considered Continuously Disabled if an Interrupted Elimination Period or Recurring Disability occurs.  It is also considered one Continuous Disability if You are Disabled from one condition and, while still Disabled from that condition, incur another condition that causes Disability.

DISABILITY/DISABLED — means, when used alone, Total Disability.  If either the Residual Disability Benefit Rider or the Short Term Residual Disability Benefit Rider is attached to Your policy, Disability also means Residual Disability.  If a Disability is caused by more than one Injury or Sickness, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

DOCTOR — means a duly licensed physician, which includes a medical doctor, an optometrist, a podiatrist, a dentist, a chiropractor, a psychologist, an osteopath, or an advanced practice registered nurse who is licensed by law, and is acting within the scope of their license, to treat an Injury or Sickness. If the Disability is due to a disease or disorder classified in the most current Diagnostic and Statistical Manual of Mental/Nervous Disorders (DSM) published by the American Psychiatric Association or its successor, the person must be a board-certified psychiatrist or a licensed doctoral level psychologist. The person cannot be You, any person related to You by blood or marriage, the Owner, the Benefit Recipient, a business or professional partner or associate, or any person who has a financial affiliation or business interest with You or Your spouse.

EARNINGS — means:

If You are an employee with no ownership interest in a business entity, Earnings include the amounts as reported for Federal Income Tax purposes of:

1. Your salary, wages, fees, draw, commissions, bonuses; PLUS

2. Any other income or compensation You earn; PLUS

3. Amounts You earned which would have resulted in current taxable employee compensation but instead were contributed by You to a benefit plan (e.g. Flexible Spending Accounts, etc.), or qualified tax-deferred retirement plan (e.g. 401 (k), 403 (b), 457, etc.); LESS

4. Unreimbursed employee business expenses.

HH 750 KS   (Rev. 09/14)                              4                              7881467

GARVER000032

If You are a business owner, such as: an owner of a sole proprietorship, a partner in a partnership, a shareholder of a corporation or subchapter S-corporation, or a member of a limited liability company or limited liability partnership; and You perform the duties or activities of Your Occupation or another occupation within the scope of a legal business entity, Earnings include the amounts as reported for Federal Income Tax purposes of:

1. Your share (based on ownership or contractual agreement) of the gross revenue or income earned by all such business entities including income earned by You and others under Your supervision or direction; LESS

2. Your share (based on ownership or contractual agreement) of the usual and customary unreimbursed business expenses of those entities which are incurred on a regular basis, are essential to the established business operation of the entity, are deductible for Federal Income Tax purposes, and do not exceed expenses before Disability began.  Such expenses do not include salaries, benefits, and other forms of compensation which are payable to You, or to any person related by blood or marriage to You unless such person was a full-time employee of such business working at least 30 hours per week for at least 60 days prior to the start of Your period of Disability; PLUS

3. Any contributions to a pension or profit sharing plan made on Your behalf by all such business entities and not waived by contract during Disability.

Earnings do not include any form of unearned income such as dividends, rents, interest, capital gains, income received from any form of deferred compensation, retirement, pension plan, income from royalties, or disability benefits.

ELIMINATION PERIOD – means the number of days of Disability from the start of a Continuous Disability for which no benefits will be paid.  The Data Page shows the Elimination Period for the Disability Benefit section and the Social Insurance Substitute Benefit section, if applicable.

FAMILY BENEFIT AMOUNT – means amount(s) payable for Your spouse or dependents, if any, for Your retirement or disability under Social Security.

FULL TIME WORK – means at least the same average number of hours per week as You Worked during the 12 month period prior to Disability.

HOME OFFICE – means Principal Life Insurance Company,  711 High Street,  Des Moines, Iowa 50392-0001.

INJURY – means accidental bodily injury which occurs on or after the Policy Date and while this policy is in force.

INTERRUPTED ELIMINATION PERIOD – means if Your Disability is not continuous the Elimination Period will be met if the required number of days of Disability occur in a period that is:

1. Twice as long as the Elimination Period; and

2. Less than one year.

Disability may be from the same or a different cause.  The periods of Disability will be combined to meet the Elimination Period.

HH 750 KS   (Rev. 09/14)                    5                              7881467

GARVER000032

GARVER000033

**MAXIMUM BENEFIT PERIOD** – starts after satisfaction of the Elimination Period and is the longest time for which benefits will be paid for any one Continuous Disability. The Maximum Benefit Period for this policy is shown on the Data Page.

**OWNER** – means the person(s) and/or entity(ies) named as the Owner in the application or a later written request for change of ownership which is approved by Us. The Owner may exercise every right and privilege provided by this policy, except that benefits will be paid as stated in the Payment Of A Claim provision. If You are not the Owner and the Owner dies before You, You become the Owner unless the Owner has provided for a successor owner.

**POLICY ANNIVERSARY** – is computed from the Policy Date. For example, if the Policy Date is June 5, 2010, the Policy Anniversary is June 5 of every year thereafter.

**POLICY DATE** – means the date coverage under this policy begins. This date is shown on the Data Page.

**PRIMARY INSURANCE AMOUNT** – means the amount payable to You for retirement or disability under Social Security. It does not include benefits payable because of Your spouse or dependents, if any.

**RAILROAD RETIREMENT** – means benefits payable to You for disability or retirement under the Railroad Retirement Act of the United States, as amended.

**RECURRING DISABILITY** – means a continuation of a prior Disability when:

1.  The recurrence of Disability occurs while this policy is in force and results from the same or directly related cause as the prior Disability for which We paid benefits or provided the Waiver of Premium Benefit; unless

2.  After the prior Disability ends You return to Work at least 40 hours per week in any occupation for at least 6 consecutive months.

No new Elimination Period is required. We will pay benefits during the Recurring Disability for the remainder of the Maximum Benefit Period, if any.

**REGULAR CARE BY A DOCTOR** – means:

1.  You are evaluated in person by a Doctor; and

2.  You receive treatment appropriate for the condition causing Your Disability; and

3.  Your evaluations and treatment are provided by a Doctor whose specialty is appropriate for the condition causing Your Disability; and

4.  The evaluations and treatment must be at a frequency intended to return You to Full Time Work; and

5.  You must pursue reasonable treatment options or recommendations to achieve maximum medical improvement.

We may require You to have Your Doctor provide Us with a written evaluation and treatment plan for the condition causing Your Disability, which meets generally accepted medical standards and is satisfactory to Us.

We may waive, in writing to You, the Regular Care By A Doctor requirement if it is determined by Us that continued care would be of no benefit to You.

GARVER000033

GARVER000034

RETIRED — means You are not actively Working in any capacity for pay or profit at the start of Your Disability and are receiving governmental retirement benefits, or qualified or nonqualified retirement benefits.

SICKNESS — means an illness or disease which first manifests itself on or after the Policy Date and while this policy is in force. Complications of pregnancy and complications of childbirth are covered Sicknesses.

SOCIAL INSURANCE — means one or more of the following:

1.  Primary Insurance Amount from Social Security;

2.  Family Benefit Amount from Social Security;

3.  Disability benefits or settlements from Workers Compensation;

4.  Disability or Retirement benefits from Railroad Retirement;

5.  Retirement benefits from Social Security;

6.  Any other benefits from any local, state or federal government plan that are established to replace or supplement Social Security, Railroad Retirement or Workers Compensation.

SOCIAL SECURITY — means retirement or disability benefits payable under the Social Security Act of the United States, as amended. This includes the Primary Insurance Amount and Family Benefit Amount.

TOTAL DISABILITY — means solely due to Injury or Sickness:

1.  During the Your Occupation Period

    a)  You are unable to perform the substantial and material duties of Your Occupation; and

    b)  You are not Working.

2.  After the Your Occupation Period You are unable to Work in any occupation You are reasonably suited to by Your education, training and experience.

3.  Both during and after the Your Occupation Period, You satisfy the requirements of the Claim Information section.

If You are Retired, Total Disability means, solely due to Injury or Sickness, You are unable to perform any of the normal activities of a retired person in good health and of like age and You satisfy the requirements of the Claim Information section. If You are Unemployed, Total Disability means, solely due to Injury or Sickness, You are prevented from obtaining a job that You are reasonably suited to by Your education, training and experience and You satisfy the requirements of the Claim Information section.

In order to be eligible for Total Disability, there must also be no reasonable job or work site modifications which would allow You to Work.

UNEMPLOYED — means You are not actively Working in any capacity for pay or profit at the start of Your Disability and are not receiving governmental retirement benefits, or qualified or nonqualified retirement benefits.

WE, OUR, US — means Principal Life Insurance Company.

GARVER000034

GARVER000035

WORK/WORKING — means You perform a labor or service, including but not limited to supervision, management or direction for any business activity, for which You receive Earnings.

WORKERS COMPENSATION — means the benefits of the Workers Compensation Act, Occupational Disease Act, or similar law of any state or territory.

YOU, YOUR — means the person named as the Insured on the Data Page of this policy.

YOUR OCCUPATION — means the profession(s) or occupation(s), not a specific job(s) or a job with a certain employer(s), You were actively Working in (and not Retired or Unemployed from) at the start of Your Disability. If You are Working in more than one occupation, Your Occupation includes all occupations You were actively Working in at the start of Disability.

YOUR OCCUPATION PERIOD — means, beginning with the date of Total Disability, the period of time including the Disability Benefit Elimination Period plus the Your Occupation Period as shown on the Data Page.

## DISABILITY BENEFIT

We will pay benefits for Your Continuous Disability that begins on or after the Policy Date and while this policy is in force and subject to the policy provisions. Benefits start to accrue at the end of this section's Elimination Period. Benefits will continue during Your Continuous Disability but not beyond the Maximum Benefit Period.

For Total Disability, We will pay the Maximum Monthly Benefit shown on the Data Page.

## SOCIAL INSURANCE SUBSTITUTE BENEFIT

The Social Insurance Substitute Benefit is provided only if amounts for it are shown on the Data Page. To receive this benefit:

1. You must meet all the requirements of this section and of the Additional Proof of Loss for Social Insurance Substitute Benefit section; and

2. Benefits must be payable under the Disability Benefit section.

We will pay this section's monthly benefit for Your Continuous Disability. This section's monthly benefit is:

1. This section's Maximum Monthly Benefit shown on the Data Page when no Social Insurance is paid; or

2. One third of this section's Maximum Monthly Benefit shown on the Data Page if the only Social Insurance paid for Your Disability is any one of either the Primary Insurance Amount, Workers Compensation, Railroad Retirement, or any other benefit that replaces or supplements Social Security, Workers Compensation or Railroad Retirement.

GARVER000035

GARVER000036

No Social Insurance Substitute Benefits will be paid under this section for any period:

1. You are not receiving benefits under the Disability Benefit section; or

2. During which two or more of the Social Insurances are paid for Your Disability; or

3. After Your Age 65 Policy Anniversary, unless Your Maximum Benefit Period is longer and You are receiving benefits under the Disability Benefit section; or

4. After You are eligible to receive full retirement benefits from Social Security or Railroad Retirement; or

5. For which You receive retirement benefits from Social Security or Railroad Retirement.

We will refund any Social Insurance Substitute Benefit premiums paid during the time You received retirement benefits from Social Security or Railroad Retirement. In order to provide a refund, We must be provided with written proof from the Social Security Administration, Railroad Retirement Board or other proof acceptable to Us of the period You received such retirement benefits.

Benefits start to accrue at the later of:

1. The end of this section's Elimination Period shown on the Data Page; or

2. When Social Insurance paid for Your Disability reduces to only one of either the Primary Insurance Amount, Workers Compensation, or Railroad Retirement.

## ADDITIONAL PROOF OF LOSS FOR SOCIAL INSURANCE SUBSTITUTE BENEFIT

As a requirement for receiving the Social Insurance Substitute Benefit, You must give Us written proof, satisfactory to Us, of any Social Insurance paid during the period for which You are claiming a loss under this section. Such proof is required as part of Your original proof of loss and as often after that as We may reasonably require.

If We think it is reasonable that You would be entitled to any Social Insurance, We will require that You:

1. Apply for these benefits as soon as You are eligible or apply for these benefits within 30 days after receiving written notice from Us requiring You to do so; and

2. Give Us satisfactory proof within 30 days after Your receipt of Our notice that You have applied for these benefits as required; and

3. Promptly notify Us if You are approved or denied for any Social Insurance; and

4. Request reconsideration of Your application for Social Insurance, if it is denied, and appeal any denial of reconsideration if an appeal appears reasonable.

Payment of any Social Insurance Substitute Benefit You are eligible for will cease and will not resume, including payment of any past due benefits, until You comply with 1, 2, 3, and 4 above.

If You have a spouse or any dependents that may be eligible for benefits under Social Insurance because of Your Disability, We will require that You also apply for these benefits under the same terms specified in 1, 2, 3, and 4 above.

GARVER000036

GARVER000037

If because of Your failure to notify Us of Your approval of any Social Insurance an overpayment of the Social Insurance Substitute Benefit occurs, We will have the right to require repayment of any overpayment. The overpayment will be deducted from any future benefits paid for the current Disability or We will require prompt reimbursement from You.

## OTHER BENEFITS

This section describes additional benefits provided by this policy subject to the requirements specified in each of the following benefit provisions. In addition, You must satisfy the requirements of the Claim Information section to be eligible for these benefits.

### TRANSPLANT SURGERY BENEFIT

We will pay benefits under the Disability Benefit section and Social Insurance Substitute Benefit section (subject to those sections' terms and conditions) if Your Disability results from surgery involving a transplant of a part of Your body to another person.

### ACCIDENTAL DEATH BENEFIT

If You die after satisfying the Elimination Period and while benefits are being paid under the Disability Benefit section or any attached rider, We will pay the Accidental Death Benefit shown on the Data Page. Your death must occur as a result of an Injury or because of a Disability which was caused by an Injury. This benefit is in addition to any other benefit of this policy. This benefit is payable to the Benefit Recipient. If You are the Benefit Recipient at the time of Your death, this benefit will be paid to Your surviving spouse, if any, otherwise, to Your estate.

### REHABILITATION BENEFIT

Rehabilitation is voluntary if You qualify for benefits under the Disability Benefit section. If You, the Owner and We agree in writing on a rehabilitation plan in advance, We will pay a portion of reasonable expenses. The goal of the plan must be to return You to Work.

Any rehabilitation plan must be approved in advance by Us and outlined in a written plan of rehabilitation. The monthly benefit payable under the Disability Benefit section and Social Insurance Substitute Benefit section (subject to those sections' terms and conditions) will continue, unless modified by the rehabilitation plan.

Rehabilitation assistance may include:

1. Coordination of medical services;
2. Vocational and employment assessment;
3. Purchasing adaptive equipment;
4. Business/financial planning;
5. Retraining for a new occupation;
6. Education expenses.

We will periodically review the plan and Your progress and We will continue to pay for the agreed upon expenses as long as We determine that the plan will return You to Work.

HH 750 KS   (Rev. 09/14)                    10                    7881467

GARVER000037

GARVER000038

**WAIVER OF PREMIUM BENEFIT**

In a period of Continuous Disability, if You are Disabled for the lesser of 90 days or the Elimination Period and You satisfy the requirements of the Claim Information section:

1. We will refund the monthly pro rata portion of any premium paid for coverage after the date a Continuous Disability began; and

2. We will waive the payment of premiums which come due during the Continuous Disability.

Premium payments will begin on the next premium due date after You are no longer receiving benefits under this policy or Your Disability ends, whichever is later. We will not waive premiums beyond Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later, unless Your policy is renewed subject to the Conditional Renewal section and You later become eligible for the Waiver of Premium Benefit.

## EXCLUSIONS AND LIMITATIONS

The following exclusions and limitations apply to this policy and any attached riders.

**EXCLUSIONS**

This policy does not pay benefits for an Injury or Sickness which in whole or in part is caused by, contributed to by, or which results from:

1. Intentional, self-inflicted injury; or

2. Your commission of or Your attempt to commit a criminal act, or Your involvement in an illegal occupation or activity; or

3. The suspension, revocation or surrender of Your professional or occupational license or certification; or

4. Active military service during a military action or conflict; or

5. Loss We have excluded by name or specific description in any attached rider or endorsement.

No benefits are payable for any period during Your Continuous Disability You are incarcerated in a penal or correctional institution for a period of 30 consecutive days or longer.

**LIMITATION WHEN OUTSIDE THE UNITED STATES OR CANADA**

Benefits will be limited to 12 months during Your Continuous Disability unless You reside in the United States or Canada for at least six consecutive months in each calendar year.

HH 750 KS   (Rev. 09/14)                              11                              7881467

GARVER000038

GARVER000039

## PRE-EXISTING CONDITION LIMITATION

We will not pay any claim for a Disability or loss which:

1. Begins within 2 years after the effective date of coverage(s); and
2. Results from a pre-existing condition which was not disclosed or was misrepresented in this policy's application.

Pre-existing condition means a condition:

1. For which medical treatment, testing or medication was recommended by a Doctor or received from a Doctor within the 2 year period prior to the effective date of coverage(s); or
2. Which has caused symptoms within the 2 year period prior to the effective date of coverage(s) which would cause an ordinarily prudent person to seek diagnosis, care or treatment.

## OTHER EXCLUSIONS AND LIMITATIONS

There may be other exclusions or limitations in this policy in addition to those stated in this section. Additional exclusions or limitations, if any, are described in riders or endorsements attached to and a part of this policy.

# CLAIM INFORMATION

## NOTICE OF CLAIM AND PROOF OF LOSS

You (or someone acting as Your legal representative) must fulfill all of the following requirements:

1. Give Us written notice of claim, including Your name and policy number, within 30 days of the date Your Disability began.

   Failure to provide timely notice of a claim will limit past benefit payments under all policy provisions. If You qualify for benefits under the terms of the policy, past benefits will only be payable for a period of six months prior to the date We received the notice of claim in the Home Office.

2. Send any proof of loss requested by Us to Our Home Office within 90 days after the end of each monthly period for which You are claiming Disability.

   If You have not submitted proof of loss acceptable to Us within one year from the date required, benefits will be denied. An exception will be made only if You and the Owner were not competent to make a claim.

3. Provide proof of loss requirements at a reasonable frequency required by Us.

4. Fully cooperate with Us concerning all matters relating to this policy and any claims filed under the policy.

GARVER000039

GARVER000040

**We will:**

1. Send a claim form upon Our receipt of notice of claim. If We do not furnish the claim form within 15 days after notice of claim was sent to Us, You or the Owner shall be deemed to meet the proof of loss requirements by providing Us, within the time limits stated in number 2 above, with affirmative written proof describing in detail the date of disability, the character, cause and extent of the disability.

2. Promptly notify You and the Owner (if You are not the Owner) if any additional proof of loss requirements are necessary before a claim determination can be made.

3. Pay the benefit as outlined by the policy provisions, subject to the proof of loss requirements.

4. Promptly notify You and the Owner (if You are not the Owner) if benefits are not payable and why.

We must be provided with satisfactory written proof of loss. This is information that We deem necessary to determine whether benefits are payable and the amount of benefits payable. If the proof of loss requirements We request are not received, the claim will be denied. Proof of loss requirements include, but are not limited to:

1. Any requested claim form including claim forms from You and Your Doctor(s) or the letter described above;

2. Documentation demonstrating You are under Regular Care By A Doctor;

3. Documentation of objective medical evidence of Your Injury or Sickness;

4. Copies of medical records, test results and/or Doctor's progress notes;

5. Financial documents, which may include copies of Federal Income Tax Returns, Certified Public Accountant's statements, billing/expense information, bank statements, cancelled checks, IRS authorization, or other documents We deem necessary;

6. Examination(s) of financial records performed by Us or an independent financial examiner hired by Us;

7. Employer/employment information;

8. Independent Medical Examination(s). (See Independent Medical Examination provision below);

9. A personal interview with a company representative, which may include a statement under oath;

10. Evidence that reasonable job or work site modifications are not feasible; and

11. Other proof of loss requirements We deem necessary.

Any costs involved in submission of proof of loss requirements are Your responsibility to pay, except for costs incurred by Us in numbers 4, 6 and 8 above.

GARVER000040

GARVER000041

## INDEPENDENT MEDICAL EXAMINATION

We have the right to require medical examinations, functional capacity evaluations and/or psychiatric examinations in the evaluation of what benefits, if any, are payable. The examinations may include x-rays, blood and urine tests, psychological tests, and other tests or procedures that We deem reasonable to evaluate whether You continue to meet the definition of Disability. The examinations will be performed by a doctor or specialist We deem appropriate for the condition and will be conducted at the time, place and frequency We reasonably require, while You claim to be Disabled. We reserve the right to choose the examiners. The examinations will be paid for by Us. Benefits will be denied if You fail to have an examination and any charges incurred for not attending an appointment, as scheduled, will be Your responsibility.

## CONTINUING BENEFITS

Continuing benefits are subject to the proof of loss requirements. If continuing proof of loss requirements are not received by Us, further benefits will be denied.

## PAYMENT OF A CLAIM

If it is determined that benefits are payable, upon receipt of proof of loss requirements, We will:

1. Pay the first month's benefit one month from the date the Elimination Period is satisfied.

2. Pay one-thirtieth of the appropriate monthly benefit for each day of any period of less than a full month for which benefits are payable.

3. Pay continuing monthly benefits at the end of each month of Disability (subject to the proof of loss requirements).

4. Pay immediately any other benefit due.

5. Pay any unpaid benefits due when Your Disability ends.

6. Pay benefits to the Benefit Recipient unless otherwise indicated in the policy or any attached riders.

7. If, during a Disability, You are determined to not be competent, We may pay up to $1,000.00 in any due and unpaid benefits to any relative by blood or connection by marriage We believe is entitled to it. If We pay this amount in good faith, We will not be liable to anyone else for the amount We paid. In order to continue benefits beyond $1,000.00, We will require proof of a durable power of attorney or the appointment of a conservator.

   Upon Your death, if there are additional benefits payable, other than the Death Benefit, beyond the $1,000.00, We will pay these additional benefits to Your estate.

## OVERPAYMENT OR UNDERPAYMENT OF BENEFITS

We have the right to correct benefit payments made in error. You have the responsibility to return any overpayment to Us. We have the responsibility to make additional benefit payments if any underpayments have been made.

## LEGAL ACTION

Legal action may not be started against Us to recover on this policy until 60 days after filing of proof of loss and not more than 5 years after the filing of proof of loss as required under this policy.

HH 750 KS    (Rev. 09/14)                    14                         7881467

GARVER000042

# PREMIUMS AND REINSTATEMENT

## PAYMENT OF PREMIUM

The first premium for this policy is due on the Policy Date. After that, premiums are payable in the amount and frequency chosen from those shown on the Data Page. The Owner may change the frequency of premium payments except that We will not allow a change while You are Disabled. All premiums are to be sent as provided in the premium notices.

## GRACE PERIOD

Except for the first premium, We allow a grace period of 31 days after the premium due date to pay the premium due. The policy will stay in force during the grace period.

## REFUND OF PREMIUMS

Any refund of premiums made under this policy or attached riders will be paid to the Benefit Recipient unless premiums are remitted by Your employer. In this case, all premium refunds will be paid to Your employer.

## REFUND AFTER DEATH

We will refund any full month's premium paid for coverage beyond the date of Your death. We must be given written proof, satisfactory to Us, of Your death. The premium refund will be paid as specified in the Refund of Premiums provision. If there is no Benefit Recipient or employer who remitted premiums, then We will refund any premium to the Owner if the Owner is not You. Otherwise the premium will be refunded to Your spouse or to Your estate if You have no spouse.

## TERMINATION

This policy terminates on the first of:

1.  Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later, unless renewed under the Conditional Renewal section; or

2.  Our receipt of the Owner's written request to terminate it; or

3.  The end of the grace period; or

4.  Your death.

If You are Disabled under the terms of this policy (not to include the Waiver of Premium Benefit) prior to and continuing through the date specified in number 1 above, then this policy will remain in force with no further premiums due until the earlier of the end of Your Disability or the end of the Maximum Benefit Period.

GARVER000042

GARVER000043

### REINSTATEMENT

With Our approval, this policy may be reinstated anytime within one year after termination.    We may require an application and evidence of insurability under Our then current underwriting guidelines.

When We require an application for reinstatement and if We have received the required premiums, reinstatement takes effect on the date We approve the application.  If We do not decline reinstatement in writing within 45 days from the date of the application, the policy will be reinstated on the 45th day after the date of the application.

When no application for reinstatement is required by Us, reinstatement takes effect on the date We receive the required premiums in Our Home Office.

A reinstated policy only covers a Disability from:

    1.  A Sickness which first manifests itself more than 10 days after the date reinstatement takes effect; or

    2.  An Injury which occurs after the date reinstatement takes effect.

A reinstated policy is subject to any provisions or changes attached to the reinstated policy.

### SUSPENSION DURING MILITARY SERVICE

This policy will be suspended while You are on full-time active duty in the military service of any nation or international authority.  Suspension will be effective as of the date active duty starts.  Active duty does not include training by reservists that lasts 90 days or less.  Disabilities that occur as of the date Your full-time active duty begins until Your active duty ends and the policy is restored are not covered.  We will refund the pro rata portion of any premium paid for a period beyond the date of suspension.  The suspended policy may be restored without proof of insurability if:

    1.  The active duty ends within 5 years from the date of suspension; and

    2.  The Owner applies in writing and premiums are paid within 180 days following the date active duty ends.

Your coverage will start again as of the date We receive the written request and premiums to restore the policy, but not before the date active duty ends.  Only a Disability from a Sickness which first manifests itself or an Injury which occurs after the policy is restored is covered.  Once restored, all rights under the policy will be the same as before the policy was suspended.  Premiums will be at the same rate as they would have been had the policy remained in force.

## CONDITIONAL RENEWAL

This policy is conditionally renewable on an annual basis beginning with the Age 65 Policy Anniversary or after five years from the Policy Date, whichever is later, for life if the terms and conditions of this section are met.

To renew the policy for one year, all of the following conditions must be satisfied:

    1.  You are not receiving a benefit under this policy or any attached rider at the time of renewal.

    2.  You must have been actively Working at least 30 hours each week for the 12 consecutive months preceding renewal.

HH 750 KS   (Rev. 09/14)                                16                            7881467

GARVER000044

3.  You are Working at least 30 hours a week at the time of renewal.

4.  The policy is in force with no premium in default.

5.  We receive the Owner's renewal request in writing by the Age 65 Policy Anniversary or, if applicable, the end of five years from the Policy Date, and by each Policy Anniversary thereafter for any subsequent one-year renewals.

6.  The renewal policy premium is paid.  The renewal policy premium will be based on those rates in effect for Your age at the time of renewal.

We reserve the right to require proof from time to time that You continue to Work at least 30 hours a week. If at anytime You are Working less than 30 hours a week, this policy will terminate as of the date You no longer Worked at least 30 hours a week.  We will return the unearned premiums paid for any period not covered by this policy.

If the policy is renewed under this section, the benefits are the same, and subject to the same terms, as those in the policy, except as follows:

1.  For any period of Disability beginning after renewal and while this policy is in force, the Maximum Benefit Period is two years and the Your Occupation Period is two years; and

2.  Benefits are not payable for Disability beginning after renewal if You are Retired or Unemployed; and

3.  All riders that contain a Termination provision are not renewable under this section. Any other riders, including exclusion or modified coverage riders, will be renewed and remain a part of the policy; and

4.  The Social Insurance Substitute Benefit, if included, is not renewable after the Age 65 Policy Anniversary.

## POLICY ADJUSTMENT OPTIONS

Subject to Our then current underwriting guidelines which may include requiring evidence of insurability, the Owner may request policy adjustments while the policy is in force with no premiums in default, and You are not Disabled.  To request an adjustment, an application signed by the Owner is required.  If evidence of insurability is required, the application must also be signed by You, if You are not the Owner. An adjustment is effective on the Adjustment Date, subject to Our prior approval and Our receipt of the required premium.

The adjusted benefits apply to a Disability from a Sickness which first manifests itself or an Injury which occurs on or after the Adjustment Date and while this policy is in force.

Any adjustment will change the information on the Data Page.  We will provide new Data Pages.

HH 750 KS   (Rev. 09/14)                              17                              7881467

GARVER000045

# THE CONTRACT

**ENTIRE CONTRACT**

The policy, the attached applications, and any attached riders or endorsements make up the entire contract.

**ALTERATIONS**

Only Our corporate officers may modify or waive anything in, or approve changes to, the policy.  The change must be attached to the policy.  No one else, including the agent or broker, has the authority to change the policy or waive any provision.

**TIME LIMIT ON CERTAIN DEFENSES**

In issuing the coverage(s) under this policy and any attached riders, We have relied on the statements and representations on the application.  We have the right to void the coverage(s) due to a material misstatement or omission in the application.  However, after two years from the effective date of coverage(s), no material misstatements or omissions, except fraudulent statements or omissions, made by You or the Owner in an application will be used to void the coverage(s).

Applications include, but are not limited to, the initial application(s), applications for reinstatement, benefit update, automatic increase option, and any underwritten adjustment.

No claim for Disability or loss covered by this policy or any attached riders starting after two years from the date coverage has been in effect will be reduced or denied because a Sickness or Injury existed before the effective date of coverage(s) unless the condition is excluded by name or description.  Sickness or Injury fully disclosed on the application(s) will be covered, unless excluded by name or description.

**FRAUD**

Upon a judicial decision in a civil or criminal court that You and/or the Owner have committed fraud in obtaining this policy or the filing of a claim under this policy, We may void this policy.

**MISSTATEMENT OF AGE**

If Your age has been misstated, the coverage of this policy will be what the premium paid would have purchased at Your correct age.

**CHANGE OF OWNER OR BENEFIT RECIPIENT**

The Owner may name a new Owner or Benefit Recipient by giving Us a request in writing.  Our approval is required and the change is not effective until We approve it.  Once approved, the change is effective on the date the request was signed by the Owner

**ASSIGNMENT**

We are not bound by an assignment until received in a written form acceptable to Us at Our Home Office.  We assume no responsibility for any assignment's validity.  An assignment does not change the ownership of this policy.

GARVER000045

GARVER000046

## CANCELLATION BY INSURED

You may cancel this policy at any time by written notice delivered or mailed to our Home Office, effective on receipt of the notice or on a later date you specify in the notice. In the even of cancellation or your death, we will promptly return the unearned portion of any premium paid. The unearned premium will be computed on a pro rata basis. Cancellation will not affect any claim which originated prior to the effective date of cancellation.

HH 750 KS   (Rev. 09/14)                          19                          7881467

GARVER000046

GARVER000047

# CAPITAL SUM BENEFIT RIDER

This rider is part of the policy. It is issued in consideration of the application and payment of the premiums for the policy to which it is attached. All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider. The effective date of this rider is shown on the Data Page.

We will pay the Capital Sum Benefit shown on the Data Page if an Injury or Sickness results in Your total loss of use for any and every purpose or activity without any possibility of recovery of:

1.  The use of a hand or foot; or

2.  The sight of an eye.

This benefit is in addition to any other benefit provided by the policy or any other attached riders. The Capital Sum Benefit is payable for only one loss in Your lifetime. In order for this benefit to be paid:

1.  You must survive the loss for 30 days; and

2.  The policy and this rider must be in force. If the policy and this rider are not in force, the loss must occur within 90 days after the Injury or Sickness which caused it and the Injury or Sickness must occur while the policy and this rider are in force.

## TERMINATION

This rider terminates on the first of:

1.  Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; or

2.  When We pay this rider's benefit; or

3.  Our receipt of the Owner's written request to terminate it; or

4.  Termination of the policy of which it is a part.

*Daniel J. Houston*

**Chairman, President and CEO**

Principal Life Insurance Company
Des Moines, Iowa  50392-0001

HH 751                                    1                            7881467

GARVER000047

GARVER000048

# CATASTROPHIC DISABILITY BENEFIT RIDER

This rider is part of the policy.  It is issued in consideration of the application and payment of the premiums for this rider and for the policy to which it is attached. All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider. The effective date of this rider is shown on the Data Page.

## DEFINITIONS

ACTIVITIES OF DAILY LIVING (ADL) are:

> **Bathing** – which means the ability to wash Yourself in the tub, shower or by sponge bath, with or without adaptive devices.
> **Continence** – which means the ability to voluntarily control bowel and bladder function, or in the event of incontinence, the ability to maintain a reasonable level of personal hygiene (including caring for catheter or colostomy bag).
> **Dressing** – which means the ability to put on and take off clothing and any medically necessary braces or artificial limbs.
> **Eating/Feeding** – which means the ability to feed Yourself by mouth, feeding tube or intravenously.
> **Toileting** – which means the ability to get to and from and on and off the toilet and to maintain a reasonable level of personal hygiene.
> **Transferring** – which means the ability to move in and out of a chair, bed or wheelchair with or without assistive devices such as canes, walkers, crutches, grab bars or mechanical or motorized devices.

ADL DISABLED - means, solely due to an Injury or Sickness, You are unable to perform two or more Activities of Daily Living without Assistance.

ASSISTANCE – means the presence of, or the help of, another person that is necessary to either:

1.  prevent, by physical intervention or verbal cueing, injury to You while You are performing the Activity of Daily Living; or
2.  help You in performing the Activity of Daily Living.

CATASTROPHIC DISABILITY/CATASTROPHICALLY DISABLED – means, solely due to an Injury or Sickness, You are:

1.  ADL Disabled; or
2.  Cognitively Impaired; or
3.  Presumptively Disabled.

CATASTROPHIC DISABILITY BENEFIT – means the monthly benefit amount provided by this rider and is shown on the Data Page.

CATASTROPHIC DISABILITY ELIMINATION PERIOD – means the number of days from the start of a Continuous Catastrophic Disability for which no benefits under this rider will be paid.  The Catastrophic Disability Elimination Period is shown on the Data Page.  The Catastrophic Disability Elimination Period is waived for Presumptive Disability.

CATASTROPHIC DISABILITY MAXIMUM BENEFIT PERIOD – starts after satisfaction of the Catastrophic Disability Elimination Period and is the longest time for which benefits under this rider will be paid.  The Catastrophic Disability Maximum Benefit Period is shown on the Data Page.

GARVER000048

GARVER000049

COGNITIVELY IMPAIRED – means a measurable impairment to short term or long term memory, orientation as to people, places or time, and/or deductive or abstract reasoning that severely impairs Your ability to function independently. This loss or deterioration must be documented by clinical evidence of an Injury or Sickness and medically recognized standardized neurological testing such as MRI and CAT, and testing used to assess neuropsychological function.

CONTINUOUS CATASTROPHIC DISABILITY – means Your Catastrophic Disability that continues with no interruption. You will be considered to have a Continuous Catastrophic Disability if an Interrupted Catastrophic Disability Elimination Period or Recurring Catastrophic Disability occurs.

INTERRUPTED CATASTROPHIC DISABILITY ELIMINATION PERIOD – means, even if Your Catastrophic Disability is not continuous, the Catastrophic Disability Elimination Period will be met if the required number of days of Catastrophic Disability occur in a period that is:

1. Twice as long as the Catastrophic Disability Elimination Period; and
2. Less than one year.

Your Catastrophic Disability may result from the same or a different cause. The periods of Catastrophic Disability will be combined to meet the Catastrophic Disability Elimination Period.

PRESUMPTIVE DISABILITY/PRESUMPTIVELY DISABLED – means, solely due to an Injury or Sickness, You have a total loss of use for any and every purpose or activity without any possibility of recovery of:

1. Power of speech; or
2. Hearing in both ears; or
3. Sight of both eyes; or
4. The use of both hands, both feet, or one hand and one foot.

RECURRING CATASTROPHIC DISABILITY – means a continuation of a prior Catastrophic Disability when the recurrence of Catastrophic Disability:

1. Begins while the policy and this rider are in force; and
2. Results from the same or directly related cause as the prior Catastrophic Disability for which We paid benefits under this rider; and
3. Occurs within six months from the end of the prior Catastrophic Disability.

No new Catastrophic Disability Elimination Period is required. We will pay Catastrophic Disability Benefits during the Recurring Catastrophic Disability for the remainder of the Catastrophic Disability Maximum Benefit Period, if any.

## CATASTROPHIC DISABILITY BENEFIT

We will pay the Catastrophic Disability Benefit for Your Continuous Catastrophic Disability that begins on or after the effective date of this rider and while the policy and this rider are in force and subject to the policy and rider provisions. Benefits start to accrue at the end of the Catastrophic Disability Elimination Period, except if You are Presumptively Disabled, benefits start to accrue on the day Your Presumptive Disability begins. Benefits will continue during Your Continuous Catastrophic Disability but not beyond the Catastrophic Disability Maximum Benefit Period.

The Catastrophic Disability Benefit is payable in addition to any other benefit provided by the policy.

GARVER000049

GARVER000050

## CLAIM INFORMATION

To be considered Catastrophically Disabled, You must provide notice of claim and proof of loss as described in the Claim Information section of the policy.  All provisions and requirements of the Claim Information section of the policy apply to this rider and the term "Disability/Disabled", as used in that section, is amended to include "Catastrophic Disability/Catastrophically Disabled".

## OTHER BENEFITS

### WAIVER OF PREMIUM BENEFIT

The Waiver of Premium Benefit provision of the policy will also apply to Your Continuous Catastrophic Disability, and the terms as used in the Waiver of Premium Benefit provision are amended as follows:

1. "Continuous Disability " is amended to include "and/or Continuous Catastrophic Disability".
2. "Disability/Disabled" are amended to include "and/or Catastrophic Disability/Catastrophically Disabled".
3. "Elimination Period" is amended to include "and/or Catastrophic Disability Elimination Period".

### BENEFIT UPDATE

We will include an offer to increase the Catastrophic Disability Benefit, if the Benefit Update Rider is part of this policy and an offer to increase coverage is made under that Rider.  In the event You lose group long term disability insurance that includes a catastrophic disability benefit, You may also elect to request a review of Your Catastrophic Disability Benefit under the Benefit Update Adjustment – Advance Option. Any offer is subject to Our then current underwriting guidelines except You will not be required to provide evidence of medical insurability.  You may accept all, part or none of the offer to increase the Catastrophic Disability Benefit.  The amount of Catastrophic Disability Benefit accepted has no effect on the Benefit Update Rider.

The new premium amount for the Catastrophic Disability Benefit resulting from a Benefit Update adjustment will be automatically billed.  Increases are accepted by paying the new premium.  Increases may be rejected by notifying Us in writing no later than 30 days after the Policy Anniversary or by not paying the increase in premium.

The adjusted Catastrophic Disability Benefit applies to new Catastrophic Disabilities which start on or after the Benefit Update Adjustment Date.  A Recurring Catastrophic Disability is not a new Catastrophic Disability.

A Benefit Update adjustment in the Catastrophic Disability Benefit will be effective on the Policy Anniversary following Our offer, subject to the Owner accepting Our offer. New Data Pages reflecting any increase in benefits will be provided.

### COST OF LIVING

If the Cost Of Living Adjustment Rider is part of this policy, all of the provisions of that rider will apply to the Catastrophic Disability Benefit, and the terms as used in the Cost Of Living Adjustment Rider are amended as follows:

1. "Maximum Monthly Benefit "is amended to include "and/or Catastrophic Disability Benefit".
2. "Continuous Disability" is amended to include "and/or Continuous Catastrophic Disability".
3. "Disability" is amended to include "and/or Catastrophic Disability".
4. "Maximum Benefit Period" is amended to include "and/or Catastrophic Disability Maximum Benefit Period".

GARVER000050

GARVER000051

## EXCLUSIONS AND LIMITATIONS

All exclusions and limitations in the policy, or attached to and a part of the policy, will apply to this rider.

If the Limitation Of Benefits For Mental/Nervous/Substance Abuse Disorders rider is part of this policy, all of the provisions of that rider will apply to the Catastrophic Disability Benefit, and the terms as used in the Limitation Of Benefits For Mental/Nervous/Substance Abuse Disorders rider are amended as follows:

1. "Disability " is amended to include "and/or Catastrophic Disability".
2. "Monthly Benefit " is amended to include "and/or Catastrophic Disability Benefit".
3. "Maximum Benefit Period" is amended to include "and/or Catastrophic Disability Maximum Benefit Period".

## TERMINATION

This rider terminates on the first of:

1. Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; or
2. Our receipt of the Owner's written request to terminate it; or
3. Termination of the policy of which it is a part.

If You are Catastrophically Disabled under the terms of this rider (not to include the Waiver of Premium Benefit) prior to and continuing through the date specified in number 1 above, then the policy and this rider will remain in force with no further premiums due until the earlier of the end of Your Catastrophic Disability or the end of the Catastrophic Disability Maximum Benefit Period.

Daniel J. Houston

**Chairman, President and CEO**

Principal Life Insurance Company
Des Moines, Iowa  50392-0001

HH 752                                  4                                  7881467

GARVER000051

GARVER000052

# COST OF LIVING ADJUSTMENT RIDER

This rider is part of the policy. It is issued in consideration of the application and payment of the premiums for this rider and for the policy to which it is attached. All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider. The effective date of this rider is shown on the Data Page.

## DEFINITIONS

ADJUSTED MAXIMUM MONTHLY BENEFIT — means the Maximum Monthly Benefit(s) shown on the Data Page in effect at the start of Your Continuous Disability plus any cost of living adjustments made under this rider.

CHANGE DATE — means each yearly anniversary of the start of a Continuous Disability. If a new Elimination Period is required because of a new Disability, new Change Dates will be set for the new Disability.

CPI-U — means the Consumer Price Index for all Urban Consumers (CPI-U) published by the United States Department of Labor. We will use a different index if:

1. The CPI-U is discontinued, delayed, or not otherwise available for use; or

2. The composition, base, or method of calculating the CPI-U changes so that We consider it inappropriate for this policy.

Any different index We choose will be one which We believe best reflects the change in the cost of living in the United States.

## COST OF LIVING ADJUSTMENT (COLA) FACTOR

The COLA Factor is, as of any Change Date, a factor which is based upon the change in the CPI-U on an annual basis. On the first Change Date, it is calculated by dividing the CPI-U for the calendar month three months before the first Change Date by the CPI-U for the calendar month three months before the date Your Continuous Disability began. In subsequent years, it is calculated by dividing the CPI-U for the calendar month three months before the current Change Date by the CPI-U for the calendar month three months before the prior year's Change Date.

The COLA Factor cannot be:

1. Less than one; or

2. Greater than one plus the COLA Maximum Percent shown on the Data Page.

## BENEFITS

This rider may provide for a cost of living adjustment to Your Maximum Monthly Benefit during the period of Your Continuous Disability.

On the first Change Date We will adjust the Maximum Monthly Benefit(s) shown on the Data Page in effect at the start of Your Continuous Disability, by multiplying by the COLA Factor. On subsequent Change Dates, the new Adjusted Maximum Monthly Benefit will be determined by multiplying the previous year's Adjusted Maximum Monthly Benefit by the current year's COLA Factor. These Adjusted Maximum Monthly Benefits will then be used to calculate Your monthly benefits.

HH 753    1    7881467

GARVER000053

No further adjustments in benefits under this rider will be made after the first of:

1. The end of Your Continuous Disability; or

2. The end of the Maximum Benefit Period.

Unless You adjust the policy as described in the Purchase Option provision, the Adjusted Maximum Monthly Benefit will end when the Continuous Disability ends. If a new Elimination Period is required for a new Disability, the Maximum Monthly Benefits are the amounts shown on the Data Page.

## PURCHASE OPTION

Within 90 days after Your Continuous Disability ends, the Owner may adjust the policy to increase the Maximum Monthly Benefit of the Disability Benefit section shown on the Data Page if Your Maximum Monthly Benefits were increased by this rider.

The amount of the increase will be:

1. The last Adjusted Maximum Monthly Benefit;

   LESS

2. The Maximum Monthly Benefit shown on the Data Page.

The Increased Maximum Monthly Benefit applies to new Disabilities which start on or after the Adjustment Date. A Recurring Disability is not a new Disability.

An increase may be made as provided in the Policy Adjustment Options section except that You need not show evidence of good health. We must receive the adjustment application within 90 days after Your Continuous Disability ends. The additional premium must be paid within 31 days of the Adjustment Date. We will provide a new Data Page for any increase made under this provision.

## TERMINATION

This rider terminates on the first of:

1. Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; or

2. Our receipt of the Owner's written request to terminate it; or

3. Termination of the policy of which it is a part.

If You are eligible to benefits under the terms of the policy or any attached riders (not to include the Waiver of Premium Benefit) prior to and continuing through the date specified in number 1 above, then the policy and this rider will remain in force with no further premiums due until the earlier of the end of Your Disability or the end of the Maximum Benefit Period.

*David J. Houston*

Chairman, President and CEO

Principal Life Insurance Company
Des Moines, Iowa 50392-0001

HH 753                                            2                                            7881467

GARVER000053

GARVER000054

# PRESUMPTIVE DISABILITY BENEFIT RIDER

This rider is part of the policy. It is issued in consideration of the application and payment of the premiums for the policy to which it is attached. All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider. The effective date of this rider is shown on the Data Page.

## DEFINITION

PRESUMPTIVE DISABILITY occurs while the policy and this rider are in force and prior to the Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; and is an Injury or Sickness resulting in Your total loss of use for any and every purpose or activity without any possibility of recovery of:

    a)  Power of speech; or

    b)  Hearing in both ears; or

    c)  Sight of both eyes; or

    d)  The use of both hands, both feet, or one hand and one foot.

## PRESUMPTIVE DISABILITY BENEFIT

If You meet the definition of Presumptive Disability, We will consider You Disabled and pay benefits for Total Disability under the Disability Benefit section and Social Insurance Substitute Benefit section (subject to those sections' terms and conditions) of the policy, regardless of Your ability to Work or earn an income.

Benefits will start to accrue when the Presumptive Disability occurs, even if the Elimination Period has not been satisfied. Monthly benefits will be paid as long as the Presumptive Disability continues, but no longer than the Maximum Benefit Period. If Your Maximum Benefit Period shown on the Data Page is "to Age 65 Policy Anniversary", "to Age 67 Policy Anniversary" or "to Age 70 Policy Anniversary", the Maximum Benefit Period will be extended to "Lifetime" for benefits payable under the Disability Benefit section.

Once We begin paying benefits under this rider, the Regular Care By A Doctor requirement specified in the policy is waived.

If the Cost of Living Adjustment Rider is attached to the policy, no further increases will be provided under that rider after the end of the Maximum Benefit Period shown on the Data Page.

## TERMINATION

This rider terminates on the first of:

    1.  Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; or

    2.  Our receipt of the Owner's written request to terminate it; or

    3.  Termination of the policy of which it is a part.

If You are Presumptively Disabled under the terms of this rider (not to include the Waiver of Premium Benefit) prior to and continuing through the date specified in number 1 above, then the policy and this rider remains in force with no further premiums due until the earlier of the end of Your Presumptive Disability or the end of the Maximum Benefit Period.

*Daniel J. Houston*

Chairman, President and CEO

Principal Life Insurance Company
Des Moines, Iowa 50392-0001

HH 755                          1                          7881467

GARVER000055

# SUPPLEMENTAL HEALTH BENEFIT RIDER

This rider is part of the policy. It is issued in consideration of the application and payment of the premiums for the policy to which it is attached. All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider. The effective date of this rider is shown on the current Data Page.

## BENEFIT

The Supplemental Health Benefit is in addition to any other benefit provided by the policy or any other attached riders and is payable one time in Your lifetime. This rider pays the benefit amount shown on the current Data Page for any one of the following:

**Coronary Artery By Pass Graft (CABG) Surgery** - means the operative procedure for the correction of two or more blocked arteries of the heart. This does not include angioplasty and/or any other intra-arterial procedures.

**Cancer** - means the presence of a malignant tumor characterized by the uncontrolled growth and metastasis of malignant cells, and the invasion of tissue. This would include: Leukemia and malignant disease of the lymphatic system, such as Hodgkin's lymphoma Stage III and IV and invasive malignant melanoma. The following diagnoses are not covered; any non-invasive cancer in-situ, Hodgkin's disease Stage I, prostate cancer Stage A, papillary cancer of the bladder, all skin cancers except invasive malignant melanoma (starting with Clark Level III).

**Stroke** - means any cerebrovascular incident producing neurological deficit lasting more than 24 hours and including infarction of brain tissue or hemorrhage into brain tissue. Evidence of neurological deficit for at least 90 days has to be produced.

In order for this benefit to be paid:

1.  The policy and this rider must be in force; and

2.  The onset of the CABG, Cancer or Stroke must be after the effective date of this rider; and

3.  You must be Continuously Disabled; and

4.  You must survive the CABG Surgery, Cancer or Stroke for 90 days from the date of the onset of the CABG, Cancer or Stroke or from the date of Disability, which ever is later; and

5.  You must be under Regular Care By A Doctor for the condition or operative procedure.

If the Presumptive Disability Benefit Rider is attached to the policy, that rider does not change any of the terms of this rider.

GARVER000055

GARVER000056

**TERMINATION**

This rider terminates on the first of:

1. Your Age 65 Policy Anniversary; or
2. When We pay this rider's benefit; or
3. Our receipt of the Owner's written request to terminate it; or
4. Termination of the policy of which it is a part.

Chairman, President and CEO

Principal Life Insurance Company
Des Moines, Iowa  50392-0001

HH 776                                         2                            7881467

GARVER000057

## RESIDUAL DISABILITY AND RECOVERY BENEFIT RIDER

This rider is part of the policy. It is issued in consideration of the application and payment of the premiums for this rider and for the policy to which it is attached. All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider. The effective date of this rider is shown on the current Data Page.

### RESIDUAL DISABILITY DEFINITIONS

CHANGE DATE — means each yearly anniversary of the start of a Continuous Disability. If a new Elimination Period is required because of a new Disability, new Change Dates will be set for the new Disability.

CPI-U — means the Consumer Price Index for All Urban Consumers (CPI-U) published by the United States Department of Labor. We will use a different index if:

1. The CPI-U is discontinued, delayed, or not otherwise available for use; or
2. The composition, base, or method of calculating the CPI-U changes so that We consider it inappropriate for this policy.

Any different index We choose will be one which We think best reflects the change in the cost of living in the United States.

CURRENT EARNINGS — means Your Earnings for each month while You are Disabled.

DISABILITY/DISABLED — means Total Disability. If the Residual Disability and Recovery Benefit Rider is attached to Your policy, Disability also means Residual Disability. If a Disability is caused by more than one Injury or Sickness, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

INDEX FACTOR — means, as of any Change Date, a factor which is based upon the change in the CPI-U on an annual basis. On the first Change Date, it is calculated by dividing the CPI-U for the calendar month three months before the first Change Date by the CPI-U for the calendar month three months before the date Your Continuous Disability began. In subsequent years, it is calculated by dividing the CPI-U for the calendar month three months before the current Change Date by the CPI-U for the calendar month three months before the prior year's Change Date. The Index Factor will never be less than 1.

LOSS OF EARNINGS — means Your Prior Earnings minus Current Earnings. This difference will be considered Loss of Earnings to the extent such loss is directly and independently due to the Injury or Sickness which caused Your Disability. We reserve the right to at least annually review and adjust Your Loss of Earnings and benefit payments to take into account fluctuations in Earnings.

PRIOR EARNINGS — means Your highest monthly average Earnings for any consecutive 12 months in the last 24 months before a Continuous Disability began. On each Change Date We will adjust the Prior Earnings by multiplying the Prior Earnings, as of the current Change Date, times the Index Factor. If a new Elimination Period is required because of a new Disability, Your Prior Earnings will again be determined for the new Disability without regard to any previous indexing.

HH 784                                                                    1                                                          7881467

GARVER000058

RESIDUAL DISABILITY — means:

1. You are not Totally Disabled; and
2. Solely due to Injury or Sickness You have a Loss of Earnings equal to or greater than 20% of Your Prior Earnings and:
   a) You are able to perform some, but not all, of the substantial and material duties of Your Occupation or You are unable to work Full Time in Your Occupation; or
   b) You are working in another occupation; and
3. You satisfy the requirements of the Claim Information section of the policy.

If You are Retired, Residual Disability means, solely due to Injury or Sickness, Your ability to perform the normal activities of a retired person in good health and of like age is restricted. If You are Unemployed, Residual Disability means, solely due to Injury or Sickness, Your ability to obtain a job that You are reasonably suited for by education, training and experience is restricted.

While You are Working during a period of Residual Disability, You must Work to the full capacity allowed medically and vocationally in that occupation by Your Injury or Sickness including any reasonable job or work site modification. If You choose not to Work to full capacity, benefits will be paid as if You are Working at full capacity in that occupation.

If You are not Totally Disabled and You choose not to Work, even though You are able to Work at any occupation for which You are reasonably suited by education, training and experience, benefits will be paid as if You are Working at full capacity in that occupation.

**RESIDUAL DISABILITY BENEFITS**

We will pay a percentage of the Maximum Monthly Benefit under the Disability Benefit section of the policy for Residual Disability that begins on or after the effective date of this rider and while the policy and this rider are in force and subject to the policy and rider provisions. Benefits start to accrue at the end of the Disability Benefit section's Elimination Period. Benefits for Residual Disability are payable to the end of the Maximum Benefit Period.

If an amount for the Social Insurance Substitute Benefit is shown on the Data Page in effect at that time, We will also pay a percentage of the Maximum Monthly Benefit under the Social Insurance Substitute Benefit section of the policy, provided You satisfy all requirements of that section.

Income earned by a business or professional entity will be determined by Your choice of either the cash or accrual accounting method. The same method will be used to determine both Prior Earnings and Current Earnings throughout a Disability. If the cash method is used, income earned but not received prior to the start of a Disability will be excluded from Your Current Earnings.

Regardless of the accounting method used, any bonuses or lump sum payments You receive will be assigned on a pro-rata basis to each month during which they are earned and retroactive adjustments will be made to the benefits previously paid under the policy.

For Residual Disability, the monthly amount We will pay is:

$$\frac{\text{Prior Earnings - Current Earnings}}{\text{Prior Earnings}} \quad X \quad \text{Maximum Monthly Benefit}$$

When the percentage payable exceeds 75% We will pay 100% of the Maximum Monthly Benefit.

For the first six months of a Residual Disability following the Elimination Period, the percentage paid will not be less than 50%. If Your Elimination Period for the Social Insurance Substitute Benefit is longer than for the Disability Benefit, Social Insurance Substitute Benefits at the 50% level will be paid only until the end of the six month period for the Disability Benefit.

If You are Retired or Unemployed, 50% of the Maximum Monthly Benefit will be paid for Residual Disability.

HH 784                                  2                                  7881467

GARVER000058

GARVER000059

## RECOVERY BENEFIT DEFINITIONS

DISABILITY/DISABLED – means Total Disability. If the Residual Disability and Recovery Benefit Rider is attached to Your policy, Disability also means Residual Disability. If a Disability is caused by more than one Injury or Sickness, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

RECOVERY CURRENT EARNINGS – means Your monthly Earnings after You return to Full Time Work.

RECOVERY LOSS OF EARNINGS – means Your Recovery Prior Earnings minus Your Recovery Current Earnings for the months after You return to Full Time Work.

RECOVERY PRIOR EARNINGS – means Your highest monthly average Earnings for any consecutive 12 months in the last 24 months before a Continuous Disability began.

## RECOVERY BENEFIT

We will provide a Recovery Benefit if:

1. You are no longer Disabled; and
2. You are not receiving benefits under the Disability Benefit section of the policy; and
3. You return to Full Time Work immediately after a Continuous Disability for which benefits were payable under the Disability Benefit section; and
4. You have a Recovery Loss of Earnings equal to or greater than 20% of Your Recovery Prior Earnings; and
5. It can be validated that Your Recovery Loss of Earnings is directly and solely due to the prior Injury or Sickness that caused Disability; and
6. You satisfy the requirements of the Claim Information section of the policy.

If You were Retired or Unemployed prior to Disability, no Recovery Benefits will be payable.

Income earned by a business or professional entity will be determined by Your choice of either the cash or accrual accounting method. The same method will be used to determine both Recovery Prior Earnings and Recovery Current Earnings. If the cash method is used, income earned but not received prior to the start of a Disability will be excluded from Your Recovery Current Earnings. If Residual Disability Benefits were payable just prior to Your eligibility to the Recovery Benefit, then the same accounting method that was used to calculate the Residual Disability Benefit will be used to calculate the Recovery Benefit.

Regardless of the accounting method used, any bonuses or lump sum payments You receive will be assigned on a pro-rata basis to each month during which they are earned and retroactive adjustments will be made to the benefits previously paid under the policy.

The amount of Recovery Benefit payable will be:

$$\frac{\text{Recovery Prior Earnings} - \text{Recovery Current Earnings}}{\text{Recovery Prior Earnings}} \quad X \quad \text{Maximum Monthly Benefit}$$

If the Cost of Living Adjustment Rider is a part of the policy, then the Recovery Benefit will be calculated based on the Adjusted Maximum Monthly Benefit being paid when You recovered from Your Disability. There will be no additional increases under the Cost of Living Adjustment Rider while Recovery Benefits are payable under this rider. There will be no Indexing of Recovery Prior Earnings while Recovery Benefits are payable under this rider.

The Waiver of Premium benefit in the policy will be provided while Recovery Benefits are payable under this rider. Other benefits provided by Your policy will not be payable.

Recovery Benefits end when You no longer have a Recovery Loss of Earnings greater than 20% for any 2 consecutive months.

Recovery Benefits may not be paid beyond the policy Maximum Benefit Period.

GARVER000059

GARVER000060

**TERMINATION**

This rider terminates on the first of:

1.  Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; or
2.  Our receipt of the Owner's written request to terminate it; or
3.  Termination of the policy of which it is a part.

If You are eligible to benefits under the terms of the policy or any attached riders (not to include the Waiver of Premium Benefit) prior to and continuing through the date specified in number 1 above, then the policy and this rider will remain in force with no further premiums due until the earlier of the end of Your Disability or the end of the Maximum Benefit Period.  However, if You are receiving Recovery Benefits prior to and continuing through the date specified in number 1 above, the policy and this rider will remain in force with no further premiums due until the Recovery Benefits end.

Chairman, President and CEO

Principal Life Insurance Company
Des Moines, Iowa  50392-0001

HH 784                                    4                            7881467

GARVER000060

GARVER000061

# FUTURE BENEFIT INCREASE RIDER

This rider is part of the policy. It is issued in consideration of the application and payment of the premiums for the policy to which it is attached. All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider. The effective date of this rider is shown on the current Data Page.

## DEFINITIONS

DISABILITY BENEFIT – is shown on the current Data Page. If there are multiple Maximum Monthly Benefits shown for the Disability Benefit, then for the purposes of this rider, the Disability Benefit is the Maximum Monthly Benefit shown for the remainder of the Maximum Monthly Benefit Period.

OPTION ANNIVERSARY – is the annual anniversary of the Option Date. For example, if the Option Date is June 5, 2010, the Option Anniversary is June 5 of every year thereafter.

OPTION DATE – is shown on the current Data Page.

TERM – is a six-year period as measured from the Option Date. If this rider's effective date is later than the Option Date, the first Term will equal the number of years remaining of the six-year period as measured from the Option Date.

TOTAL MONTHLY BENEFIT – means the sum of this policy's Maximum Monthly Benefits shown on the current Data Page. It includes the Disability Benefit and any Social Insurance Substitute Benefit. Total Monthly Benefit does not include any benefits provided by the Catastrophic Disability Benefit Rider, if part of the policy.

## INCREASE OPTIONS

This rider provides the opportunity to increase the Total Monthly Benefit. Increases are offered on each Option Anniversary during a Term, subject to the Limitations and Conditions provision of this rider.

Any increase to the Total Monthly Benefit resulting from this rider will be effective on the Option Anniversary for which it is offered, subject to the Acceptance And Rejection Of An Offer provision of this rider.

AUTOMATIC INCREASE - You can receive a Future Benefit Increase on each Option Anniversary based on the Consumer Price Index for All Urban Consumers (CPI-U) as published by the United States Department of Labor. If the index is discontinued, delayed, or otherwise not available for this use, or if the composition or basis of, or method of calculating the index changes so that We consider it not appropriate for calculating further Future Benefit Increase Options, We have the right to substitute what We believe is an appropriate index for the CPI-U.

This increase is provided without evidence of insurability, but will not exceed Our then current underwriting guidelines.

The increase is determined by multiplying the Total Monthly Benefit on the Option Anniversary just prior to the scheduled increase by an increase factor. If the Owner has decreased the Maximum Monthly Benefits under the Policy Adjustment Options section of the policy since the prior Option Anniversary, the Total Monthly Benefit is the decreased amount, which is then multiplied by the increase factor.

HH 788

1

7881467

GARVER000061

GARVER000062

The increase factor will be:

1. CPI-U 6 months prior to the Future Benefit Increase Option Anniversary; divided by
2. CPI-U 18 months prior to the Future Benefit Increase Option Anniversary; less
3. 1.00.

The increase factor, converted to a percentage, cannot be less than the Future Benefit Increase Option Minimum Index Percent nor greater than the Future Benefit Increase Option Maximum Index Percent shown on the current Data Page.

ADDITIONAL INCREASE - In addition to the automatic increase, you may also be eligible for an additional increase of up to a maximum benefit increase of $500.00, subject to our then current underwriting guidelines, except that You need not show evidence of good health. This $500.00 maximum includes any increase made under the automatic increase. Prior to the Option Anniversary, We will provide you with an application that must be completed and returned within 30 days of Our request to be considered for an additional increase.

## ACCEPTANCE AND REJECTION OF AN OFFER

The new premium amount which results from an increase offer made under this rider will be automatically billed. Increases are accepted by paying the new premium. Increases may be rejected by notifying Us in writing no later than 30 days after the Option Anniversary or by not paying the increase in premium. New Data Pages reflecting any increase in benefits will be provided.

## LIMITATIONS AND CONDITIONS

Increases provided by this rider are subject to the following limitations and conditions:

1. The adjusted Total Monthly Benefit applies to new Disabilities which start on or after that Option Anniversary. A Recurring Disability is not a new Disability.
2. If the Benefit Update Rider is part of the policy, increases will not be offered on any Option Anniversary that coincides with a review for a Benefit Update Adjustment.
3. Increases will not be offered for any Option Anniversary on which benefits are payable under the policy or any attached rider.

## RENEWAL

A renewal anniversary will occur on every sixth Option Anniversary. On each renewal anniversary while this rider is in force, We will require an application and other evidence which satisfies Us that You are insurable under Our then current underwriting guidelines except that You need not show evidence of good health. If We receive the information We require within 60 days of Our request and You qualify under Our underwriting guidelines in effect on the date the renewal application is completed, We will renew this rider for another Term.

This rider will be suspended if benefits are payable under the policy or any attached rider on a renewal anniversary. Once such benefits are no longer payable, You may renew this rider by providing the underwriting evidence that We require for renewal. A rider that is renewed following a period of suspension is renewed only for that portion of the six-year period that remains until the next renewal anniversary.

GARVER000062

GARVER000063

## TERMINATION

This rider terminates, with no further offers available, when:

1. Underwriting evidence requested for renewal is not received within 60 days of Our request; or
2. You do not qualify for renewal under this rider's Renewal provision; or
3. The Owner rejects any two automatic increase offers, this includes any during the time the policy is terminated even if the policy and this rider are subsequently reinstated; or
4. You reach Your Age 55 Option Anniversary or the end of the first Term, whichever is later; or
5. The Owner sends Us a written request to terminate this rider; or
6. The policy, of which this rider is a part, terminates.

## REINSTATEMENT

If this rider terminates under 1, 3, or 5 above, the Owner may request reinstatement of this rider subject to Our underwriting guidelines then in effect.

If this rider terminates under 6 above, it will be reinstated if the policy is reinstated in accordance with the policy terms for policy reinstatement.

*Daniel J. Houston*

Chairman, President and CEO

**Principal Life Insurance Company**
Des Moines, Iowa  50392-0001

HH 788                                    3                                    7881467

GARVER000063

GARVER000064

GENERAL PURPOSES AND LIMITATIONS OF THE
KANSAS LIFE AND HEALTH
INSURANCE GUARANTY ASSOCIATION
K.S.A. 40-3001, et seq.

## DISCLAIMER

THE KANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION MAY NOT PROVIDE COVERAGE FOR ALL OR A PORTION OF THIS POLICY. IF COVERAGE IS PROVIDED, IT MAY BE SUBJECT TO SUBSTANTIAL LIMITATIONS AND EXCLUSIONS, AND IS CONDITIONED UPON RESIDENCY IN THIS STATE. THEREFORE, YOU SHOULD NOT RELY UPON COVERAGE BY THE KANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION IN SELECTING AN INSURANCE COMPANY OR IN SELECTING AN INSURANCE POLICY. INSURANCE COMPANIES AND THEIR AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE KANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION IN SELLING YOU ANY FORM OF AN INSURANCE POLICY, OR TO INDUCE YOU TO PURCHASE ANY FORM OF AN INSURANCE POLICY. EITHER THE KANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION OR THE KANSAS INSURANCE DEPARTMENT WILL RESPOND TO ANY QUESTIONS YOU MAY HAVE REGARDING THIS DOCUMENT.

Kansas Life and Health Insurance Guaranty Association          Kansas Insurance Department
2909 SW Maupin Lane                                            420 SW 9th Street
Topeka, KS 66614                                               Topeka, KS 66612

This is a brief summary of the Kansas Life and Health Insurance Guaranty Association ("the Association") and the protection it provides for policyholders. If there is any inconsistency between this notice and Kansas law, then Kansas law will control.

The Association was established to provide protection in the unlikely event that your life, annuity or health insurance company becomes financially unable to meet its obligations and is taken over by its Insurance Department. If this should happen, the Association will typically arrange to continue coverage and pay claims, in accordance with Kansas law, with funding from assessments paid by other insurance companies. This safety net was created under Kansas law, which determines who and what is covered and the amounts of coverage. The basic protections provided by the Association are:

- Life Insurance
  $300,000 in death benefits
  $100,000 in cash surrender or withdrawal values

- Health Insurance
  $500,000 in hospital, medical and surgical insurance benefits
  $300,000 in disability insurance benefits
  $100,000 in other types of health insurance benefits

- Annuities
  $250,000 in withdrawal and cash values

The maximum amount of protection for each individual, regardless of the number of policies or contracts, is $300,000. Special rules may apply with regard to hospital, medical and surgical insurance benefits, as well as certain aggregate limits.

SL 218 KS                                                                          (eff. 07/01/2011)

GARVER000064

GARVER000065

# Exhibit D

GARVER000065

GARVER000066

Form **1040** EXTENSION GRANTED TO 10/16 **2016** U.S. Individual Income Tax Return   OMB No. 1545-0074   IRS Use Only - Do not write or staple in this space.

| For the year Jan. 1-Dec. 31, 2016, or other tax year beginning | , 2016, ending | , 20 | See separate instructions. |

| Your first name and initial | Last name | Your social security number |
| ROBERT | GARVER | *** ** 9923 |

| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| MOLLY | GARVER | *** ** ▮ |

Home address (number and street). If you have a P.O. box, see instructions.   Apt. no.

▲ Make sure the SSN(s) above and on line 5a are correct.

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below.
SPRING HILL, KS   66083

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.  ☐ You  ☐ Spouse

| Foreign country name | Foreign province/state/county | Foreign postal code |

**Filing Status**
Check only one box.

1 ☐ Single
2 ☒ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, **do not check box 6a**
b ☒ Spouse

Boxes checked on 6a and 6b  **2**
No. of children on 6c who: **3**

| c Dependents: | | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax credit |
| (1) First name | Last name | | | |
| ELLA | GARVER | *** | DAUGHTER | X |
| GRACE | GARVER | *** | DAUGHTER | X |
| LILA | GARVER | *** | DAUGHTER | X |

If more than four dependents, see instructions and check here ▶ ☐

• lived with you
• did not live with you due to divorce or separation (see instructions)
Dependents on 6c not entered above

Add numbers on lines above ▶ **5**

d Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | STMT 3 | 7 | 66,000. |
| 8a | Taxable interest. Attach Schedule B if required | | 8a | 22. |
| b | Tax-exempt interest. Do not include on line 8a | 8b | 579. | | |
| 9a | Ordinary dividends. Attach Schedule B if required | | 9a | 838. |
| b | Qualified dividends | 9b | 582. | | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | | 10 | |
| 11 | Alimony received | | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | | 13 | 519. |
| 14 | Other gains or (losses). Attach Form 4797 | | 14 | |
| 15a | IRA distributions | 15a | b Taxable amount | 15b | |
| 16a | Pensions and annuities | 16a | b Taxable amount | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | | 17 | 163,575. |
| 18 | Farm income or (loss). Attach Schedule F | | 18 | |
| 19 | Unemployment compensation | | 19 | |
| 20a | Social security benefits | 20a | b Taxable amount | 20b | |
| 21 | Other income. List type and amount  SEE STATEMENT 1 | | 21 | -348,637. |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | | 22 | -117,683. |

**Adjusted Gross Income**

| 23 | Educator expenses | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | 354. |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction | 29 | 13,452. |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid  b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction | 32 | |
| 33 | Student loan interest deduction | 33 | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 35 | 36 | 13,806. |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** ▶ | 37 | -131,489. |

610001 11-30-16

LHA  **For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**   Form **1040** (2016)

GARVER000066

GARVER000067

Schedule E (Form 1040) 2016

Name(s) shown on return. Do not enter name and social security number if shown on page 1.

ROBERT & MOLLY GARVER

Attachment Sequence No. **13**  
Page **2**

Your social security number  
\*\*\*-\*\*-9923

Caution: The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

**Part II  Income or Loss From Partnerships and S Corporations**  Note: If you report a loss from an at-risk activity for which any amount is not at risk, you must check column (e) on line 28 and attach Form 6198. See instructions.

27  Are you reporting any loss not allowed in a prior year due to the at-risk, excess farm loss, or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses? ............................... ☐ Yes  ☒ No  
If you answered "Yes," see instructions before completing this section.

| 28 | (a) Name | (b) Enter P for partnership; S for S corporation | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if any amount is not at risk |
|---|---|---|---|---|---|
| A | 191ST STREET INVESTORS, LLC | P | | | |
| B | ROBERT GARVER BUILDERS INC | S | | | |
| C | | | | | |
| D | | | | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (f) Passive loss allowed (attach Form 8582 if required) | (g) Passive income from Schedule K-1 | (h) Nonpassive loss from Schedule K-1 | (i) Section 179 expense deduction from Form 4562 | (j) Nonpassive income from Schedule K-1 |
| A | | | 190,137. | | |
| B | | | | 12,595. | 366,307. |
| C | | | | | |
| D | | | | | |
| 29a Totals | | | | | 366,307. |
| b Totals | | | 190,137. | 12,595. | |

| 30 | Add columns (g) and (j) of line 29a | 30 | 366,307. |
|---|---|---|---|
| 31 | Add columns (f), (h), and (i) of line 29b | 31 | 202,732. ) |
| 32 | Total partnership and S corporation income or (loss). Combine lines 30 and 31. Enter the result here and include in the total on line 41 below | 32 | 163,575. |

**Part III  Income or Loss From Estates and Trusts**

| 33 | (a) Name | (b) Employer identification number |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
|---|---|---|---|---|
| | (c) Passive deduction or loss allowed (attach Form 8582 if required) | (d) Passive income from Schedule K-1 | (e) Deduction or loss from Schedule K-1 | (f) Other income from Schedule K-1 |
| A | | | | |
| B | | | | |
| 34a Totals | | | | |
| b Totals | | | | |

| 35 | Add columns (d) and (f) of line 34a | 35 | |
|---|---|---|---|
| 36 | Add columns (c) and (e) of line 34b | 36 | ( ) |
| 37 | Total estate and trust income or (loss). Combine lines 35 and 36. Enter the result here and include in the total on line 41 below | 37 | |

**Part IV  Income or Loss From Real Estate Mortgage Investment Conduits (REMICs) – Residual Holder**

| 38 | (a) Name | (b) Employer identification number | (c) Excess inclusion from Schedules Q, line 2c (see instructions) | (d) Taxable income (net loss) from Schedules Q, line 1b | (e) Income from Schedules Q, line 3b |
|---|---|---|---|---|---|
| | | | | | |

| 39 | Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below | 39 | |
|---|---|---|---|

**Part V  Summary**

| 40 | Net farm rental income or (loss) from Form 4835. Also, complete line 42 below | 40 | |
|---|---|---|---|
| 41 | Total income or (loss). Combine lines 26, 32, 37, 39, and 40. Enter the result here and on Form 1040, line 17, or Form 1040NR, line 18 ► | 41 | 163,575. |
| 42 | Reconciliation of farming and fishing income. Enter your gross farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120S), box 17, code V; and Schedule K-1 (Form 1041), box 14, code F (see instructions) | 42 | |
| 43 | Reconciliation for real estate professionals. If you were a real estate professional (see instructions), enter the net income or (loss) you reported anywhere on Form 1040 or Form 1040NR from all rental real estate activities in which you materially participated under the passive activity loss rules | 43 | |

Schedule E (Form 1040) 2016

521501 11-07-16

2016.04020 GARVER, ROBERT

GARVER000067

GARVER000068

ROBERT & MOLLY GARVER                                        ***-**-9923

| FORM 1040 | MISCELLANEOUS INCOME | STATEMENT 1 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| WOLFCREEK HOMES, INC | 5,000. |
| SHRINERS BUDDY BASS TOURNAMENT | 750. |
| NOL CARRYOVER TO 2016 | -354,387. |
| TOTAL TO FORM 1040, LINE 21 | -348,637. |

| FORM 1040 | TAX-EXEMPT INTEREST | STATEMENT 2 |
|---|---|---|

| NAME OF PAYER | AMOUNT |
|---|---|
| TD AMERITRADE | 579. |
| TOTAL TO FORM 1040, LINE 8B | 579. |

| FORM 1040 | WAGES RECEIVED AND TAXES WITHHELD | STATEMENT 3 |
|---|---|---|

| T S EMPLOYER'S NAME | AMOUNT PAID | FEDERAL TAX WITHHELD | STATE TAX WITHHELD | CITY SDI TAX W/H | FICA TAX | MEDICARE TAX |
|---|---|---|---|---|---|---|
| T ROBERT GARVER BUILDERS, INC | 48,000. | 1,001. | 815. | | 2,976. | 696. |
| S ROBERT GARVER BUILDERS, INC | 18,000. | 158. | 68. | | 1,116. | 261. |
| TOTALS | 66,000. | 1,159. | 883. | | 4,092. | 957. |

GARVER000068

GARVER000069

# Exhibit E

GARVER000069

GARVER000070

# Form 1040  U.S. Individual Income Tax Return  (99)  2017  EXTENSION GRANTED TO 10/15/18

OMB No. 1545-0074 | IRS Use Only - Do not write or staple in this space.

For the year Jan. 1-Dec. 31, 2017, or other tax year beginning , 2017, ending , 20 | See separate instructions.

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| ROBERT | GARVER | *** ** 9923 |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| MOLLY | GARVER | *** ** ** |

Home address (number and street). If you have a P.O. box, see instructions. | Apt. no. | ▲ Make sure the SSN(s) above and on line 6c are correct.

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below.
SALINA, KS 67401

Foreign country name | Foreign province/state/county | Foreign postal code

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.
You ☐ Spouse ☐

**Filing Status**
Check only one box.

1 ☐ Single
2 ☒ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) (see instructions)

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, **do not** check box 6a
b ☒ Spouse

Boxes checked on 6a and 6b: **2**
No. of children on 6c who: **3**
● lived with you
● did not live with you due to divorce or separation (see instructions)
Dependents on 6c not entered above

c Dependents:

| (1) First name  Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax credit |
|---|---|---|---|
| ELLA GARVER | *** ** | DAUGHTER | X |
| GRACE GARVER | *** ** | DAUGHTER | X |
| LILA GARVER | *** ** | DAUGHTER | X |

If more than four dependents, see instructions and check here ▶ ☐

Add numbers on lines above ▶ **5**

d Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2  STMT 1 | 7 | 66,000. |
| 8a | Taxable interest. Attach Schedule B if required | 8a | 1,973. |
| b | Tax-exempt interest. Do not include on line 8a | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | |
| b | Qualified dividends | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | 5,430. |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | 19,496. |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions  15a  b Taxable amount | 15b | |
| 16a | Pensions and annuities  16a  b Taxable amount | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | -93,131. |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits  20a  b Taxable amount | 20b | |
| 21 | Other income. List type and amount  NOL CARRYOVER TO 2017 -148,255. | 21 | -148,255. |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 | -148,487. |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | 384. |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction | 29 | 10,142. |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid  b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction | 32 | |
| 33 | Student loan interest deduction | 33 | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 35 | 36 | 10,526. |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** ▶ | 37 | -159,013. |

710001 02-22-18

LHA  **For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**

Form **1040** (2017)

GARVER000070

GARVER000071

ROBERT & MOLLY GARVER                                                    ***-**-9923

| FORM 1040 | WAGES RECEIVED AND TAXES WITHHELD | STATEMENT 1 |

| T S | EMPLOYER'S NAME | AMOUNT PAID | FEDERAL TAX WITHHELD | STATE TAX WITHHELD | CITY SDI TAX W/H | FICA TAX | MEDICARE TAX |
|---|---|---|---|---|---|---|---|
| T | ROBERT GARVER BUILDERS, INC | 48,000. | 288. | | 902. | 2,976. | 696. |
| S | ROBERT GARVER BUILDERS, INC | 18,000. | | | | 1,116. | 261. |
| | TOTALS | 66,000. | 288. | | 902. | 4,092. | 957. |

| FORM 1040   SELF-EMPLOYED HEALTH INSURANCE DEDUCTION WORKSHEET | STATEMENT 2 |

ROBERT GARVER

ROBERT GARVER BUILDERS INC

1  NONSPECIFIED HEALTH INSURANCE PAYMENTS                                   10,142.

2  NET PROFIT FROM TRADE OR BUSINESS UNDER WHICH INSURANCE
   PLAN IS ESTABLISHED                                                      48,000.

3  TOTAL OF ALL NET PROFITS AND EARNED INCOME.
   S CORPORATIONS SKIP TO LINE 9

4  DIVIDE LINE 2 BY LINE 3

5  DEDUCTIBLE PORTION OF SELF-EMPLOYMENT TAX

6  LINE 4 TIMES LINE 5

7  LINE 2 MINUS LINE 6

8  SELF-EMPLOYED SEP, SIMPLE, AND QUALIFIED PLANS ATTRIBUTABLE
   TO TRADE OR BUSINESS NAMED ABOVE

9  LINE 7 MINUS LINE 8. S CORPORATIONS ENTER WAGES RECEIVED                 48,000.

10 FORM 2555, LINE 45 ATTRIBUTABLE TO THE TRADE OR BUSINESS
   NAMED ABOVE

11 LINE 9 MINUS LINE 10                                                     48,000.

12 SELF-EMPLOYED HEALTH INSURANCE DEDUCTION.   LESSER OF
   LINE 1 OR LINE 11                                                        10,142.

GARVER000072

Schedule E (Form 1040) 2017      Attachment Sequence No. **13**    Page **2**

Name(s) shown on return. Do not enter name and social security number if shown on page 1.

**Your social security number**

ROBERT & MOLLY GARVER       \*\*\*-\*\*-9923

Caution: The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

| **Part II** | **Income or Loss From Partnerships and S Corporations**   Note: If you report a loss from an at-risk activity for which any amount is **not** at risk, you **must** check column **(e)** on line 28 and attach Form 6198. See instructions. |

27   Are you reporting any loss not allowed in a prior year due to the at-risk, excess farm loss, or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses? ................................ ☐ Yes ☒ No

If you answered "Yes," see instructions before completing this section.

| 28 | (a) Name | (b) Enter P for partnership; S for S corporation | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if any amount is not at risk |
|---|---|---|---|---|---|
| A | 191ST STREET INVESTORS, LLC | P | | | |
| B | AMARILLO MISSOURI LLC | P | | | |
| C | ROBERT GARVER BUILDERS INC | S | | | |
| D | | | | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (f) Passive loss allowed (attach Form 8582 if required) | (g) Passive income from Schedule K-1 | (h) Nonpassive loss from Schedule K-1 | (i) Section 179 expense deduction from Form 4562 | (j) Nonpassive income from Schedule K-1 |
| A | | | 176,334. | | |
| B | 0. | | | | |
| C | | | | | 83,203. |
| D | | | | | |
| 29a | Totals | | | | 83,203. |
| b | Totals | | 176,334. | | |

| 30 | Add columns (g) and (j) of line 29a | | | 30 | 83,203. |
| 31 | Add columns (f), (h), and (i) of line 29b | | | 31 | ( 176,334. ) |
| 32 | Total partnership and S corporation income or (loss). Combine lines 30 and 31. Enter the result here and include in the total on line 41 below | | | 32 | -93,131. |

| **Part III** | **Income or Loss From Estates and Trusts** |

| 33 | (a) Name | (b) Employer identification number |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (c) Passive deduction or loss allowed (attach Form 8582 if required) | (d) Passive income from Schedule K-1 | (e) Deduction or loss from Schedule K-1 | (f) Other income from Schedule K-1 | |
| A | | | | | |
| B | | | | | |
| 34a | Totals | | | | |
| b | Totals | | | | |

| 35 | Add columns (d) and (f) of line 34a | | 35 | |
| 36 | Add columns (c) and (e) of line 34b | | 36 | ( ) |
| 37 | Total estate and trust income or (loss). Combine lines 35 and 36. Enter the result here and include in the total on line 41 below | | 37 | |

| **Part IV** | **Income or Loss From Real Estate Mortgage Investment Conduits (REMICs) - Residual Holder** |

| 38 | (a) Name | (b) Employer identification number | (c) Excess inclusion from Schedules Q, line 2c (see instructions) | (d) Taxable income (net loss) from Schedules Q, line 1b | (e) Income from Schedules Q, line 3b |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

| 39 | Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below | | 39 | |

| **Part V** | **Summary** |

| 40 | Net farm rental income or (loss) from Form 4835. Also, complete line 42 below | | 40 | |
| 41 | Total income or (loss). Combine lines 26, 32, 37, 39, and 40. Enter the result here and on Form 1040, line 17, or Form 1040NR, line 18 ▶ | | 41 | -93,131. |
| 42 | Reconciliation of farming and fishing income. Enter your gross farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120S), box 17, code V; and Schedule K-1 (Form 1041), box 14, code F (see instructions) | 42 | | |
| 43 | Reconciliation for real estate professionals. If you were a real estate professional (see instructions), enter the net income or (loss) you reported anywhere on Form 1040 or Form 1040NR from all rental real estate activities in which you materially participated under the passive activity loss rules | 43 | | |

Schedule E (Form 1040) 2017

721501 10-20-17

2017.04010 GARVER, ROBERT     GARVER000

GARVER000073

# Exhibit F

GARVER000073

GARVER000074

Schedule E (Form 1040) 2018    Name(s) shown on return. Do not enter name and social security number if shown on page 1.    Attachment Sequence No. **13**    Page **2**

**Your social security number**    \*\*\*-\*\*-9923

ROBERT & MOLLY GARVER

**Caution:** The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

**Part II**   **Income or Loss From Partnerships and S Corporations - Note:** If you report a loss, receive a distribution, dispose of stock, or receive a loan repayment from an S corporation, you **must** check the box in column **(e)** on line 28 and attach the required basis computation. If you report a loss from an at-risk activity for which **any** amount is **not** at risk, you **must** check the box in column **(f)** on line 28 and attach **Form 6198** (see instructions).

27   Are you reporting any loss not allowed in a prior year due to the at-risk, excess farm loss, or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses? If you answered "Yes," see instructions before completing this section ...........   **X** Yes     No

| 28 | (a) Name | (b) Enter P for partnership, S for S corporation | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if basis computation is required | (f) Check if any amount is not at risk |
|---|---|---|---|---|---|---|
| A | 191ST STREET INVESTORS, LLC | P | | | | |
| B | AMARILLO MISSOURI LLC | P | | | | |
| C | ROBERT GARVER BUILDERS INC | S | | ▮▮▮▮▮ | X | |
| D | WELBORN SALES, INC. | S | | | X | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (g) Passive loss allowed (attach Form 8582 if required) | (h) Passive income from Schedule K-1 | (i) Nonpassive loss from Schedule K-1 | (j) Section 179 expense deduction from Form 4562 | (k) Nonpassive income from Schedule K-1 |
| A | | | | 0. | |
| B | 0. | | | | |
| C | | | 93,590. | | |
| D | | | | | 74,736. |
| 29a Totals | | | | | 74,736. |
| b Totals | | | 93,590. | | |

| 30 | Add columns (h) and (k) of line 29a | 30 | 74,736. |
|---|---|---|---|
| 31 | Add columns (g), (i), and (j) of line 29b | 31 | 93,590. ) |
| 32 | Total partnership and S corporation income or (loss). Combine lines 30 and 31 | 32 | -18,854. |

**Part III**   **Income or Loss From Estates and Trusts**

| 33 | (a) Name | (b) Employer identification number |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
|---|---|---|---|---|
| | (c) Passive deduction or loss allowed (attach Form 8582 if required) | (d) Passive income from Schedule K-1 | (e) Deduction or loss from Schedule K-1 | (f) Other income from Schedule K-1 |
| A | | | | |
| B | | | | |
| 34a Totals | | | | |
| b Totals | | | | |

| 35 | Add columns (d) and (f) of line 34a | 35 | |
|---|---|---|---|
| 36 | Add columns (c) and (e) of line 34b | 36 | ( ) |
| 37 | Total estate and trust income or (loss). Combine lines 35 and 36 | 37 | |

**Part IV**   **Income or Loss From Real Estate Mortgage Investment Conduits (REMICs) - Residual Holder**

| 38 | (a) Name | (b) Employer identification number | (c) Excess inclusion from Schedules Q, line 2c (see instructions) | (d) Taxable income (net loss) from Schedules Q, line 1b | (e) Income from Schedules Q, line 3b |
|---|---|---|---|---|---|
| | | | | | |

| 39 | Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below | 39 | |
|---|---|---|---|

**Part V**   **Summary**

| 40 | Net farm rental income or (loss) from Form 4835. Also, complete line 42 below | 40 | |
|---|---|---|---|
| 41 | Total income or (loss). Combine lines 26, 32, 37, 39, and 40. Enter the result here and on Schedule 1 (Form 1040), line 17, or Form 1040NR, line 18 ▶ | 41 | 1,052. |

42   **Reconciliation of farming and fishing income.** Enter your **gross** farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120S), box 17, code AC; and Schedule K-1 (Form 1041), box 14, code F (see instructions)   42

43   **Reconciliation for real estate professionals.** If you were a real estate professional (see instructions), enter the net income or (loss) you reported anywhere on Form 1040 or Form 1040NR from all rental real estate activities in which you materially participated under the passive activity loss rules ......   43

821501 10-18-18    24    Schedule E (Form 1040) 2018

2018.04030 GARVER, ROBERT    GARVER000074

GARVER000075

671118

| Schedule K-1 (Form 1120S) | **2018** | | ☐ Final K-1   ☒ Amended K-1 | OMB No. 1545-0123 |

**2018**

Department of the Treasury
Internal Revenue Service

For calendar year 2018, or tax
year beginning _____
ending _____

**Shareholder's Share of Income, Deductions, Credits, etc.**   ▶ See separate instructions.

| **Part I** | **Information About the Corporation** |

**A** Corporation's employer identification number

**B** Corporation's name, address, city, state, and ZIP code

WELBORN SALES, INC.

SALINA, KS   67402-1666

**C** IRS Center where corporation filed return
E-FILE

| **Part II** | **Information About the Shareholder** |

**D** Shareholder's identifying number
***-**-****

**E** Shareholder's name, address, city, state and ZIP code

ROBERT P. GARVER

SALINA, KS 67401

**F** Shareholder's percentage of stock
ownership for tax year ............... 50.000000 %

**Part III   Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items**

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) | 45,843. | 13 | Credits |
| 2 | Net rental real estate inc (loss) | | | |
| 3 | Other net rental income (loss) | | | |
| 4 | Interest income | 4. | | |
| 5a | Ordinary dividends | 350. | | |
| 5b | Qualified dividends | 350. | 14 | Foreign transactions |
| 6 | Royalties | | | |
| 7 | Net short-term capital gain (loss) | | | |
| 8a | Net long-term capital gain (loss) | | | |
| 8b | Collectibles (28%) gain (loss) | | | |
| 8c | Unrecaptured sec 1250 gain | | | |
| 9 | Net section 1231 gain (loss) | | | |
| 10 | Other income (loss) | | 15 A | Alternative min tax (AMT) items   621. |
| 11 | Section 179 deduction   43,328. | | 16 C* | Items affecting shareholder basis   1,825. |
| 12 | Other deductions | | | |
| | | | 17 A | Other information   354. |
| | | | V * | 2,515. |
| | | | W * | 139,610. |
| | | | X * | 142,690. |

*See attached statement for additional information.

For IRS Use Only

811271
11-28-18   JWA   **For Paperwork Reduction Act Notice, see Instructions for Form 1120S.**   www.irs.gov/Form1120S   Schedule K-1 (Form 1120S) 2018

21

1

2018.05000 WELBORN SALES, INC.   GARVER0000795___2

GARVER000076

**Copy B To Be Filed with Employee's FEDERAL Tax Return.**

2018
OMB No. 1545-0008

| a Employee's SSN | 1 Wages, tips, other comp. 55550.00 | 2 Federal income tax withheld 2200.05 |
|---|---|---|
| | 3 Social security wages 55550.00 | 4 Social security tax withheld 3444.10 |
| b Employer ID no. (EIN) | 5 Medicare wages and tips 55550.00 | 6 Medicare tax withheld 805.48 |

c Employer's name, address, and ZIP code
WELBORN SALES, INC.

SALINA                         KS   67402-1666

d Control number

e Employee's name, address, and ZIP code                    Suff.
ROBERT P GARVER

SALINA                         KS   67401

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code See inst. for box 12 |
| 13 Statutory employee / Retirement Plan / Third-party sick pay | 14 Other | 12b Code |
| | | 12c Code |
| | | 12d Code |

| KS | | 55550.00 | 968.00 |
|---|---|---|---|
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement                    Dept. of the Treasury - IRS
This information is being furnished to the Internal Revenue Service.

---

**Copy 2 To Be Filed With Employee's State, City, or Local Income Tax Return.**

2018
OMB No. 1545-0008

| a Employee's SSN | 1 Wages, tips, other comp. 55550.00 | 2 Federal income tax withheld 2200.05 |
|---|---|---|
| | 3 Social security wages 55550.00 | 4 Social security tax withheld 3444.10 |
| b Employer ID no. (EIN) | 5 Medicare wages and tips 55550.00 | 6 Medicare tax withheld 805.48 |

c Employer's name, address, and ZIP code
WELBORN SALES, INC.

SALINA                         KS   67402-1666

d Control number

e Employee's name, address, and ZIP code                    Suff.
ROBERT P GARVER

SALINA                         KS   67401

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code See inst. for box 12 |
| 13 Statutory employee / Retirement Plan / Third-party sick pay | 14 Other | 12b Code |
| | | 12c Code |
| | | 12d Code |

| KS | | 55550.00 | 968.00 |
|---|---|---|---|
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement                    Dept. of the Treasury - IRS

REV 12/20/18 QBDT

---

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

**Copy C For EMPLOYEE'S RECORDS. (See Notice to Employees).**

2018
OMB No. 1545-0008

| a Employee's SSN | 1 Wages, tips, other comp. 55550.00 | 2 Federal income tax withheld 2200.05 |
|---|---|---|
| | 3 Social security wages 55550.00 | 4 Social security tax withheld 3444.10 |
| b Employer ID no. (EIN) | 5 Medicare wages and tips 55550.00 | 6 Medicare tax withheld 805.48 |

c Employer's name, address, and ZIP code
WELBORN SALES, INC.

SALINA                         KS   67402-1666

d Control number

e Employee's name, address, and ZIP code                    Suff.
ROBERT P GARVER

SALINA                         KS   67401

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code See inst. for box 12 |
| 13 Statutory employee / Retirement Plan / Third-party sick pay | 14 Other | 12b Code |
| | | 12c Code |
| | | 12d Code |

| KS | | 55550.00 | 968.00 |
|---|---|---|---|
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement                    Dept. of the Treasury - IRS

---

**Copy 2 To Be Filed With Employee's State, City, or Local Income Tax Return.**

2018
OMB No. 1545-0008

| a Employee's SSN | 1 Wages, tips, other comp. 55550.00 | 2 Federal income tax withheld 2200.05 |
|---|---|---|
| | 3 Social security wages 55550.00 | 4 Social security tax withheld 3444.10 |
| b Employer ID no. (EIN) | 5 Medicare wages and tips 55550.00 | 6 Medicare tax withheld 805.48 |

c Employer's name, address, and ZIP code
WELBORN SALES, INC.

SALINA                         KS   67402-1666

d Control number

e Employee's name, address, and ZIP code                    Suff.
ROBERT P GARVER

SALINA                         KS   67401

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code See inst. for box 12 |
| 13 Statutory employee / Retirement Plan / Third-party sick pay | 14 Other | 12b Code |
| | | 12c Code |
| | | 12d Code |

| KS | | 55550.00 | 968.00 |
|---|---|---|---|
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement                    Dept. of the Treasury - IRS

GARVER000076

GARVER000077

# Exhibit G

GARVER000077

GARVER000078

| | Copy B To Be Filed With Employee's<br>FEDERAL Tax Return | | **2019** | OMB No.<br>1545-0008 |
|---|---|---|---|---|
| a Employee's social security number | 1 Wages, tips, other comp.<br>60600.00 | | 2 Federal income tax withheld<br>1318.38 | |
| | 3 Social security wages<br>60600.00 | | 4 Social security tax withheld<br>3757.20 | |
| b Employer ID number | 5 Medicare wages and tips<br>60600.00 | | 6 Medicare tax withheld<br>878.70 | |

c Employer's name, address, and ZIP code

Welborn Sales Inc

Salina, KS 67401

d Control Number
17153 1          Garver Robert  1
e Employee's first name and initial     Last name

Robert    Garver

Assaria, KS 67416
f Employee's address, and ZIP code

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code |
| 13 Statutory employee 14 Other | | 12b Code |
| Retirement plan | | 12c Code |
| 3rd party sick pay | | 12d Code |
| KS | 60600.00 | 1066.00 |
| 15 State  Emplr's state I.D. # | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement          Dept. of the Treasury - IRS
This information is being furnished to the Internal Revenue Service

| | Copy C For EMPLOYEE'S RECORDS<br>(See Notice to Employee on back of Copy B.) | | **2019** | OMB No.<br>1545-0008 |
|---|---|---|---|---|
| a Employee's social security number | 1 Wages, tips, other comp.<br>60600.00 | | 2 Federal income tax withheld<br>1318.38 | |
| | 3 Social security wages<br>60600.00 | | 4 Social security tax withheld<br>3757.20 | |
| b Employer ID number | 5 Medicare wages and tips<br>60600.00 | | 6 Medicare tax withheld<br>878.70 | |

c Employer's name, address, and ZIP code

Welborn Sales Inc

Salina, KS 67401

d Control Number
17153 1          Garver Robert  1
e Employee's first name and initial     Last name

Robert    Garver

Assaria, KS 67416
f Employee's address, and ZIP code

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code |
| 13 Statutory employee 14 Other | | 12b Code |
| Retirement plan | | 12c Code |
| 3rd party sick pay | | 12d Code |
| KS | 60600.00 | 1066.00 |
| 15 State  Emplr's state I.D. # | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement          Dept. of the Treasury - IRS
This information is being furnished to the IRS. If you are required to file a tax return, a negligence
penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

| | Copy 2 To Be Filed With Employee's State,<br>City, or Local Income Tax Return | | **2019** | OMB No.<br>1545-0008 |
|---|---|---|---|---|
| a Employee's social security number | 1 Wages, tips, other comp.<br>60600.00 | | 2 Federal income tax withheld<br>1318.38 | |
| | 3 Social security wages<br>60600.00 | | 4 Social security tax withheld<br>3757.20 | |
| b Employer ID number | 5 Medicare wages and tips<br>60600.00 | | 6 Medicare tax withheld<br>878.70 | |

c Employer's name, address, and ZIP code

Welborn Sales Inc

Salina, KS 67401

d Control Number
17153 1          Garver Robert  1
e Employee's first name and initial     Last name

Robert    Garver

Assaria, KS 67416
f Employee's address, and ZIP code

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code |
| 13 Statutory employee 14 Other | | 12b Code |
| Retirement plan | | 12c Code |
| 3rd party sick pay | | 12d Code |
| KS | 60600.00 | 1066.00 |
| 15 State  Emplr's state I.D. # | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement          Dept. of the Treasury - IRS

| | Extra Employee Copy | | **2019** | OMB No.<br>1545-0008 |
|---|---|---|---|---|
| a Employee's social security number | 1 Wages, tips, other comp.<br>60600.00 | | 2 Federal income tax withheld<br>1318.38 | |
| | 3 Social security wages<br>60600.00 | | 4 Social security tax withheld<br>3757.20 | |
| b Employer ID number | 5 Medicare wages and tips<br>60600.00 | | 6 Medicare tax withheld<br>878.70 | |

c Employer's name, address, and ZIP code

Welborn Sales Inc

Salina, KS 67401

d Control Number
17153 1          Garver Robert  1
e Employee's first name and initial     Last name

Robert    Garver

Assaria, KS 67416
f Employee's address, and ZIP code

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code |
| 13 Statutory employee 14 Other | | 12b Code |
| Retirement plan | | 12c Code |
| 3rd party sick pay | | 12d Code |
| KS | 60600.00 | 1066.00 |
| 15 State  Emplr's state I.D. # | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement          Dept. of the Treasury - IRS

FBCN

Welborn Sales Inc

GARVER000079

671118

| Schedule K-1 (Form 1120S) **2018** | Final K-1  [X] Amended K-1 | OMB No. 1545-0123 |
|---|---|---|

Department of the Treasury
Internal Revenue Service

For calendar year 2018, or tax
year beginning _____
ending _____

**Shareholder's Share of Income, Deductions,
Credits, etc.** ► See separate instructions.

| Part I | Information About the Corporation |
|---|---|

**A** Corporation's employer identification number
▮▮▮▮

**B** Corporation's name, address, city, state, and ZIP code

WELBORN SALES, INC.
▮▮▮▮
SALINA, KS  67402-1666

**C** IRS Center where corporation filed return
E-FILE

| Part II | Information About the Shareholder |
|---|---|

**D** Shareholder's identifying number
\*\*\*-\*\*-\*\*\*\*

**E** Shareholder's name, address, city, state and ZIP code

ROBERT P. GARVER
▮▮▮▮
SALINA, KS 67401

**F** Shareholder's percentage of stock
ownership for tax year ......... 50.000000 %

For IRS Use Only

---

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 45,843. | 13 | Credits |
| 2 | Net rental real estate inc (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income 4. | | |
| 5a | Ordinary dividends 350. | | |
| 5b | Qualified dividends 350. | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured sec 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | 15 A | Alternative min tax (AMT) items 621. |
| 11 | Section 179 deduction 43,328. | 16 C* | Items affecting shareholder basis 1,825. |
| 12 | Other deductions | | |
| | | 17 A | Other information 354. |
| | | V * | 2,515. |
| | | W * | 139,610. |
| | | X * | 142,690. |

*See attached statement for additional information.

| 811271 11-28-18  JWA  **For Paperwork Reduction Act Notice, see Instructions for Form 1120S.** | www.irs.gov/Form1120S | Schedule K-1 (Form 1120S) 2018 |
|---|---|---|

GARVER000079____2

GARVER000080

# Exhibit H

GARVER000080

GARVER000081



**Release Date: June 12, 2020**

*JUNE 2020*

***Sharply Negative Growth in Real GDP and High Unemployment for First Half of 2020, Recovery Second Half of 2020***
The participants in the June *Livingston Survey* predict sharply lower output growth for the first half of 2020. The forecasters, who are surveyed by the Federal Reserve Bank of Philadelphia twice a year, project that the economy's output (real GDP) will fall at an annual rate of -20.2 percent during the first half of 2020. The economy is expected to start recovering in the second half of 2020. Growth in the second half of 2020 is expected to rise to an annual rate of 9.6 percent. Growth will average an annual rate of 7.2 percent in the first half of 2021.

The forecasters see a high unemployment rate in the first half of 2020, with recovery starting in the second half of 2020. The forecasters predict that the unemployment rate will be 17.4 percent in June 2020 and 10.6 percent in December 2020. The unemployment rate is expected to fall to 8.3 percent in June 2021.

|  | Growth Rate of Real GDP (%) | |  | Unemployment Rate (%) | |
|---|---|---|---|---|---|
|  | Previous | New |  | Previous | New |
| *Half-year data:* |  |  |  |  |  |
| 2019 Q4 to 2020 Q2 | 1.9 | -20.2 | June 2020 | 3.5 | 17.4 |
| 2020 Q2 to 2020 Q4 | 1.8 | 9.6 | December 2020 | 3.5 | 10.6 |
| 2020 Q4 to 2021 Q2 | N.A. | 7.2 | June 2021 | N.A. | 8.3 |

***Forecasters Cut Their Projections for Inflation in 2020***
On an annual-average over annual-average basis, CPI inflation is expected to be 0.8 percent in 2020 and 1.6 percent in 2021. Both projections were revised downward from the forecasts in the December 2019 survey. PPI inflation for finished goods is expected to be -2.1 percent this year, a notable downward revision from 1.7 percent in the previous survey. The forecasters predict PPI inflation will rise to 2.2 percent for 2021.

|  | CPI Inflation (%) | |  | PPI Inflation (%) | |
|---|---|---|---|---|---|
|  | Previous | New |  | Previous | New |
| *Annual-average data:* |  |  |  |  |  |
| 2019 to 2020 | 2.1 | 0.8 |  | 1.7 | -2.1 |
| 2020 to 2021 | 2.3 | 1.6 |  | 1.8 | 2.2 |

**RESEARCH DEPARTMENT** FEDERAL RESERVE BANK OF PHILADELPHIA

Ten Independence Mall, Philadelphia, PA 19106-1574 • www.philadelphiafed.org

GARVER000081

GARVER000082

### *Sharply Lower Projections for Short- and Long-Term Interest Rates*

The panelists sharply lowered their forecasts for interest rates on three-month Treasury bills over those of six months ago. At the end of June 2020, the interest rate on three-month Treasury bills is predicted to be 0.13 percent. The forecasters predict that the three-month rate will be 0.14 percent at the end of December 2020, and they expect it to be 0.20 percent at the end of December 2021.

Accompanying the notable downward revisions to the rate on three-month Treasury bills, the forecasts for the 10-year Treasury rate were also sharply lower. The interest rate on 10-year Treasury bonds is predicted to reach 0.70 percent at the end of June 2020. The forecasters predict the 10-year rate will rise to 0.81 percent at the end of December 2020 and continue to rise to 1.07 percent at the end of June 2021. The 10-year Treasury bond interest rate is expected to reach 1.26 percent at the end of December 2021.

|  | 3-Month Treasury Bill Interest Rate | | 10-Year Treasury Bond Interest Rate | |
|---|---|---|---|---|
|  | *Previous* | *New* | *Previous* | *New* |
| June 30, 2020 | 1.59 | 0.13 | 1.88 | 0.70 |
| Dec. 31, 2020 | 1.60 | 0.14 | 2.05 | 0.81 |
| June 30, 2021 | N.A. | 0.15 | N.A. | 1.07 |
| Dec. 31, 2021 | 1.72 | 0.20 | 2.41 | 1.26 |

### *Notable Revisions to Long-Term Growth and Inflation*

The forecasters predict that real GDP will grow at an annual average rate of 2.20 percent over the next 10 years, an upward revision from 2.00 in the survey six months ago. The forecasters now predict that inflation (measured by the CPI) will be 2.00 percent annually over the next 10 years, a downward revision from 2.22 in the December 2019 survey.

### *Forecasters Cut Their Projections for Stock Prices but Continue to See Rising Stock Prices This Year and Next*

The panelists predict the S&P 500 index will finish the first half of 2020 at a level of 3050.0. Stock prices are expected to rise to 3117.5 at the end of 2020 and continue to rise to 3215.0 at the end of June 2021. The index is forecasted to reach 3280.0 by the end of 2021.

|  | Stock Prices S&P 500 Index | |
|---|---|---|
|  | *Previous* | *New* |
| June 30, 2020 | 3202.0 | 3050.0 |
| Dec. 31, 2020 | 3257.6 | 3117.5 |
| June 30, 2021 | N.A. | 3215.0 |
| Dec. 31, 2021 | 3400.0 | 3280.0 |

GARVER000082

GARVER000083

*Technical Notes*
This survey release reports the median value across the 20 forecasters on the survey's panel.

The Philadelphia Fed's *Livingston Survey* is the oldest survey of economists' expectations. The survey was started in 1946 by the late columnist Joseph A. Livingston. It summarizes the forecast of economists from industry, government, banking and academia. It is published twice a year, in June and December.

To subscribe to the survey, go to https://www.philadelphiafed.org/notifications.

**Livingston Survey Participants**

| | | | |
|---|---|---|---|
| S. Anderson | Bank of the West | | |
| B. Bovino/S. Panday | Standard & Poor's | D. Knop | Independent Economist |
| M. Brown/W.West | Visa | T. Lam | Sim Kee Boon Institute, Singapore |
| J. Bryson | Wells Fargo Securities, LLC | D. Manaenkov | RSQE (University of Michigan) |
| J. Butkiewicz | University of Delaware | G. Mokrzan | Huntington National Bank |
| R. Chase | Economic & Policy Resources, Inc. | M. Moran | Daiwa Capital Markets America |
| C. Chrappa | Independent Equipment Company | F. Nothaft | CoreLogic |
| R. Dhawan | Georgia State University | C. Rupkey | MUFG Union Bank, N.A. |
| M. Englund | Action Economics, LLC | J. Smith | Parsec Financial Management, Inc. |
| J. Foster/B. Higginbotham | U.S. Chamber of Commerce | S. Snaith | University of Central Florida |
| P. Hooper | Deutsche Bank Securities | S. Stanley | Amherst Pierpont Securities |
| B. Horrigan | Loomis, Sayles & Co. | B. Wesbury/R. Stein | First Trust Advisors, L P. |
| S. Kahan | Kahan Consulting Ltd. | M. Zandi | Moody's Analytics |

GARVER000083

GARVER000084

LIVINGSTON SURVEY
MAJOR MACROECONOMIC INDICATORS, 2020-2021

| QUARTERLY INDICATORS (percentage changes at annual rates) | Q4 2019 TO Q2 2020 | Q2 2020 TO Q4 2020 | Q4 2020 TO Q2 2021 | 2019 TO 2020 | 2020 TO 2021 |
|---|---|---|---|---|---|
| Real Gross Domestic Product | -20.2 | 9.6 | 7.2 | -6.2 | 4.2 |
| Nominal Gross Domestic Product | -19.9 | 12.8 | 7.4 | -4.7 | 5.2 |
| Nonresidential Fixed Investment | -20.8 | -1.5 | 9.6 | -10.3 | 2.7 |
| Corporate Profits After Taxes | -37.2 | 12.1 | 25.3 | -15.6 | 15.7 |

| MONTHLY INDICATORS (percentage changes at annual rates) | DEC 2019 TO JUN 2020 | JUN 2020 TO DEC 2020 | DEC 2020 TO JUN 2021 | 2019 TO 2020 | 2020 TO 2021 |
|---|---|---|---|---|---|
| Industrial Production | -30.0 | 14.2 | 11.1 | -10.7 | 7.8 |
| Producer Prices - Finished Goods | -8.5 | 4.2 | 2.6 | -2.1 | 2.2 |
| Consumer Price Index (CPI-U) | -1.5 | 2.0 | 2.1 | 0.8 | 1.6 |
| Average Weekly Earnings in Mfg. | -11.5 | 4.2 | 1.4 | -2.2 | 2.9 |
| Retail Trade | -32.4 | 20.4 | 7.9 | -10.9 | 8.2 |

| (levels of variables) | JUN 2020 | DEC 2020 | JUN 2021 | 2020 | 2021 |
|---|---|---|---|---|---|
| Total Private Housing Starts (annual rate, millions) | 0.958 | 1.169 | 1.247 | 1.134 | 1.297 |
| Unemployment Rate (percent) | 17.4 | 10.6 | 8.3 | 11.9 | 8.3 |
| Automobile Sales (incl. foreign) (annual rate, millions) | 2.8 | 3.6 | 4.0 | 3.4 | 4.0 |

| FINANCIAL INDICATORS (levels of variables at end of month) | JUN 2020 | DEC 2020 | JUN 2021 | DEC 2021 |
|---|---|---|---|---|
| Prime Interest Rate | 3.25 | 3.25 | 3.25 | 3.25 |
| 10-Year Treasury Note Yield | 0.70 | 0.81 | 1.07 | 1.26 |
| 3-Month Treasury Bill Rate | 0.13 | 0.14 | 0.15 | 0.20 |
| Stock Prices (S&P500) | 3050.0 | 3117.5 | 3215.0 | 3280.0 |

LONG-TERM OUTLOOK
Average Annual Growth Rate for the Next Ten Years

| | |
|---|---|
| Real GDP | 2.20 |
| Consumer Price Index | 2.00 |

Source:  Research Department, Federal Reserve Bank of Philadelphia, Livingston Survey, June 2020

GARVER000084

GARVER000085

# LIVINGSTON SURVEY

# June 2020

# Tables

**Note:  Data in these tables listed as "actual" are the data that were available to the forecasters when they were sent the survey questionnaire on May 19; the tables do not reflect subsequent revisions to the data. All forecasts were received on or before June 3.**

GARVER000085

GARVER000086

TABLE ONE
MAJOR MACROECONOMIC INDICATORS, 2020-2021
MEDIANS OF FORECASTER PREDICTIONS

| QUARTERLY INDICATORS | NUMBER OF FORE-CASTERS | ACTUAL 2019 Q4 | FORECASTS 2020 Q2 | 2020 Q4 | 2021 Q2 | ACTUAL 2019 | FORECASTS 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|
| 1. Real Gross Domestic Product (billions, chain weighted) | 20 | 19222.0 | 17170.0 | 17975.9 | 18609.3 | 19073.1 | 17883.4 | 18637.2 |
| 2. Nominal Gross Domestic Product ($ billions) | 20 | 21729.1 | 19449.7 | 20655.2 | 21407.3 | 21427.7 | 20430.3 | 21500.0 |
| 3. Nonresidential Fixed Investment (billions, chain weighted) | 19 | 2725.7 | 2425.0 | 2407.0 | 2520.1 | 2748.1 | 2465.0 | 2531.0 |
| 4. Corporate Profits After Taxes ($ billions) | 17 | 1908.2 | 1512.0 | 1601.0 | 1792.0 | 1856.4 | 1567.3 | 1813.4 |

| MONTHLY INDICATORS | | ACTUAL DEC 2019 | FORECASTS JUN 2020 | DEC 2020 | JUN 2021 | ACTUAL 2019 | FORECASTS 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|
| 5. Industrial Production (2012=100) | 16 | 109.6 | 91.7 | 98.0 | 103.3 | 109.5 | 97.8 | 105.3 |
| 6. Total Private Housing Starts (annual rate, millions) | 16 | 1.587 | 0.958 | 1.169 | 1.247 | 1.295 | 1.134 | 1.297 |
| 7. Producer Prices - Finished Goods (index level) | 11 | 207.7 | 198.7 | 202.9 | 205.5 | 205.7 | 201.4 | 205.8 |
| 8. Consumer Price Index (CPI-U) (index level) | 18 | 258.4 | 256.5 | 259.1 | 261.8 | 255.7 | 257.7 | 261.8 |
| 9. Unemployment Rate (percent) | 18 | 3.5 | 17.4 | 10.6 | 8.3 | 3.7 | 11.9 | 8.3 |
| 10. Average Weekly Earnings in Mfg. ($) | 4 | 945.3 | 889.0 | 907.7 | 913.8 | 921.7 | 901.8 | 928.1 |
| 11. Retail Trade ($ billions) | 9 | 525.5 | 432.1 | 474.2 | 492.6 | 518.2 | 461.6 | 499.3 |
| 12. Automobile Sales (incl. foreign) (annual rate, millions) | 12 | 4.5 | 2.8 | 3.6 | 4.0 | 4.7 | 3.4 | 4.0 |

GARVER000086

GARVER000087

TABLE ONE (CONTINUED)

| INTEREST RATES & STOCK PRICES (end of period) | | ACTUAL DEC 2019 | FORECASTS | | | |
|---|---|---|---|---|---|---|
| | | | JUN 2020 | DEC 2020 | JUN 2021 | DEC 2021 |
| 13. Prime Interest Rate (percent) | 19 | 4.75 | 3.25 | 3.25 | 3.25 | 3.25 |
| 14. 10-Year Treasury Note Yield (percent) | 19 | 1.92 | 0.70 | 0.81 | 1.07 | 1.26 |
| 15. 3-Month Treasury Bill Rate (percent) | 20 | 1.52 | 0.13 | 0.14 | 0.15 | 0.20 |
| 16. Stock Prices (S&P500) (index level) | 13 | 3230.8 | 3050.0 | 3117.5 | 3215.0 | 3280.0 |

Source:  Research Department, Federal Reserve Bank of Philadelphia, Livingston Survey, June 2020

GARVER000087

GARVER000088

TABLE TWO
MAJOR MACROECONOMIC INDICATORS, 2020-2021
PERCENTAGE CHANGES AT ANNUAL RATES

| QUARTERLY INDICATORS | NUMBER OF FORE-CASTERS | Q4 2019 TO Q2 2020 | Q2 2020 TO Q4 2020 | Q4 2020 TO Q2 2021 | 2019 TO 2020 | 2020 TO 2021 |
|---|---|---|---|---|---|---|
| 1. Real Gross Domestic Product | 20 | -20.2 | 9.6 | 7.2 | -6.2 | 4.2 |
| 2. Nominal Gross Domestic Product | 20 | -19.9 | 12.8 | 7.4 | -4.7 | 5.2 |
| 3. Nonresidential Fixed Investment | 19 | -20.8 | -1.5 | 9.6 | -10.3 | 2.7 |
| 4. Corporate Profits After Taxes | 17 | -37.2 | 12.1 | 25.3 | -15.6 | 15.7 |

| MONTHLY INDICATORS | | DEC 2019 TO JUN 2020 | JUN 2020 TO DEC 2020 | DEC 2020 TO JUN 2021 | 2019 TO 2020 | 2020 TO 2021 |
|---|---|---|---|---|---|---|
| 5. Industrial Production | 16 | -30.0 | 14.2 | 11.1 | -10.7 | 7.8 |
| 6. Total Private Housing Starts | 16 | -0.629 | 0.211 | 0.078 | -0.161 | 0.163 |
| 7. Producer Prices - Finished Goods | 11 | -8.5 | 4.2 | 2.6 | -2.1 | 2.2 |
| 8. Consumer Price Index (CPI-U) | 18 | -1.5 | 2.0 | 2.1 | 0.8 | 1.6 |
| 9. Unemployment Rate | 18 | 13.9 | -6.8 | -2.3 | 8.2 | -3.6 |
| 10. Average Weekly Earnings in Mfg. | 4 | -11.5 | 4.2 | 1.4 | -2.2 | 2.9 |
| 11. Retail Trade | 9 | -32.4 | 20.4 | 7.9 | -10.9 | 8.2 |
| 12. Automobile Sales (incl. foreign) | 12 | -1.7 | 0.9 | 0.4 | -1.3 | 0.6 |

GARVER000089

| INTEREST RATES & STOCK PRICES | | DEC 2019 TO JUN 2020 | JUN 2020 TO DEC 2020 | DEC 2020 TO JUN 2021 | JUN 2021 TO DEC 2021 |
|---|---|---|---|---|---|
| 13. Prime Interest Rate | 19 | -1.50 | 0.00 | 0.00 | 0.00 |
| 14. 10-Year Treasury Note Yield | 19 | -1.22 | 0.11 | 0.26 | 0.19 |
| 15. 3-Month Treasury Bill Rate | 20 | -1.39 | 0.01 | 0.01 | 0.05 |
| 16. Stock Prices (S&P500) | 13 | -10.9 | 4.5 | 6.4 | 4.1 |

Note: Figures for housing starts, unemployment rate, auto sales, prime interest rate, 10-year Treasury bond, and 90-day Treasury bill are changes in levels.  All others are percentage changes at annual rates.

Source:  Research Department, Federal Reserve Bank of Philadelphia, Livingston Survey, June 2020

GARVER000089

GARVER000090

```
                      TABLE THREE
             LONG-TERM (10 YEAR) FORECASTS
     _____


         SERIES: CPI Inflation Rate
     _____


          STATISTIC
          Minimum                 1.40
          Lower Quartile          2.00
          Median                  2.00
          Upper Quartile          2.30
          Maximum                 2.60

          Mean                    2.11
          Std. Deviation          0.30

          N                         19
          Missing                    1


     _____


     _____

             SERIES: Real GDP
     _____


          STATISTIC
          Minimum                 1.50
          Lower Quartile          1.70
          Median                  2.20
          Upper Quartile          2.40
          Maximum                 2.75

          Mean                    2.10
          Std. Deviation          0.35

          N                         19
          Missing                    1


     _____
```

Source: Research Department, Federal Reserve Bank of Philadelphia, Livingston Survey, June 2020

GARVER000090

GARVER000091

# Exhibit I

GARVER000091

7/22/2020

Daily Treasury Yield Curve Rates

GARVER000092

# U.S. DEPARTMENT OF THE TREASURY

## Resource Center

## Daily Treasury Yield Curve Rates

Get updates to this content.

XML These data are also available in XML format by clicking on the XML icon.

XSD The schema for the XML is available in XSD format by clicking on the XSD icon.

If you are having trouble viewing the above XML in your browser, click here.

To access interest rate data in the legacy XML format and the corresponding XSD schema, click here.

**Select type of Interest Rate Data**

| Daily Treasury Yield Curve Rates ∨ | Go |

**Select Time Period**

| Current Month ∨ | Go |

| Date | 1 Mo | 2 Mo | 3 Mo | 6 Mo | 1 Yr | 2 Yr | 3 Yr | 5 Yr | 7 Yr | 10 Yr | 20 Yr | 30 Yr |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/20 | 0.12 | 0.12 | 0.14 | 0.17 | 0.16 | 0.17 | 0.19 | 0.31 | 0.52 | 0.69 | 1.20 | 1.43 |
| 07/02/20 | 0.13 | 0.14 | 0.14 | 0.16 | 0.16 | 0.16 | 0.19 | 0.29 | 0.50 | 0.68 | 1.20 | 1.43 |
| 07/06/20 | 0.12 | 0.14 | 0.15 | 0.16 | 0.16 | 0.16 | 0.19 | 0.31 | 0.51 | 0.69 | 1.21 | 1.45 |
| 07/07/20 | 0.12 | 0.14 | 0.15 | 0.17 | 0.15 | 0.16 | 0.19 | 0.29 | 0.48 | 0.65 | 1.15 | 1.38 |
| 07/08/20 | 0.11 | 0.13 | 0.15 | 0.17 | 0.15 | 0.16 | 0.19 | 0.30 | 0.49 | 0.67 | 1.16 | 1.39 |
| 07/09/20 | 0.11 | 0.12 | 0.13 | 0.16 | 0.15 | 0.16 | 0.18 | 0.28 | 0.46 | 0.62 | 1.09 | 1.32 |
| 07/10/20 | 0.10 | 0.12 | 0.13 | 0.15 | 0.15 | 0.16 | 0.19 | 0.30 | 0.49 | 0.65 | 1.12 | 1.33 |
| 07/13/20 | 0.11 | 0.12 | 0.14 | 0.15 | 0.16 | 0.16 | 0.19 | 0.30 | 0.48 | 0.64 | 1.11 | 1.33 |
| 07/14/20 | 0 11 | 0 14 | 0 15 | 0 14 | 0 17 | 0 14 | 0 19 | 0 28 | 0 47 | 0 63 | 1 09 | 1 30 |
| 07/15/20 | 0.12 | 0.13 | 0.16 | 0.15 | 0.15 | 0.16 | 0.18 | 0.28 | 0.47 | 0.64 | 1.11 | 1.33 |

GARVER000092

https://www.treasurygov/resource-center/data-chart-center/interest-rates/pages/textview.aspx?data=yield

7/22/2020        GARVER000093

Daily Treasury Yield Curve Rates

| Date | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 07/16/20 | 0.12 | 0.11 | 0.11 | 0.13 | 0.14 | 0.16 | 0.17 | 0.28 | 0.46 | 0.62 | 1.09 | 1.31 |
| 07/17/20 | 0.11 | 0.11 | 0.11 | 0.13 | 0.14 | 0.14 | 0.18 | 0.29 | 0.47 | 0.64 | 1.11 | 1.33 |
| 07/20/20 | 0.11 | 0.12 | 0.13 | 0.14 | 0.14 | 0.16 | 0.18 | 0.29 | 0.47 | 0.62 | 1.10 | 1.32 |
| 07/21/20 | 0.09 | 0.11 | 0.13 | 0.13 | 0.15 | 0.14 | 0.17 | 0.27 | 0.45 | 0.61 | 1.09 | 1.31 |
| 07/22/20 | 0.09 | 0.12 | 0.13 | 0.14 | 0.14 | 0.14 | 0.17 | 0.27 | 0.45 | 0.60 | 1.08 | 1.29 |

* The 2-month constant maturity series begins on October 16, 2018, with the first auction of the 8-week Treasury bill.

30-year Treasury constant maturity series was discontinued on February 18, 2002 and reintroduced on February 9, 2006. From February 18, 2002 to February 8, 2006, Treasury published alternatives to a 30-year rate. See Long-Term Average Rate for more information.

Treasury discontinued the 20-year constant maturity series at the end of calendar year 1986 and reinstated that series on October 1, 1993. As a result, there are no 20-year rates available for the time period January 1, 1987 through September 30, 1993.

**Treasury Yield Curve Rates:** These rates are commonly referred to as "Constant Maturity Treasury" rates, or CMTs. Yields are interpolated by the Treasury from the daily yield curve. This curve, which relates the yield on a security to its time to maturity is based on the closing market bid yields on actively traded Treasury securities in the over-the-counter market. These market yields are calculated from composites of indicative, bid-side market quotations (not actual transactions) obtained by the Federal Reserve Bank of New York at or near 3:30 PM each trading day. The CMT yield values are read from the yield curve at fixed maturities, currently 1, 2, 3 and 6 months and 1, 2, 3, 5, 7, 10, 20, and 30 years. This method provides a yield for a 10 year maturity, for example, even if no outstanding security has exactly 10 years remaining to maturity.

**Treasury Yield Curve Methodology:** The Treasury yield curve is estimated daily using a cubic spline model. Inputs to the model are primarily indicative bid-side yields for on-the-run Treasury securities. Treasury reserves the option to make changes to the yield curve as appropriate and in its sole discretion. See our Treasury Yield Curve Methodology page for details.

**Negative Yields and Nominal Constant Maturity Treasury Series Rates (CMTs):** At times, financial market conditions, in conjunction with extraordinary low levels of interest rates, may result in negative yields for some Treasury securities trading in the secondary market. Negative yields for Treasury securities most often reflect highly technical factors in Treasury markets related to the cash and repurchase agreement markets, and are at times unrelated to the time value of money.

At such times, Treasury will restrict the use of negative input yields for securities used in deriving interest rates for the Treasury nominal Constant Maturity Treasury series (CMTs). Any CMT input points with negative yields will be reset to zero percent prior to use as inputs in the CMT derivation. This decision is consistent with Treasury not accepting negative yields in Treasury nominal security auctions.

In addition, given that CMTs are used in many statutorily and regulatory determined loan and credit programs as well as for setting interest rates on non-marketable government securities, establishing a floor of zero more accurately reflects borrowing costs related to various programs.

GARVER000094

For more information regarding these statistics contact the Office of Debt Management by email at debt.management@do.treas.gov.

For other Public Debt information contact (202) 504-3550

GARVER000095

# Exhibit J

GARVER000095

**Summary Schedule**

**Robert P. Garver**
**Summary of Present Value of Past and Future Benefits**

|  | Residual Disability Benefits |
|---|---|
| Past Benefits Due | $ 112,282 [1] |
| Future Benefits Due | 1,236,667 [1] |
| **Total Benefits Due** | **$ 1,348,949** |

Notes:
[1] See Schedules 1-3  for detail of calculations.

GARVER000097

**Schedule 1**

**Robert P. Garver**
**Summary of Present Value of Past and Future Benefits**

**Policy #7881467** (Exhibit C)

| | | | |
|---|---|---|---|
| Policy Date | 8/6/2015 | Valuation Date | 7/31/2020 |
| Date of Disability | 7/12/2017 | Payment Date | Last Day of the month |
| Date of Birth | 8/7/1974 | Present Value Factor | 0.60% |
| Elimination Period Ends | 10/11/2017 | | |
| Date Calculation Begins | 10/12/2017 | Monthly Benefit | $     4 680.00 |
| Elimination Period | 90 days | | |
| Maximum Benefit Period | 8/6/2039 | | |
| Age at end of period | 65 | | |
| COLA Adjustment  (Annually) | July 12 | | |

| Payment Date | Period | Age | Monthly Benefit | COLA Benefit | Less: Benefits Paid | Difference/ Underpayment | PV Rate (18% interest on Past Benefits, .60% discount on Future Benefits) | Present Value of Benefits Due |
|---|---|---|---|---|---|---|---|---|
| **Past Benefits:** | | | | | | | | |
| 10/31/2017 | 33 | 43 3 | $     2 132 | | $     2 132 | $        - | | |
| 11/30/2017 | 32 | 43 3 | $     3 198 | | $     3 198 | $        - | | |
| 12/31/2017 | 31 | 43.4 | $     3 198 | | $     3 198 | $        - | | |
| 1/31/2018 | 30 | 43 5 | $     4 680 | | $     4 680 | $        - | | |
| 2/28/2018 | 29 | 43 6 | $     4 680 | | $     4 680 | $        - | | |
| 3/31/2018 | 28 | 43.7 | $     4 680 | | $     4 680 | $        - | | |
| 4/30/2018 | 27 | 43 8 | $     4 680 | | $     4 680 | $        - | | |
| 5/31/2018 | 26 | 43 8 | $     4 680 | | $     4 680 | $        - | | |
| 6/30/2018 | 25 | 43.9 | $     4 680 | | $     4 680 | $        - | | |
| 7/31/2018 | 24 | 44 0 | $     4 680 | $      77 | $     4 757 | $        - | | |
| 8/31/2018 | 23 | 44.1 | $     4 680 | $     115 | $     4 795 | $        - | 18% | $        981 * |
| 9/30/2018 | 22 | 44.2 | $     4 680 | $     115 | $     4 795 | $        - | 18% | $     1 478 * |
| 10/31/2018 | 21 | 44 3 | $     4 680 | $     115 | $     4 795 | $        - | 18% | $     1 405 * |
| 11/30/2018 | 20 | 44 3 | $     4 680 | $     115 | $     4 795 | $        - | 18% | $     1 334 * |
| 12/31/2018 | 19 | 44.4 | $     4 680 | $     115 | $     4 795 | $        - | 18% | $     1 260 * |
| 1/31/2019 | 18 | 44 5 | $     4 680 | $     115 | $        - | $     4 795 | 18% | $     6 269 |
| 2/28/2019 | 17 | 44 6 | $     4 680 | $     115 | $        - | $     4 795 | 18% | $     6 176 |
| 3/31/2019 | 16 | 44.7 | $     4 680 | $     115 | $        - | $     4 795 | 18% | $     6 085 |
| 4/30/2019 | 15 | 44 8 | $     4 680 | $     115 | $        - | $     4 795 | 18% | $     5 995 |
| 5/31/2019 | 14 | 44 8 | $     4 680 | $     115 | $        - | $     4 795 | 18% | $     5 907 |
| 6/30/2019 | 13 | 44.9 | $     4 680 | $     115 | $        - | $     4 795 | 18% | $     5 819 |
| 7/31/2019 | 12 | 45 0 | $     4 680 | $     178 | $        - | $     4 858 | 18% | $     5 808 |
| 8/31/2019 | 11 | 45.1 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     5 759 |
| 9/30/2019 | 10 | 45.2 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     5 674 |
| 10/31/2019 | 9 | 45 3 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     5 590 |
| 11/30/2019 | 8 | 45 3 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     5 507 |
| 12/31/2019 | 7 | 45.4 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     5 426 |
| 1/31/2020 | 6 | 45 5 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     5 346 |
| 2/29/2020 | 5 | 45 6 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     5 267 |
| 3/31/2020 | 4 | 45.7 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     5 189 |
| 4/30/2020 | 3 | 45 8 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     5 112 |
| 5/31/2020 | 2 | 45 8 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     5 036 |
| 6/30/2020 | 1 | 45.9 | $     4 680 | $     209 | $        - | $     4 889 | 18% | $     4 962 |
| 7/31/2020 | 0 | 46 0 | $     4 680 | $     219 | $        - | $     4 899 | 18% | $     4 899 |
| **Present Value of Past Benefits** | | | $   153 608 | $   4 037 | $   65 340 | $   92 304 | | **$     112,282** |
| **Future Benefits:** | | | | | | | | |
| 8/31/2020 | 1 | 46.1 | $     4 680 | $     224 | $        - | $     4 904 | 0.60% | $4 902 |
| 9/30/2020 | 2 | 46.2 | $     4 680 | $     224 | $        - | $     4 904 | 0 60% | $4 899 |
| 10/31/2020 | 3 | 46 3 | $     4 680 | $     224 | $        - | $     4 904 | 0 60% | $4 897 |
| 11/30/2020 | 4 | 46 3 | $     4 680 | $     224 | $        - | $     4 904 | 0 60% | $4 894 |
| 12/31/2020 | 5 | 46.4 | $     4 680 | $     224 | $        - | $     4 904 | 0 60% | $4 892 |
| 1/31/2021 | 6 | 46.5 | $     4 680 | $     224 | $        - | $     4 904 | 0 60% | $4 889 |
| 2/28/2021 | 7 | 46 6 | $     4 680 | $     224 | $        - | $     4 904 | 0 60% | $4 887 |
| 3/31/2021 | 8 | 46.7 | $     4 680 | $     224 | $        - | $     4 904 | 0 60% | $4 885 |
| 4/30/2021 | 9 | 46 8 | $     4 680 | $     224 | $        - | $     4 904 | 0 60% | $4 882 |
| 5/31/2021 | 10 | 46 8 | $     4 680 | $     224 | $        - | $     4 904 | 0 60% | $4 880 |
| 6/30/2021 | 11 | 46.9 | $     4 680 | $     224 | $        - | $     4 904 | 0 60% | $4 877 |
| 7/31/2021 | 12 | 47 0 | $     4 680 | $     286 | $        - | $     4 966 | 0 60% | $4 937 |
| 8/31/2021 | 13 | 47.1 | $     4 680 | $     318 | $        - | $     4 998 | 0 60% | $4 965 |
| 9/30/2021 | 14 | 47.2 | $     4 680 | $     318 | $        - | $     4 998 | 0 60% | $4 963 |
| 10/31/2021 | 15 | 47 3 | $     4 680 | $     318 | $        - | $     4 998 | 0 60% | $4 960 |
| 11/30/2021 | 16 | 47 3 | $     4 680 | $     318 | $        - | $     4 998 | 0 60% | $4 958 |
| 12/31/2021 | 17 | 47.4 | $     4 680 | $     318 | $        - | $     4 998 | 0 60% | $4 955 |
| 1/31/2022 | 18 | 47 5 | $     4 680 | $     318 | $        - | $     4 998 | 0 60% | $4 953 |
| 2/28/2022 | 19 | 47 6 | $     4 680 | $     318 | $        - | $     4 998 | 0 60% | $4 950 |
| 3/31/2022 | 20 | 47.7 | $     4 680 | $     318 | $        - | $     4 998 | 0 60% | $4 948 |
| 4/30/2022 | 21 | 47 8 | $     4 680 | $     318 | $        - | $     4 998 | 0 60% | $4 946 |
| 5/31/2022 | 22 | 47 8 | $     4 680 | $     318 | $        - | $     4 998 | 0 60% | $4 943 |

Prepared at the request of counsel

GARVER000097

**Robert P. Garver**
**Summary of Present Value of Past and Future Benefits**

**Policy #7881467** (Exhibit C)

| | | | |
|---|---|---|---|
| Policy Date | 8/6/2015 | Valuation Date | 7/31/2020 |
| Date of Disability | 7/12/2017 | Payment Date | Last Day of the month |
| Date of Birth | 8/7/1974 | Present Value Factor | 0.60% |
| Elimination Period Ends | 10/11/2017 | | |
| Date Calculation Begins | 10/12/2017 | Monthly Benefit | $    4 680.00 |
| Elimination Period | 90 days | | |
| Maximum Benefit Period | 8/6/2039 | | |
| Age at end of period | 65 | | |
| COLA Adjustment  (Annually) | July 12 | | |

| Payment Date | Period | Age | Monthly Benefit | COLA Benefit | Less: Benefits Paid | Difference/ Underpayment | PV Rate (18% interest on Past Benefits, .60% discount on Future Benefits) | Present Value of Benefits Due |
|---|---|---|---|---|---|---|---|---|
| 6/30/2022 | 23 | 47.9 | $    4 680 | $      318 | $      - | $    4 998 | 0.60% | $4 941 |
| 7/31/2022 | 24 | 48.0 | $    4 680 | $      380 | $      - | $    5 060 | 0.60% | $5 000 |
| 8/31/2022 | 25 | 48.1 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 028 |
| 9/30/2022 | 26 | 48.2 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 026 |
| 10/31/2022 | 27 | 48.3 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 023 |
| 11/30/2022 | 28 | 48.3 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 021 |
| 12/31/2022 | 29 | 48.4 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 018 |
| 1/31/2023 | 30 | 48.5 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 016 |
| 2/28/2023 | 31 | 48.6 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 013 |
| 3/31/2023 | 32 | 48.7 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 010 |
| 4/30/2023 | 33 | 48.8 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 008 |
| 5/31/2023 | 34 | 48.8 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 005 |
| 6/30/2023 | 35 | 48.9 | $    4 680 | $      411 | $      - | $    5 091 | 0.60% | $5 003 |
| 7/31/2023 | 36 | 49.0 | $    4 680 | $      474 | $      - | $    5 154 | 0.60% | $5 062 |
| 8/31/2023 | 37 | 49.1 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 090 |
| 9/30/2023 | 38 | 49.2 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 087 |
| 10/31/2023 | 39 | 49.3 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 085 |
| 11/30/2023 | 40 | 49.3 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 082 |
| 12/31/2023 | 41 | 49.4 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 080 |
| 1/31/2024 | 42 | 49.5 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 077 |
| 2/29/2024 | 43 | 49.6 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 075 |
| 3/31/2024 | 44 | 49.7 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 072 |
| 4/30/2024 | 45 | 49.8 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 070 |
| 5/31/2024 | 46 | 49.8 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 067 |
| 6/30/2024 | 47 | 49.9 | $    4 680 | $      505 | $      - | $    5 185 | 0.60% | $5 064 |
| 7/31/2024 | 48 | 50.0 | $    4 680 | $      567 | $      - | $    5 247 | 0.60% | $5 123 |
| 8/31/2024 | 49 | 50.1 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 151 |
| 9/30/2024 | 50 | 50.2 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 148 |
| 10/31/2024 | 51 | 50.3 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 146 |
| 11/30/2024 | 52 | 50.4 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 143 |
| 12/31/2024 | 53 | 50.4 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 140 |
| 1/31/2025 | 54 | 50.5 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 138 |
| 2/28/2025 | 55 | 50.6 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 135 |
| 3/31/2025 | 56 | 50.7 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 133 |
| 4/30/2025 | 57 | 50.8 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 130 |
| 5/31/2025 | 58 | 50.8 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 128 |
| 6/30/2025 | 59 | 50.9 | $    4 680 | $      598 | $      - | $    5 278 | 0.60% | $5 125 |
| 7/31/2025 | 60 | 51.0 | $    4 680 | $      661 | $      - | $    5 341 | 0.60% | $5 183 |
| 8/31/2025 | 61 | 51.1 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 211 |
| 9/30/2025 | 62 | 51.2 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 208 |
| 10/31/2025 | 63 | 51.3 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 206 |
| 11/30/2025 | 64 | 51.4 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 203 |
| 12/31/2025 | 65 | 51.4 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 200 |
| 1/31/2026 | 66 | 51.5 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 198 |
| 2/28/2026 | 67 | 51.6 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 195 |
| 3/31/2026 | 68 | 51.7 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 193 |
| 4/30/2026 | 69 | 51.8 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 190 |
| 5/31/2026 | 70 | 51.8 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 187 |
| 6/30/2026 | 71 | 51.9 | $    4 680 | $      692 | $      - | $    5 372 | 0.60% | $5 185 |
| 7/31/2026 | 72 | 52.0 | $    4 680 | $      754 | $      - | $    5 434 | 0.60% | $5 242 |
| 8/31/2026 | 73 | 52.1 | $    4 680 | $      786 | $      - | $    5 466 | 0.60% | $5 270 |
| 9/30/2026 | 74 | 52.2 | $    4 680 | $      786 | $      - | $    5 466 | 0.60% | $5 267 |
| 10/31/2026 | 75 | 52.3 | $    4 680 | $      786 | $      - | $    5 466 | 0.60% | $5 265 |
| 11/30/2026 | 76 | 52.4 | $    4 680 | $      786 | $      - | $    5 466 | 0.60% | $5 262 |
| 12/31/2026 | 77 | 52.4 | $    4 680 | $      786 | $      - | $    5 466 | 0.60% | $5 259 |
| 1/31/2027 | 78 | 52.5 | $    4 680 | $      786 | $      - | $    5 466 | 0.60% | $5 257 |
| 2/28/2027 | 79 | 52.6 | $    4 680 | $      786 | $      - | $    5 466 | 0.60% | $5 254 |
| 3/31/2027 | 80 | 52.7 | $    4 680 | $      786 | $      - | $    5 466 | 0.60% | $5 251 |
| 4/30/2027 | 81 | 52.8 | $    4 680 | $      786 | $      - | $    5 466 | 0.60% | $5 249 |
| 5/31/2027 | 82 | 52.8 | $    4 680 | $      786 | $      - | $    5 466 | 0.60% | $5 246 |

GARVER000099

**Schedule 1**

**Robert P. Garver**
**Summary of Present Value of Past and Future Benefits**

**Policy #7881467** (Exhibit C)

| | | | |
|---|---|---|---|
| Policy Date | 8/6/2015 | Valuation Date | 7/31/2020 |
| Date of Disability | 7/12/2017 | Payment Date | Last Day of the month |
| Date of Birth | 8/7/1974 | Present Value Factor | 0.60% |
| Elimination Period Ends | 10/11/2017 | | |
| Date Calculation Begins | 10/12/2017 | Monthly Benefit | $    4 680.00 |
| Elimination Period | 90 days | | |
| Maximum Benefit Period | 8/6/2039 | | |
| Age at end of period | 65 | | |
| COLA Adjustment  (Annually) | July 12 | | |

| Payment Date | Period | Age | Monthly Benefit | COLA Benefit | Less: Benefits Paid | Difference/ Underpayment | PV Rate (18% interest on Past Benefits, .60% discount on Future Benefits) | Present Value of Benefits Due |
|---|---|---|---|---|---|---|---|---|
| 6/30/2027 | 83 | 52.9 | $    4 680 | $    786 | $    - | $    5 466 | 0.60% | $5 244 |
| 7/31/2027 | 84 | 53.0 | $    4 680 | $    848 | $    - | $    5 528 | 0.60% | $5 301 |
| 8/31/2027 | 85 | 53.1 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 328 |
| 9/30/2027 | 86 | 53.2 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 325 |
| 10/31/2027 | 87 | 53.3 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 323 |
| 11/30/2027 | 88 | 53.4 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 320 |
| 12/31/2027 | 89 | 53.4 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 317 |
| 1/31/2028 | 90 | 53.5 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 315 |
| 2/29/2028 | 91 | 53.6 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 312 |
| 3/31/2028 | 92 | 53.7 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 309 |
| 4/30/2028 | 93 | 53.8 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 307 |
| 5/31/2028 | 94 | 53.9 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 304 |
| 6/30/2028 | 95 | 53.9 | $    4 680 | $    879 | $    - | $    5 559 | 0.60% | $5 301 |
| 7/31/2028 | 96 | 54.0 | $    4 680 | $    942 | $    - | $    5 622 | 0.60% | $5 358 |
| 8/31/2028 | 97 | 54.1 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 385 |
| 9/30/2028 | 98 | 54.2 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 383 |
| 10/31/2028 | 99 | 54.3 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 380 |
| 11/30/2028 | 100 | 54.4 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 377 |
| 12/31/2028 | 101 | 54.4 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 375 |
| 1/31/2029 | 102 | 54.5 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 372 |
| 2/28/2029 | 103 | 54.6 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 369 |
| 3/31/2029 | 104 | 54.7 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 367 |
| 4/30/2029 | 105 | 54.8 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 364 |
| 5/31/2029 | 106 | 54.9 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 361 |
| 6/30/2029 | 107 | 54.9 | $    4 680 | $    973 | $    - | $    5 653 | 0.60% | $5 358 |
| 7/31/2029 | 108 | 55.0 | $    4 680 | $    1 035 | $    - | $    5 715 | 0.60% | $5 415 |
| 8/31/2029 | 109 | 55.1 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 442 |
| 9/30/2029 | 110 | 55.2 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 439 |
| 10/31/2029 | 111 | 55.3 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 436 |
| 11/30/2029 | 112 | 55.4 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 434 |
| 12/31/2029 | 113 | 55.4 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 431 |
| 1/31/2030 | 114 | 55.5 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 428 |
| 2/28/2030 | 115 | 55.6 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 425 |
| 3/31/2030 | 116 | 55.7 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 423 |
| 4/30/2030 | 117 | 55.8 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 420 |
| 5/31/2030 | 118 | 55.9 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 417 |
| 6/30/2030 | 119 | 55.9 | $    4 680 | $    1 066 | $    - | $    5 746 | 0.60% | $5 415 |
| 7/31/2030 | 120 | 56.0 | $    4 680 | $    1 129 | $    - | $    5 809 | 0.60% | $5 471 |
| 8/31/2030 | 121 | 56.1 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 497 |
| 9/30/2030 | 122 | 56.2 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 495 |
| 10/31/2030 | 123 | 56.3 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 492 |
| 11/30/2030 | 124 | 56.4 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 489 |
| 12/31/2030 | 125 | 56.4 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 486 |
| 1/31/2031 | 126 | 56.5 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 484 |
| 2/28/2031 | 127 | 56.6 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 481 |
| 3/31/2031 | 128 | 56.7 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 478 |
| 4/30/2031 | 129 | 56.8 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 475 |
| 5/31/2031 | 130 | 56.9 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 473 |
| 6/30/2031 | 131 | 56.9 | $    4 680 | $    1 160 | $    - | $    5 840 | 0.60% | $5 470 |
| 7/31/2031 | 132 | 57.0 | $    4 680 | $    1 222 | $    - | $    5 902 | 0.60% | $5 526 |
| 8/31/2031 | 133 | 57.1 | $    4 680 | $    1 254 | $    - | $    5 934 | 0.60% | $5 552 |
| 9/30/2031 | 134 | 57.2 | $    4 680 | $    1 254 | $    - | $    5 934 | 0.60% | $5 549 |
| 10/31/2031 | 135 | 57.3 | $    4 680 | $    1 254 | $    - | $    5 934 | 0.60% | $5 546 |
| 11/30/2031 | 136 | 57.4 | $    4 680 | $    1 254 | $    - | $    5 934 | 0.60% | $5 544 |
| 12/31/2031 | 137 | 57.4 | $    4 680 | $    1 254 | $    - | $    5 934 | 0.60% | $5 541 |
| 1/31/2032 | 138 | 57.5 | $    4 680 | $    1 254 | $    - | $    5 934 | 0.60% | $5 538 |
| 2/29/2032 | 139 | 57.6 | $    4 680 | $    1 254 | $    - | $    5 934 | 0.60% | $5 535 |
| 3/31/2032 | 140 | 57.7 | $    4 680 | $    1 254 | $    - | $    5 934 | 0.60% | $5 533 |
| 4/30/2032 | 141 | 57.8 | $    4 680 | $    1 254 | $    - | $    5 934 | 0.60% | $5 530 |
| 5/31/2032 | 142 | 57.9 | $    4 680 | $    1 254 | $    - | $    5 934 | 0.60% | $5 527 |

GARVER000099

GARVER000100

**Schedule 1**

**Robert P. Garver**
**Summary of Present Value of Past and Future Benefits**

**Policy #7881467** (Exhibit C)

| | | | | |
|---|---|---|---|---|
| Policy Date | 8/6/2015 | Valuation Date | | 7/31/2020 |
| Date of Disability | 7/12/2017 | Payment Date | Last Day of the month | |
| Date of Birth | 8/7/1974 | Present Value Factor | | 0.60% |
| Elimination Period Ends | 10/11/2017 | | | |
| Date Calculation Begins | 10/12/2017 | Monthly Benefit | $ | 4 680.00 |
| Elimination Period | 90 days | | | |
| Maximum Benefit Period | 8/6/2039 | | | |
| Age at end of period | 65 | | | |
| COLA Adjustment  (Annually) | July 12 | | | |

| Payment Date | Period | Age | Monthly Benefit | COLA Benefit | Less: Benefits Paid | Difference/ Underpayment | PV Rate (18% interest on Past Benefits, .60% discount on Future Benefits) | Present Value of Benefits Due |
|---|---|---|---|---|---|---|---|---|
| 6/30/2032 | 143 | 57.9 | $  4 680 | $  1 254 | $  - | $  5 934 | 0.60% | $5 524 |
| 7/31/2032 | 144 | 58.0 | $  4 680 | $  1 316 | $  - | $  5 996 | 0.60% | $5 580 |
| 8/31/2032 | 145 | 58.1 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 606 |
| 9/30/2032 | 146 | 58.2 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 603 |
| 10/31/2032 | 147 | 58 3 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 600 |
| 11/30/2032 | 148 | 58.4 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 597 |
| 12/31/2032 | 149 | 58.4 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 595 |
| 1/31/2033 | 150 | 58 5 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 592 |
| 2/28/2033 | 151 | 58 6 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 589 |
| 3/31/2033 | 152 | 58.7 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 586 |
| 4/30/2033 | 153 | 58 8 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 584 |
| 5/31/2033 | 154 | 58.9 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 581 |
| 6/30/2033 | 155 | 58.9 | $  4 680 | $  1 347 | $  - | $  6 027 | 0.60% | $5 578 |
| 7/31/2033 | 156 | 59 0 | $  4 680 | $  1 410 | $  - | $  6 090 | 0.60% | $5 633 |
| 8/31/2033 | 157 | 59.1 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 659 |
| 9/30/2033 | 158 | 59.2 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 656 |
| 10/31/2033 | 159 | 59 3 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 653 |
| 11/30/2033 | 160 | 59.4 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 650 |
| 12/31/2033 | 161 | 59.4 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 648 |
| 1/31/2034 | 162 | 59 5 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 645 |
| 2/28/2034 | 163 | 59 6 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 642 |
| 3/31/2034 | 164 | 59.7 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 639 |
| 4/30/2034 | 165 | 59 8 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 636 |
| 5/31/2034 | 166 | 59.9 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 633 |
| 6/30/2034 | 167 | 59.9 | $  4 680 | $  1 441 | $  - | $  6 121 | 0.60% | $5 631 |
| 7/31/2034 | 168 | 60 0 | $  4 680 | $  1 503 | $  - | $  6 183 | 0.60% | $5 685 |
| 8/31/2034 | 169 | 60.1 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 711 |
| 9/30/2034 | 170 | 60.2 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 708 |
| 10/31/2034 | 171 | 60 3 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 705 |
| 11/30/2034 | 172 | 60.4 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 703 |
| 12/31/2034 | 173 | 60.4 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 700 |
| 1/31/2035 | 174 | 60 5 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 697 |
| 2/28/2035 | 175 | 60 6 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 694 |
| 3/31/2035 | 176 | 60.7 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 691 |
| 4/30/2035 | 177 | 60 8 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 688 |
| 5/31/2035 | 178 | 60.9 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 685 |
| 6/30/2035 | 179 | 60.9 | $  4 680 | $  1 534 | $  - | $  6 214 | 0.60% | $5 683 |
| 7/31/2035 | 180 | 61 0 | $  4 680 | $  1 597 | $  - | $  6 277 | 0.60% | $5 737 |
| 8/31/2035 | 181 | 61.1 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 762 |
| 9/30/2035 | 182 | 61.2 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 760 |
| 10/31/2035 | 183 | 61 3 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 757 |
| 11/30/2035 | 184 | 61.4 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 754 |
| 12/31/2035 | 185 | 61.4 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 751 |
| 1/31/2036 | 186 | 61 5 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 748 |
| 2/29/2036 | 187 | 61 6 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 745 |
| 3/31/2036 | 188 | 61.7 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 742 |
| 4/30/2036 | 189 | 61 8 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 739 |
| 5/31/2036 | 190 | 61.9 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 737 |
| 6/30/2036 | 191 | 61.9 | $  4 680 | $  1 628 | $  - | $  6 308 | 0.60% | $5 734 |
| 7/31/2036 | 192 | 62 0 | $  4 680 | $  1 690 | $  - | $  6 370 | 0.60% | $5 788 |
| 8/31/2036 | 193 | 62.1 | $  4 680 | $  1 722 | $  - | $  6 402 | 0.60% | $5 813 |
| 9/30/2036 | 194 | 62.2 | $  4 680 | $  1 722 | $  - | $  6 402 | 0.60% | $5 810 |
| 10/31/2036 | 195 | 62.3 | $  4 680 | $  1 722 | $  - | $  6 402 | 0.60% | $5 807 |
| 11/30/2036 | 196 | 62.4 | $  4 680 | $  1 722 | $  - | $  6 402 | 0.60% | $5 804 |
| 12/31/2036 | 197 | 62.4 | $  4 680 | $  1 722 | $  - | $  6 402 | 0.60% | $5 801 |
| 1/31/2037 | 198 | 62.5 | $  4 680 | $  1 722 | $  - | $  6 402 | 0.60% | $5 798 |
| 2/28/2037 | 199 | 62.6 | $  4 680 | $  1 722 | $  - | $  6 402 | 0.60% | $5 796 |
| 3/31/2037 | 200 | 62.7 | $  4 680 | $  1 722 | $  - | $  6 402 | 0.60% | $5 793 |
| 4/30/2037 | 201 | 62.8 | $  4 680 | $  1 722 | $  - | $  6 402 | 0.60% | $5 790 |
| 5/31/2037 | 202 | 62.9 | $  4 680 | $  1 722 | $  - | $  6 402 | 0.60% | $5 787 |

GARVER000100

GARVER000101

**Schedule 1**

**Robert P. Garver**
**Summary of Present Value of Past and Future Benefits**

**Policy #7881467** (Exhibit C)

| | | | |
|---|---|---|---|
| Policy Date | 8/6/2015 | Valuation Date | 7/31/2020 |
| Date of Disability | 7/12/2017 | Payment Date | Last Day of the month |
| Date of Birth | 8/7/1974 | Present Value Factor | 0.60% |
| Elimination Period Ends | 10/11/2017 | | |
| Date Calculation Begins | 10/12/2017 | Monthly Benefit | $   4 680.00 |
| Elimination Period | 90 days | | |
| Maximum Benefit Period | 8/6/2039 | | |
| Age at end of period | 65 | | |
| COLA Adjustment  (Annually) | July 12 | | |

| Payment Date | Period | Age | Monthly Benefit | COLA Benefit | Less: Benefits Paid | Difference/ Underpayment | PV Rate (18% interest on Past Benefits, .60% discount on Future Benefits) | Present Value of Benefits Due |
|---|---|---|---|---|---|---|---|---|
| 6/30/2037 | 203 | 62.9 | $    4 680 | $    1 722 | $        - | $    6 402 | 0.60% | $5 784 |
| 7/31/2037 | 204 | 63 0 | $    4 680 | $    1 784 | $        - | $    6 464 | 0.60% | $5 837 |
| 8/31/2037 | 205 | 63.1 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 863 |
| 9/30/2037 | 206 | 63.2 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 860 |
| 10/31/2037 | 207 | 63 3 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 857 |
| 11/30/2037 | 208 | 63.4 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 854 |
| 12/31/2037 | 209 | 63.4 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 851 |
| 1/31/2038 | 210 | 63 5 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 848 |
| 2/28/2038 | 211 | 63 6 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 845 |
| 3/31/2038 | 212 | 63.7 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 842 |
| 4/30/2038 | 213 | 63 8 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 839 |
| 5/31/2038 | 214 | 63.9 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 836 |
| 6/30/2038 | 215 | 63.9 | $    4 680 | $    1 815 | $        - | $    6 495 | 0.60% | $5 833 |
| 7/31/2038 | 216 | 64 0 | $    4 680 | $    1 878 | $        - | $    6 558 | 0.60% | $5 887 |
| 8/31/2038 | 217 | 64.1 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 912 |
| 9/30/2038 | 218 | 64.2 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 909 |
| 10/31/2038 | 219 | 64 3 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 906 |
| 11/30/2038 | 220 | 64.4 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 903 |
| 12/31/2038 | 221 | 64.4 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 900 |
| 1/31/2039 | 222 | 64 5 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 897 |
| 2/28/2039 | 223 | 64 6 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 894 |
| 3/31/2039 | 224 | 64.7 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 891 |
| 4/30/2039 | 225 | 64 8 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 888 |
| 5/31/2039 | 226 | 64.9 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 885 |
| 6/30/2039 | 227 | 64.9 | $    4 680 | $    1 909 | $        - | $    6 589 | 0.60% | $5 882 |
| 7/31/2039 | 228 | 65 0 | $    4 680 | $    1 971 | $        - | $    6 651 | 0.60% | $5 935 |
| 8/6/2039 | 229 | 65 0 | $       936 | $       400 | $        - | $    1 336 | 0.60% | $1 192 |
| **Present Value of Future Benefits** | | | $ 1 067 976 | $ 244 746 | $        - | $ 1 312 722 | | **$1 236,667** |

**Notes:**

For 2017  The Maximum Monthly Benefit of $4 680 has been multiplied by the percentage payable of 68 33% (See Schedule 3) prorated for 20 days in October 12 - October 31.

*Prorated August - December 2018 amounts due represent the interest owed at 18% per annum based on a disability payment date of June 16  2020. (Bank Screenshot).

| Month | Payment | Days | Interest (18%/365) | Payment | Interest Due |
|---|---|---|---|---|---|
| 8/31/2018 | 6/16/2020 | 655 | 0.000493151 | $    3 037 | $   980.99 |
| 9/30/2018 | 6/16/2020 | 625 | 0.000493151 | $    4 795 | $ 1 477.99 |
| 10/31/2018 | 6/16/2020 | 594 | 0.000493151 | $    4 795 | $ 1 404.61 |
| 11/30/2018 | 6/16/2020 | 564 | 0.000493151 | $    4 795 | $ 1 333.67 |
| 12/31/2018 | 6/16/2020 | 533 | 0.000493151 | $    4 795 | $ 1 260.36 |

For 2018 - 2039 the Percentage Payable exceeds the 75% threshold which qualifies Garver to receive the Maximum Monthly Benefit of $4 680.

COLA Adjustment every July 12. Prorated July based on a 30 day month  with 10 days at old rate and 20 days at new rate.

The total Past Due Benefits includes a component of statutory interest at 18% per annum:
*"Except as otherwise provided by K.S.A. 40-447, 40-3110 and 44-512a, and amendments thereto, each insurance company, fraternal benefit society and any reciprocal or interinsurance exchange licensed to transact the business of insurance in this state which fails or refuses to pay any amount due under any contract of insurance within the time prescribed herein  shall pay interest on the amount due . If payment is to be made to the claimant and the same is not paid within 30 calendar days after the amount of the payment is agreed to between the claimant and the insurer,  interest at the rate of 18% per annum shall be payable from the date of such agreement.  If payment is to be made to any other person for providing repair or other services to the claimant and the same is not paid within 30 calendar days following the date of completion of such services and receipt of the billing statement, interest at the rate of 18% per annum shall be payable on the amount agreed to between the claimant and the insurer from the date of receipt of the billing statement."*
Kan. Stat. Ann. § 40-2 126 (West).

Present value of future benefits discounted based on the 10 year Treasury rate Published on 7/22/2020 of .60% (Exhibit I).

Prepared at the request of counsel

GARVER000101

GARVER000102

**Schedule 2**

**Robert P. Garver**
**CPI-U**
Date of Disability 7/12/2017

| CPI-U | Price Index | % | Factor | Year |
|---|---|---|---|---|
| April 2016 | 239.3 | | | |
| April 2017 | 244.5 | 2.20% | | |
| April 2018 | 250.5 | 2.46% | 1.025 | 2018 |
| April 2019 | 255.5 | 2.00% | 1.045 | 2019 |
| April 2020 | 256.4 | 0.33% | 1.048 | 2020 |
| Projected* | | | | |
| April 2021 | | 2.00% | 1.068 | 2021 |
| April 2022 | | 2.00% | 1.088 | 2022 |
| April 2023 | | 2.00% | 1.108 | 2023 |
| April 2024 | | 2.00% | 1.128 | 2024 |
| April 2025 | | 2.00% | 1.148 | 2025 |
| April 2026 | | 2.00% | 1.168 | 2026 |
| April 2027 | | 2.00% | 1.188 | 2027 |
| April 2028 | | 2.00% | 1.208 | 2028 |
| April 2029 | | 2.00% | 1.228 | 2029 |
| April 2030 | | 2.00% | 1.248 | 2030 |
| April 2031 | | 2.00% | 1.268 | 2031 |
| April 2032 | | 2.00% | 1.288 | 2032 |
| April 2033 | | 2.00% | 1.308 | 2033 |
| April 2034 | | 2.00% | 1.328 | 2034 |
| April 2035 | | 2.00% | 1.348 | 2035 |
| April 2036 | | 2.00% | 1.368 | 2036 |
| April 2037 | | 2.00% | 1.388 | 2037 |
| April 2038 | | 2.00% | 1.408 | 2038 |
| April 2039 | | 2.00% | 1.428 | 2039 |

CPI-U Obtained from the U.S. Department of Labor, Bureau of Labor Statistics

https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexhistorical_us_table.htm
*Future CPI-U rates for 2020-2039 of 2.00% obtained from The Livingston Survey
Release date June 12, 2020, June 2020 Tables @ Table 3, Long-Term (10-Year)
Forecasts.  Attached as Exhibit H.

                                        GARVER000102

**Robert P. Garver**
**Summary of Earnings**
Date of Disability 7/12/2017

|  |  | Exhibit D | | Exhibit E | | Exhibit F | |
|---|---|---|---|---|---|---|---|
| Robert P. Garver |  | **2016** | | **2017** | | **2018** | |
|  |  | Prior Earnings | | Current Earnings | | Current Earnings | |
| Tax Returns:[4] |  |  |  |  |  |  |  |
| Robert Garver Builders Inc. | Schedule E | $ | 366,307 | $ | 83,203 | $ | (93,590) [1] |
|  | Wages | $ | 48,000 | $ | 48,000 | $ | - |
| Welborn Sales, Inc. | Schedule E |  |  |  |  | $ | 45,843 |
|  | Wages |  |  |  |  | $ | 55,550 |
| Total |  | $ | 414,307 | $ | 131,203 | $ | 7,803 |
| Loss of Earnings (Prior Earnings  - Current Earnings) |  |  |  | $ | 283,104 | $ | 406,505 |
| Percentage Payable (Loss of Earnings/ Prior Earnings), If Amount exceeds 75%, 100% of Maximum Monthly Benefit is paid [3] |  |  |  |  | -68.33% |  | -98.12% [2] |

Notes:

[1] Robert Garver Builders Inc. incurred a loss per the 2018 tax return of ($93,590).  This amount has been included in the calculation of his current earnings for 2018.

[2] Loss of Earnings for 2018 exceed the 75% threshold to qualify for Maximum Monthly Benefit whether or not the Robert Garver Builders Inc. 2018 loss is included or excluded in the calculation.

[3] Percentage Payable is calculated using the Residual Disability formula listed in the Residual Disability And Recovery Benefit Rider (Prior Earnings - Current Earnings/Prior Earnings).  Prior Earnings  =  $414,307 based on 2016 income.  Current earnings for 2017 = $131,203 and  2018 = $7,803.

[4] Losses from 191st Street Investors have not been included in the calculations of either Prior or Current Earnings. These losses relate to allowable tax deductions and do not appear to be income as defined by the policy.  As a result of this understanding and from direction of counsel, these amounts have been excluded from the calculations.

**Percentage Payable : 2019 - 2039**

Starting in 2018, Prior Earnings have been adjusted based on the language in the Residual Disability and Recovery Benefit Rider attached to the Policy.  The Prior Earnings for 2018 and 2019 were adjusted using the CPI factors shown on Schedule 2 each year as of the July Change Date.  For years 2020 - 2039, the Prior Earnings have been increased using the estimated CPI index factor of 2 00% (Per 2020 Livingston Survey - Exhibit H) as of the July Change Date.  The 2019 estimated Current Earnings of $106,443 (Estimated using the 2018 Welborn Sales Schedule E of $45,843 and 2019 Welborn Sales W-2 of $60,600 - Exhibit G) have been adjusted each year from 2020 - 2039, as of the July Change Date based on the estimated CPI index factor of 2.00% (Per 2020 Livingston Survey - Exhibit H).  As the Percentage Payable (Prior Earnings - Current Earnings/Prior Earnings) exceeds the 75% threshold to qualify for Maximum Monthly Benefit of $4,680 for each year 2019-2039.  See Table Below:

| Year | Prior Earnings | Current Earnings | Percentage Payable |
|---|---|---|---|
| 2016 | $ 414,307.00 |  |  |
| 2017 | $ 414,307.00 | $ - |  |
| 2018 | $ 418,558.38 | $ - |  |
| 2019 | $ 426,335.17 | $ 106,443.00 | 75.03% |
| 2020 | $ 430,278.77 | $ 107,427.60 | 75.03% |
| 2021 | $ 434,258.85 | $ 108,421.30 | 75.03% |
| 2022 | $ 438,275.74 | $ 109,424.20 | 75.03% |
| 2023 | $ 442,329.79 | $ 110,436.37 | 75.03% |
| 2024 | $ 446,421.34 | $ 111,457.91 | 75.03% |
| 2025 | $ 450,550.74 | $ 112,488.90 | 75.03% |
| 2026 | $ 454,718.34 | $ 113,529.42 | 75.03% |
| 2027 | $ 458,924.48 | $ 114,579.57 | 75.03% |
| 2028 | $ 463,169.53 | $ 115,639.43 | 75.03% |
| 2029 | $ 467,453.85 | $ 116,709.09 | 75.03% |
| 2030 | $ 471,777.80 | $ 117,788.65 | 75.03% |
| 2031 | $ 476,141.74 | $ 118,878.20 | 75.03% |
| 2032 | $ 480,546.05 | $ 119,977.82 | 75.03% |
| 2033 | $ 484,991.11 | $ 121,087.61 | 75.03% |
| 2034 | $ 489,477.27 | $ 122,207.67 | 75.03% |
| 2035 | $ 494,004.94 | $ 123,338.09 | 75.03% |
| 2036 | $ 498,574.48 | $ 124,478.97 | 75.03% |
| 2037 | $ 503,186.30 | $ 125,630.40 | 75.03% |
| 2038 | $ 507,840.77 | $ 126,792.48 | 75.03% |
| 2039 | $ 512,538.30 | $ 127,965.31 | 75.03% |